# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALLAN TEH,<br><br>    Plaintiff,<br><br>        v.<br><br>LEE MELCHIONNI, individually,<br>SYLVIA BENITO, individually, PERSIST<br>COMMUNICATIONS, INC., a Florida Corporation,<br>and THE LAKE LAW FIRM, a New York Limited<br>Liability Company,<br><br>    Defendants, | Case No.: 25- |

## **DOCKET INDEX**

| State Court Docket Sheet |
|---|
| 001 - 2023-03-15 Civil Cover Sheet |
| 002 - 2023-03-15 Complaint |
| 005 - 2023-03-16 Summons. Defendant L. Melchionni |
| 006 - 2023-03-16 Summons. Defendant S. Benito |
| 007 - 2023-03-16 Summons. Defendant Edward J. Lake. Registered Agent |
| 008 - 2023-03-16 Summons. Defendant Lake Law Firm |
| 010 - 2023-03-16 Summons. Defendant. L. Melchionni |
| 011 - 2023-03-16 Summons. Defendant S. Benito |
| 012 - 2023-03-16 Summons. Defendant Persist Comm |
| 013 - 2023-03-16 Summons. Defendant The Lake Law Firm |
| 016 - 2023-04-17 Defendant's Persist Comm and Lake Law Firms Motion to Dismiss |
| 018 - 2023-05-02 Defendant's L. Melchionni's and S. Benitos Motion to Compel Arbitration and Dismiss |
| 019 - 2023-05-05 Plaintiff's Response in Opposition to Defendant's Motion to Dismiss |
| 022 - 2023-05-12 Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration |
| 024 - 2023-05-19 Defendant's L. Melchionni and S. Benitos Reply Brief in Further Support of Motion to Compel Arbitration |
| 025 - 2023-05-23 Defendant's Persist Comm and Lake Law Firm's Reply in Support of Motion to Dismiss |
| 036 - 2023-07-17 Order on Persist & Lake Law's Motion to Dismiss and Melchionni & Benito's Motion to Compel Arbitration and Dismiss |
| 045 - 2023-12-08 Agreed Order Extending Defendant's Time to Respond to Plaintiff's Motion for Sanctions |

| |
|---|
| 046 - 2023-12-12 Agreed Order Extending Defendant's L. Melchionni and S. Benito's Time to Respond to Motion for Sanctions |
| 057 - 2024-03-02 Order Directing Plaintiff to Set Hearing. Refers to Arbitration clause |
| 058 - 2024-03-04 Notice of Compliance w Courts Order (DE.57) |
| 059 - 2024-05-25 Order Denying Plaintiff's Motion to Enforce Settlement (DE.40) |
| 060 - 2024-07-08 Order Directing Plaintiff to set this Case for Case Management Conference |
| 063 - 2024-07-12 Defendants Persist Comm. and Lake Law Firms Advice to Court |
| 064 - 2024-07-22 Order on Case Management |
| 065 - 2024-08-21 Def's Brief on the Courts Reservation of Jurisdiction |
| 072 - 2024-10-11 Notice of Filing Hearing Transcript |
| 075 - 2024-11-26 Order Denying Def's Motion for Sanctions (DE.30) |
| 076 - 2024-12-10 Order to Show Cause. Lake Law Firm and Persist Comm Should Not be Defaulted for Failure to Comply with Court Order |
| 077 - 2024.12.10 Order Staying Case and Placing Case on Inactive Status Pending Arbitration |

# Case Information

**Local Case Number:**
2023-004474-CA-01

**State Case Number:**
132023CA004474000001

**Case Style:**
Allan Teh vs Lee Melchionni et al

**Filing Date:**
03/15/2023

**Judicial Section:**
CA44 - Downtown Miami - Judge Walsh, Lisa S

**Case Status:**
OPENINACT

**Case Type:**
Business Transactions

**Consolidated Case No.:**

# Related Cases

**Case Number:**
2023-015702-CA-01

**Filing Date:**
04/25/2023

**Case Type:**
Shareholder Derivative

**Case Number:**
2024-020751-CA-01

**Filing Date:**
10/25/2024

**Case Type:**
Business Torts

# Hearing Details

**Hearing Date:**
07/18/2024

**Hearing Time:**
9:30AM

**Hearing Code:**
MOTCAL

**Description:**
Motion Calendar

**Hearing Location:**

**Hearing Date:**
11/16/2023

**Hearing Time:**
9:00AM

**Hearing Code:**
MOTCAL

**Description:**
Motion Calendar

**Hearing Location:**

**Hearing Date:**
07/13/2023

**Hearing Time:**
3:00PM

**Hearing Code:**
SPECSETS

**Description:**
Special Sets

**Hearing Location:**

**Hearing Date:**
07/13/2023

**Hearing Time:**
3:00PM

**Hearing Code:**
SPECSETS

**Description:**
Special Sets

**Hearing Location:**

**Hearing Date:**
07/13/2023

**Hearing Time:**
3:00PM

**Hearing Code:**
SPECSETS

**Description:**
Special Sets

**Hearing Location:**

**Hearing Date:**
07/13/2023

**Hearing Time:**
3:00PM

**Hearing Code:**
SPECSETS

**Description:**
Special Sets

**Hearing Location:**

**Hearing Date:**
07/13/2023

**Hearing Time:**
3:00PM

**Hearing Code:**
SPECSETS

**Description:**

**Hearing Location:**

# Parties

| Party Description | Party Name | Attorney Information | Other Attorney(s) |
|---|---|---|---|
| Plaintiff | Teh, Allan | | |
| Defendant | Melchionni, Lee | **B#:** 173827<br>Gervais, Michelle M | **B#:** 348538 Isaac J Mitrani,<br>**B#:** 124041 Bitran, Daniel S. |
| Defendant | Benito, Sylvia | **B#:** 173827<br>Gervais, Michelle M | **B#:** 348538 Isaac J Mitrani,<br>**B#:** 124041 Bitran, Daniel S. |
| Defendant | Persist Communications Inc. | **B#:** 115465<br>Gelber, Matthew R., ESQ | **B#:** 370932 Berman, Andrew S.<br>**B#:** 173827 Gervais, Michelle M |
| Defendant | Lake Law Firm, LLC | **B#:** 115465<br>Gelber, Matthew R., ESQ | **B#:** 370932 Berman, Andrew S.<br>**B#:** 173827 Gervais, Michelle M |

# Dockets

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 78 | 12/11/2024 | | Notice of Appearance | Event | |
| 77 | 12/10/2024 | | Order Placing Case On Inactive Status - Other Reason | Event | Pending Arbitration |
| 76 | 12/10/2024 | | Order to Show Cause | Event | Why Lake Law Firm And Persist Communications Should Not Be Defaulted For Failure To Comply With Court Order |
| 75 | 11/26/2024 | | Order Denying Request for Sanctions | Event | |
| 74 | 11/07/2024 | | Order Setting Case Management Conference | Event | November 25, 2024 At 9:00AM Via Zoom |
| 73 | 10/21/2024 | | Order of Withdrawal as Attorney of Record | Event | |
| 72 | 10/11/2024 | | Transcript of Proceedings Taken | Event | |
| 71 | 10/09/2024 | | Agreed Order | Event | On Verified Motion For Admission To Appear Pro Hac Vice, Etc. |
| 70 | 10/08/2024 | | Receipt: | Event | Receipt#:3240030 Amt Paid:$100.00 Name:BITRAN, DANIEL S. 301 ARTHUR GODFREY ROAD, PH MIAMI BEACH FL 33140 Comment: Allocation Code Quantity Unit Amount 3176-Non-Fla Attorney F 1 $100.00 $100.00 Tender Type:eFilings Tender Amt:$100.00 Receipt Date:10/08/2024 Register#:324 Cashier:EFilingUser |
| 69 | 10/04/2024 | | Motion for Pro Hac Vice | Event | |
| 68 | 10/03/2024 | | Notice of Hearing- | Event | 10/14/2024 |
| 67 | 10/01/2024 | | Motion to Withdraw | Event | |
| 66 | 08/21/2024 | | Notice of Hearing- | Event | October 09, 2024 at 11:00 AM |
| 65 | 08/21/2024 | | Notice of Filing: | Event | DEFENDANTS' BRIEF ON THE COURT'S RESERVATION OF JURISDICTION |
| 64 | 07/22/2024 | | Order: | Event | On Case Management |
| | 07/18/2024 | | Motion Calendar | Hearing | Case Management Conference Pursuant to Court's Order DE #60 |
| 63 | 07/12/2024 | | Notice: | Event | DEFENDANTS PERSIST COMMUNICATIONS AND LAKE LAW'S ADVICE TO COURT |
| 62 | 07/11/2024 | | Notice of Appearance | Event | |
| 61 | 07/10/2024 | | Notice of Hearing- | Event | Thursday, July 18th, 2024, at 9:30 AM |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|-----|------|-----------|--------------|------------|----------|
| 60 | 07/08/2024 | | Order: | Event | ORDER DIRECTING PLAINTIFF TO SET THIS CASE FOR CASE MANAGEMENT CONFERENCE |
| 59 | 05/25/2024 | | Order: | Event | Denying Plaintiff's Motion To Enforce Settlement (DE 40) |
| 58 | 03/04/2024 | | Notice of Compliance | Event | |
| 57 | 03/02/2024 | | Order: | Event | Directing Plaintiff To Set Hearing |
| 56 | 01/16/2024 | | Response to Motion | Event | For Sanctions |
| 55 | 01/16/2024 | | Response to Motion | Event | For Sanctions |
| 54 | 01/10/2024 | | Response: | Event | |
| 53 | 01/10/2024 | | Response: | Event | |
| 52 | 01/09/2024 | | Response: | Event | |
| 51 | 01/09/2024 | | Response to Motion | Event | |
| 50 | 01/04/2024 | | Response to Motion | Event | |
| 49 | 12/26/2023 | | Response to Motion | Event | |
| 48 | 12/22/2023 | | Motion for Sanctions | Event | |
| 47 | 12/14/2023 | | Motion for Sanctions | Event | |
| 46 | 12/12/2023 | | Agreed Order | Event | Extending Defendant Lee Melchionni And Sylvia Benito's Time To respond To Motion For Sanctions |
| 45 | 12/08/2023 | | Agreed Order | Event | Extending Defendant's Persist Communications And The Lake Law Firm's Time To respond To Plaintiff's Motion For Sanctions |
| 44 | 11/30/2023 | | Motion for Sanctions | Event | |
| | 11/16/2023 | | Motion Calendar | Hearing | Motion to Enforce Settlement and Request for Status Conference DE#40 |
| 43 | 10/27/2023 | | Notice: | Event | PLAINTIFFS REPLY IN FURTHER SUPPORT OF MOTION TO ENFORCE SETTLEMENT AND REQUEST FOR STATUS CONFERENCE |
| 42 | 10/20/2023 | | Response to Motion | Event | to Enforce for Settlement |
| 41 | 10/17/2023 | | Notice of Hearing- | Event | 11/16/2023 at 9:00AM |
| 40 | 10/10/2023 | | Motion/petit for Enforcement | Event | |
| 39 | 08/07/2023 | | Response to Motion | Event | |
| 38 | 08/02/2023 | | Response to Motion | Event | for Clarification and Extension of Time |
| 37 | 07/31/2023 | | Motion: | Event | For Clarification |
| 36 | 07/17/2023 | | Order: | Event | On Persist Communications' And The Lake Law Firm's Motion To Dismiss (DE 16) And Melchionni's And Benito's Motion To Compel Arbitration And Dismiss (DE 18) |
| | 07/13/2023 | | Special Sets | Hearing | Persist Communications and The Lake Law Firms Motion to Dismiss as well as Defendants Lee Melchionni and Sylvia Benitos Motion to Compel Arbitration and Dismiss |
| | 07/13/2023 | | Special Sets | Hearing | Persist Communications and The Lake Law Firms Motion to Dismiss as well as Defendants Lee Melchionni and Sylvia Benitos Motion to Compel Arbitration and Dismiss |
| | 07/13/2023 | | Special Sets | Hearing | Persist Communications and The Lake Law Firms Motion to Dismiss as well as Defendants Lee Melchionni and Sylvia Benitos Motion to Compel Arbitration and Dismiss |
| | 07/13/2023 | | Special Sets | Hearing | Persist Communications and The Lake Law Firms Motion to Dismiss as well as Defendants Lee Melchionni and Sylvia Benitos Motion to Compel Arbitration and Dismiss |
| | 07/13/2023 | | Special Sets | Hearing | Persist Communications and The Lake Law Firms Motion to Dismiss as well as Defendants Lee Melchionni and Sylvia Benitos Motion to Compel Arbitration and Dismiss |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 35 | 07/11/2023 | | Response to Motion | Event | |
| 34 | 07/08/2023 | | Order: | Event | Granting Unopposed Motion For Admission To Appear Pro Hac Vice, Etc. |
| 33 | 07/07/2023 | | Receipt: | Event | Receipt#:3140365 Amt Paid:$100.00 Name:GERVAIS, MICHELLE M BLANK ROME LLP 100 S. ASHLEY DRIVE SUITE 600 TAMPA FL 33602 Comment: Allocation Code Quantity Unit Amount 3176-Non-Fla Attorney F 1 $100.00 $100.00 Tender Type:eFilings Tender Amt:$100.00 Receipt Date:07/07/2023 Register#:314 Cashier:EFilingUser |
| 32 | 07/06/2023 | | Motion for Pro Hac Vice | Event | |
| 31 | 07/03/2023 | | Response to Motion | Event | |
| 30 | 06/22/2023 | | Motion for Sanctions | Event | |
| 29 | 06/02/2023 | | Notice of Unavailability/absence | Event | |
| 28 | 06/01/2023 | | Notice: | Event | OF WITHDRAWAL OF DEFENDANTS LEE MELCHIONNI'S AND SYLVIA BENITO'S MOTION FOR SANCTIONS PURSUANT TO FLORIDA STATUTES 57.105 |
| 27 | 05/31/2023 | | Motion for Sanctions | Event | |
| 26 | 05/30/2023 | | Notice of Hearing- | Event | 7/13/2023 @3PM |
| 25 | 05/23/2023 | | Response: | Event | AND THE LAKE LAW FIRM'S REPLY IN SUPPORT OF MOTION TO DISMISS |
| 24 | 05/19/2023 | | Memorandum of Law | Event | |
| 23 | 05/18/2023 | | Agreed Order | Event | Granting Verified Motion For Admission To Appear Pro Hac Vice |
| 22 | 05/12/2023 | | Response to Motion | Event | |
| 21 | 05/12/2023 | | Receipt: | Event | Receipt#:3130014 Amt Paid:$100.00 Name:GERVAIS, MICHELLE M BLANK ROME LLP 100 S. ASHLEY DRIVE SUITE 600 TAMPA FL 33602 Comment: Allocation Code Quantity Unit Amount 3176-Non-Fla Attorney F 1 $100.00 $100.00 Tender Type:eFilings Tender Amt:$100.00 Receipt Date:05/12/2023 Register#:313 Cashier:EFilingUser |
| 20 | 05/10/2023 | | Motion: | Event | FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.510 |
| 19 | 05/05/2023 | | Response to Motion | Event | |
| 18 | 05/02/2023 | | Motion to Compel | Event | |
| 17 | 04/29/2023 | | Order for Substitution of Counsel | Event | Agreed |
| 16 | 04/27/2023 | | Motion to Dismiss | Event | |
| 15 | 04/27/2023 | | Stipulation for Substitution of Counsel | Event | |
| 14 | 03/28/2023 | | Notice of Appearance | Event | |
| | 03/17/2023 | | 20 Day Summons Issued | Service | |
| 13 | 03/17/2023 | | ESummons 20 Day Issued | Event | Re: Index # 8. |
| | 03/17/2023 | | 20 Day Summons Issued | Service | |
| 12 | 03/17/2023 | | ESummons 20 Day Issued | Event | Re: Index # 7. |
| | 03/17/2023 | | 20 Day Summons Issued | Service | |
| 11 | 03/17/2023 | | ESummons 20 Day Issued | Event | Re: Index # 6. |
| | 03/17/2023 | | 20 Day Summons Issued | Service | |
| 10 | 03/17/2023 | | ESummons 20 Day Issued | Event | Re: Index # 5. |
| 9 | 03/17/2023 | | Receipt: | Event | Receipt#:3220221 Amt Paid:$40.00 Comment: Allocation Code Quantity Unit Amount 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|-----|------|-----------|--------------|------------|----------|
| | | | | | 1 $10.00 $10.00 Tender Type:eFilings Tender Amt:$40.00 Receipt Date:03/17/2023 Register#:322 Cashier:EFilingUser |
| 8 | 03/16/2023 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 7 | 03/16/2023 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 6 | 03/16/2023 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 5 | 03/16/2023 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 4 | 03/16/2023 | | Receipt: | Event | Receipt#:3240236 Amt Paid:$401.00 Comment: Allocation Code Quantity Unit Amount 3100-Circuit Filing Fee 1 $401.00 $401.00 Tender Type:eFilings Tender Amt:$401.00 Receipt Date:03/16/2023 Register#:324 Cashier:EFilingUser |
| 2 | 03/15/2023 | | Complaint | Event | |
| 1 | 03/15/2023 | | Civil Cover Sheet - Claim Amount | Event | |

Filing # 168815642 E-Filed 03/15/2023 04:58:39 PM

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

###### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Allan Teh</u>
Plaintiff

Case # _____

Judge  _____

vs.

<u>Lee Melchionni, Sylvia Benito, Persist Communications Inc., Lake Law Firm, LLC</u>
Defendant

---

###### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.    TYPE OF CASE**    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

- 2 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☒ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>8</u>

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☒ yes If "yes," list all related cases by name, case number, and court.
    <u>Allan Teh vs. Justice Partners, LLC Case No: 2022-022470-CA-01</u>

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Cheyenne Moghadam</u>        Fla. Bar # <u>1040660</u>
      Attorney or party              (Bar # if attorney)

<u>Cheyenne Moghadam</u>          03/15/2023
 (type or print name)           Date

- 3 -

Filing # 168815642 E-Filed 03/15/2023 04:58:39 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

ALLAN TEH, individually,

      Plaintiff(s),

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation, and
THE LAKE LAW FIRM, a New York Limited
Liability Company

      Defendants.

_____/

## COMPLAINT

Plaintiff, ALLAN TEH ("Teh"), sues Defendants, LEE MELCHIONNI ("Melchionni"), SYLVIA BENITO ("Benito"), PERSIST COMMUNICATIONS, INC ("Persist"), and THE LAKE LAW FIRM, LLC ("Lake Law Firm") (collectively referred to as "Defendants") and in support thereof alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. This action is for damages, declaratory relief and equitable relief in excess of the minimum jurisdictional limits of this Court.

2. Plaintiff, Allan Teh, is a citizen and resident of the State of Florida. His current residential address is located in Miami-Dade County, Florida.

3.      Defendant, Lee Melchionni, is a citizen and resident of the State of Florida. His current residential address is located in Miami-Dade County Florida. His apparent business address is 20900 NE 30th Ave., Miami, FL 33180.

4.      Defendant, Sylvia Benito, is a citizen and resident of the State of Florida. Her current residential address is located in Miami-Dade County Florida. Her apparent business address is 20900 NE 30th Ave., Miami, FL 33180.

5.      Persist Communications, Inc. is a Florida Corporation formed in the State of Florida and doing business in the state of Florida. Persist's current office and the place of operation is located in Broward County Florida - specifically, 1815 Cordova Road, Fort Lauderdale, FL 33316.

6.      Persist's President and Registered Agent is Edward Lake ("Mr. Lake").  Mr. Lake's address as President and Registered Agent of Persist is the same principal address as Persist and The Lake Law Firm - 1815 Cordova Road, Fort Lauderdale, FL 33316. *See attached Persist Annual Report filed on January 20, 2023 as* **Exhibit 1** *and Lake Law invoice dated 9/1/2021 as* **Exhibit 2.**

7.      Lake Law Firm, LLC, upon information and belief, is a New York law firm with operations in the State of Florida. Lake Law firm has an office located in Broward County Florida and issues invoices regarding alleged services with the 1815 Cordova Road, Fort Lauderdale, FL 33316 office address on its invoices.  *See* **Exhibit 2.**

8.      As more fully set forth herein, Lake Law Firm has purposefully availed itself of the privilege of conducting activities within Florida and is therefore under the jurisdiction of this Court. As set out herein and pursuant to F.S. §48.193 et seq., Lake Law

Firm is subject to specific personal jurisdiction because Lake committed multiple acts and breaches enumerated in F.S. §48.193(1) including, but not limited to: operating, conducting, engaging in, and carrying on a business or business venture in Florida, Lake Law Firm has an office in Florida, has committed a tortious act within the State of Florida and has breached and is continuing to breach agreements in Florida by failing to perform acts required by the agreements to be performed in Florida.

9.     This venue and forum are appropriate based upon F.S. § 47.011 and F.S. § 47.051 and also because virtually every act, breach and transaction set out in this Complaint occurred in Miami-Dade County Florida. To the extent other acts, breaches and transactions are stated within this complaint, those occurred in Broward County Florida. Moreover, the overwhelming majority of fact witnesses are located in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

10.     During the spring and summer of 2021, Melchionni and Benito approached Teh regarding various business opportunities involving "litigation funding" for mass tort cases.

11.     One such business opportunity was for Teh to provide capital to a limited liability company which would then invest (via loan or capital contributions) into a law firm which would then utilize the "investment" to obtain and handle various mass tort cases.

12.     Melchionni and Benito subsequently represented to Teh that there would be significant advantages if he also formed his own law firm. *See June 24th, 2021 email as* ***Exhibit 3.***

13.     These represented advantages of Teh having his own law firm included Teh having: 1) veto power over what litigation was pursued; 2) control over dollar amounts in specific litigations; 3) the ability to add partners to "his firm"; and 4) simplified governing documents. *See **Exhibit 3**.*

14.     According to Melchionni and Benito this proposed law firm would handle different types of mass tort injury cases, including claims and lawsuits involving Hernia Mesh injuries, Talc toxicity, Round Up toxicity, and 3M Ear Plugs injuries.

15.     During that time frame, multiple meetings, conversations and emails took place wherein various specific representations were made to Teh by Melchionni and Benito regarding the viability of the proposed law firm, the cost of acquiring cases, and the number of cases that the firm would have. *See June 21st, 2021 and August 3rd, 2021 Emails as **Composite Exhibit 4**.*

16.     As set out herein, Teh has learned that these direct and specific representations were false.

17.     On June 23rd, 2021, during a conference call with the Plaintiff, and others present, Melchionni specifically claimed that there was going to be a "a fast settlement for hernia mesh" and he knew "that something is imminent".

18.     These high-pressure tactics and misrepresentations continued on various occasions.

19.     During the same June 23rd, 2021 call, and discussions shortly after, Melchionni, Benito and Teh specifically discussed the risks associated with a large capital

contribution to the yet to be formed law firm, and Melchionni and Benito represented those risks to be "none".

20.     At no point in time during these conversations did Melchionni mention the possibility of future case "drop-off" relative to the earlier representations.

21.     On or about July 20th, 2021, there were multiple follow up calls where Melchionni and Benito specifically promised Teh that upon the formation of the law firm, they would both send "monthly updates on our cases".

22.     As a result of these direct, specific and material representations made to Teh by Melchionni and Benito regarding inter alia, the number of cases that the firm would sign up as counsel and the associated costs of those cases, Teh agreed to form a law firm with Teh as 50% equity partner and Melchionni and Benito as 25% partners respectively. *See KS Law Partnership Agreement attached as **Exhibit 5**.*

23.     The name of the firm is KS Law Group LLP ("KS Law") and the Partnership Agreement (the "Agreement") was executed by Teh, Melchionni, and Benito on August 24th, 2021.

24.     Interestingly, non-party KS law had its initial place of business in Washington D.C. but changed its address to 20900 NE 30th Avenue, Miami, Florida 33180 as evidenced by multiple bank account documents dated after the signing of the earlier referenced Agreement.

25.     Relevant to this Complaint, this "updated" place of business address is the same "business" address as Melchionni (a 25% partner in KS Law) and Benito (another 25% partner in KS Law).

26.     Neither Melchionni nor Benito advised their partner Teh of this address change.

27.     In reliance upon the representations set out herein, Teh provided $4 million as a capital contribution for KS Law and its operations.

28.     Upon information and belief, this was the only monetary capital contribution made by anyone to KS Law.

29.     That $4 million capital contribution was paid by Teh via Federal Wire on Friday September 3, 2021, into the KS Law Account at Chase Bank (Acct. Ending in ***6138) at the direction of Teh's partners, Melchionni and Benito.

30.     On September 16th, 2021, thirteen days after Teh's $4,000,000 was deposited into KS Law's Chase bank account, the funds were transferred and drained from that account.

31.     The funds were sent to Defendant Persist's account at TD Bank, Acct ending in ***2721.

32.     The effectuation and execution of that transfer was at the direction of Melchionni, Benito, Lake Law, and Persist.

33.     Teh was not informed of the transfer at that time or any appropriate time thereafter.

34.     It was only until the Fall of 2022, approximately one (1) year following those transfers, that Teh finally received documents obliquely referencing said transfer. To wit: a one-and-a-half-page invoice from Lake Law "to" KS Law for $3,880,000.00. *See **Exhibit 2***.

35.    Put simply, Defendants Melchionni and Benito, with absolutely no authority or legitimate reason transferred essentially all of Teh's funds and the entire working capital of Mr. Teh's law firm to a third-party (Defendant Persist) with no cognizable contract or agreement in place.

36.    Moreover, this transfer by Teh's partners was done with literally no safeguards, benchmarks or monitoring arrangements regarding the use of these funds.

37.    Critical to the allegations regarding the misrepresentations made, as stated herein, it must be noted the original, and represented purpose, of Teh's $4 million capital contribution was for working up, qualifying, processing, managing and settling cases as well as for firm marketing services, professional management services, obtaining new clients and cases, and firm infrastructure management.

38.    As shown by the transfer of the entirety of KS Law's working capital to Defendant, Persist, and the allegations set out herein, Teh's $4 million was not used for those represented purposes.

39.    Upon the formation of KS Law, the "monthly updates" promised by Melchionni and Benito never occurred.

40.    In addition, "monthly updates" are utterly insufficient and inappropriate considering the important duties of the Partners set forth herein.

41.    When updates did come, they were irregularly sent, and were accompanied with repeated representations that there was "non-material drop offs" in the number of cases of KS Law.

42.     Moreover, multiple "updates" sent were simply "copy and pasted" from Google News and similar sources.  Nothing in any of these "updates" remotely comports with or fulfills the Fiduciary Obligations set out herein and each of these "updates" is, in and of itself, a Breach of those duties.

43.     Again, to emphasize the specificity of the fraudulent misrepresentations set out herein, the Plaintiff was specifically told by Melchionni, regarding the Hernia Mesh cases that KS Law would have, "some money may flow before the end of the year."

44.     As of today's date, the Plaintiff has not been advised of a single settlement.

45.     As further evidence of the breach of fiduciary duties owed directly to Teh, the Defendants, Melchionni and Benito, conspicuously and deliberately failed to keep even the most basic financial, operating, or accounting records for KS Law. Shockingly and despite a $4 million capitalization and the profound logistics of managing hundreds of personal injury cases, Defendants, Melchionni and Bentio, have even admitted that they did not even bother to keep a general ledger for KS Law.

46.     As updates from Melchionni and Benito became increasingly sparse, on October 18th, 2021, Teh and Melchionni, with others present, had a call to discuss Teh's request for specific data relating to KS Law's cases.

47.     On the same date, an email was sent to Teh by Melchionni, with Benito cc'd.

48.     The October 18th email claimed:

*"The attached spreadsheet gives you the case list for KS Law Group. We have only filled 123 of the 155 RoundUp cases. We are taking in new cases daily. Please keep in mind that this list will change as a result of dropoff, but those cases are replaced at no cost...Hernia Mesh - We continue to march towards settlement with multiple manufacturers.  We are in the process of working up our cases and replacing those that have been disqualified. We*

*are cautiously optimistic that **the majority of our docket will be settled by Q2 of 2022.***"

*See October 18th, 2021, email attached as **Exhibit 6.***

49.     Suffice to say, the majority of KS Law's "docket" was, in fact, not "settled by Q2 of 2022."

50.     As of today's date, Teh has not been advised of a single settlement.

51.     These acts, omissions and failures constitute profound and significant breaches of fiduciary duties owed directly to Teh by the Defendants Melchionni and Benito.

52.     On October 20th, 2021, Melchionni sent another email to Teh stating:

***"For Allan's law firm, KS Law Group, we spent $3,880,080.00 to acquire** 155 RoundUp cases, 200 Talc Cases, 212 Hernia Mesh Cases, and 212 3M cases. **We are entitled to 60% of the attorney fee.***"

*See October 20th, 2021 Email attached as **Exhibit 7***

53.     It is important to note that Rules 1.5(c) and 1.5(e) of Rules of Professional Conduct governing D.C. law firms explicitly state:

**1.5(c)** A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. **A contingent fee agreement shall be in writing** and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation, other expenses to be deducted from the recovery, whether such expenses are to be deducted before or after the contingent fee is calculated, and whether the client will be liable for expenses regardless of the outcome of the matter. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and if there is a recovery, showing the remittance to the client and the method of its determination.

**1.5(e)** A division of a fee between lawyers who are not in the same firm may be made only if:

(1) The division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation.

(2) **The client is advised, in writing**, of the identity of the lawyers who will participate in the representation, of the contemplated division of responsibility, and of the effect of the association of lawyers outside the firm on the fee to be charged;

(3) The client gives informed consent to the arrangement; **_and_**

(4) The total fee is reasonable.

54.   In direct breach of Rules 1.5(c) and (e) and the duties alleged herein, Defendants Melchionni and Benito never secured or obtained such agreements. Moreover, Teh has never been provided even a single written fee agreement between KS Law, co-counsel, referring counsel or any client pertaining to KS Law's involvement in the cases.

55.   In addition, Melchionni stated under oath that the is not aware of any retainer agreements in which KS law is party.

56.   The notion that this formerly multi-million dollar law firm would be obtaining and handling hundreds of personal injury cases without a single retainer agreement, is shocking and clearly demonstrates the breaches alleged herein.

57.   These Professional Conduct Rules are not cited to suggest an independent cause of action based upon the Rules. They are set out herein as evidence of the acts, omissions and failures that constitute profound and significant breaches of fiduciary duties owed directly to Teh by the Defendants Melchionni and Benito.

58.     On September 28th, 2022, Melchionni sent an email, cc'ing Benito, attempting to explain how the prior representations made to Teh have gone sideways. *See September 28th email as **Exhibit 8**.*

59.     Melchionni writes in the September 28th email:

*"Finally, we are in the process of negotiating replacement cases for KS Law Group which will most likely be 76 Talcum Powder cases, 98 Hernia Mesh cases, 22 Roundup cases, and we can discuss 3M in person on Monday. There will be drop off in these replacement cases as well. We also have alternative options to discuss on Monday. Any case, less those cases that drop off for non-medical records reasons, will be replaced when the litigation settles, at the cost of the case plus 8% interest per year.*

**There is an explanation from the CEO of Persis/Lake Law Firm** *below regarding the drop off in Mass Torts.*

*Reasons why mass tort cases are rejected, what phase and reasons, with specific examples using talcum powder and hernia mesh. Most of the rejection is during/after phase 2 - the retrieval phase.*
*1.     Clients are signed based on a verbal intake done, if they meet the specified criteria under the lawsuit, they are signed.*
*2.     Phase 1 - Verbal Confirmation: Reconfirm intake details verbally, add additional information specific to case type. Shortly after, secondary outreach reconfirms the information provided over the phone with the addition of details not on the intake (details on the injury, length of use, diagnosis and doctor information).*
*a.     Reasons for Rejection - unfortunately, sometimes the potential new client doesn't recall the information required to proceed (or they do not have access to medical records if it's prior 7-10 years) to the next step of the case. So, they may be disqualified at this phase. Re: hernia mesh, fall off can be because they do not have access to the records proving the initial mesh implant product ID/records necessary to prove manufacturer of mesh implanted, particularly if the original mesh was implanted over 10 years ago, most facilities purge their records after 10 years and 7 in some cases.*
*3.     Phase 2 - Retrieval Phase (medical records retrieval): Obtain medical records proving injury, diagnosis, and/or surgery where applicable.*
*a.     Reasons for Rejection - if the records are incomplete, no records found, or any issue with the records prohibiting us from moving forward with the case, they will have to be disqualified. Example re hernia mesh, if a product ID or "sticker" showing the manufacturer is not present/available, they will be disqualified (unable to prove).*

*4.      Phase 3 - Nurse Review: review of medical records by a nurse/medical professional to determine if the injury, diagnosis, and/or surgery criteria are met based on case type.*

*a.      Reasons for Rejection - if upon reviewing the records, the link is not established between the case type and injury, criteria are not met. Therefore, the potential new client is disqualified.  As an example, with hernia mesh, the defect wasn't actually a defect with the mesh, but a recurrence of the hernia due to the individual and not a mesh defect, they will be disqualified. Example using talc, many times potential new clients believe they have ovarian cancer, but it is actually uterine or another cancer not part of criteria.*

*5.      Phase 4 - PPF/PFS/Census Form: this is the document filed with the courts. It contains details involving the case including injuries, diagnosis, medical history, etc. as determined by the case type.*

*a.      Reasons for Rejection - very few will be disqualified at this phase. Mainly would be due to a client no longer wishing to pursue or unable to reach, but that will generally occur much earlier in the process.*

*A few outlier reasons for rejection:*
*1.      No will/estate, unable to file on behalf of*
*2.      Client no longer wishes to pursue*
*3.      Client is uncooperative*
*4.      Client is unresponsive/unable to reach*
*While these are reasons for rejection, there are processes in place to reduce the above. However, clients may be "rejected" due to one of the above reasons.*
*--*
*Lee Melchionni, Esq.."*

**See Exhibit 8**

60.      Even to the untrained eye, this information and risk factors should have been disclosed to Teh prior to formation of KS Law and his sizable $4 million capital contribution.

61.      Defendants' calculated failure to do so as well as their omissions set out herein clearly demonstrate the Defendants' liability for such conduct.

62.      To further comply with the requirements of specificity, and only by way of example, the September 28th, 2022, email attached a spreadsheet which demonstrated

just how significant and misleading the earlier representations made by Melchionni and Benito were. *See attached spreadsheet showing "KS Law Group – Cases Owed - % of Total Cases – Cases Allocated" as* **Exhibit 9**.

63. Even a cursory review of the "Cases Owed vs Allocated" as set out in Column "D" demonstrate that KS Law's case "drop-offs" were now abysmal.

64. Teh made his frustrations with Defendants' constant and repetitive misrepresentations explicitly known in an October 14th, 2022, email where he stated that "the lack of transparency and competency I have seen so far has been appalling. Constant negative surprises. To the point that I have no confidence what so ever in anything that you said." *See October 14th Email attached as* **Exhibit 10**.

65. Despite Plaintiff's obvious and warranted frustrations Defendants' misrepresentations continued.

66. After a long period without any update regarding the value, status, or quality of Teh's $4 million equity interest on March 3rd, 2023, Teh received a surprise . . . a conspicuously unsolicited email from Melchionni containing further worrisome representations and disclosures. *See March 3rd, 2023 email attached as* **Exhibit 11.**

67. The March 3rd email contained spreadsheets outlining the "clients" of KS Law and their current status. *Exhibit 12 will be submitted to the Court under seal because it contains client information.*

68. Present on the spreadsheets were "clients" of KS Law labeling many of these "clients" as "Retained – Sent to Firm."

69.   To reiterate, Teh, as a partner in KS Law, has never been provided a single retainer agreement with any "clients" of KS Law.

70.   Upon information and belief, the spreadsheets provided by Melchionni were not prepared by KS Law but in fact were prepared by Lake Law Firm.

71.   Attached to the March 3rd email was also a "Case Replacement Agreement" with Lake Law Firm. *See "Case Replacement Agreement" attached as **Exhibit 13.***

72.   Teh was never provided notice of, or allowed input in, the execution of the Case Replacement Agreement with Lake Law Firm.

73.   In addition, the Case Replacement Agreement sets forth numbers of cases and the price of acquiring said cases that materially differ from the representations made to Teh prior to the execution of the Partnership Agreement and as set out previously.

74.   The Case Replacement Agreement also explicitly states and admits that Lake Law Firm "has not delivered equivalent value in cases to the Funded Amount . . ."

75.   The misrepresentations that are specifically set out in this Complaint are provided to highlight and illuminate the specific nature of the fraud and breaches alleged herein.

76.   Since the Complaint should contain a "short and plain statement" regarding the nature of the claims asserted, the Plaintiff cannot provide every single misrepresentation made within the body of this Complaint and reserves the right to amend and supplement this pleading as the circumstances warrant.

## COUNT 1
## FRAUDULENT INDUCEMENT
### (AS TO LEE MELCHIONNI AND SYLVIA BENITO)

77. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

78. As set forth herein, both Melchionni and Benito, individually and collectively made multiple false statements of a material facts, including but not limited to the number of cases in which the firm was going to be retained and how KS Law's funds were going to be used.

79. Melchionni and Benito, individually and collectively made false statements including that the funds were to be used for marketing and operations along with the misrepresentations set forth above.

80. Melchionni and Benito, individually and collectively, knew or should have known that those statements were false.

81. Melchionni and Benito, individually and collectively made these, and many other statements, to induce the plaintiff to pay the funds referenced above and enter into the Agreement.

82. As set out herein, these statements were clearly made before the execution of the Agreement.

83. These statements have proximately caused specific and direct damages to the Plaintiff when he acted in reliance on those misrepresentations. To wit: he wired $4 million of his funds to an account controlled by Melchionni and Benito, individually and

collectively, and to date has not received even $1 in the form of distribution, payment or otherwise.

84.     Regarding such direct damages, Plaintiff would not have entered into the Agreement if defendants had not made misrepresentations.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for damages, pre and post judgment interest, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT 2
## RESCISSION
## (PLED IN THE ALTERNATIVE)

85.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

86.     As set forth herein, both Melchionni and Benito, individually and collectively made multiple false statements of a material facts, including but not limited to the number of cases in which the firm had would be retained as counsel. Melchionni and Benito, individually and collectively, made additional false statements including that the funds were to be used for case management, marketing and operations.

87.     Melchionni and Benito, individually and collectively, knew or should have known that those statements were false.

88.     Melchionni and Benito, individually and collectively made these and many other statements to induce the plaintiff to enter into the Agreement.

89.     These statements were clearly made before the execution of the Agreement.

90. These statements have proximately caused specific and direct injury to the Plaintiff, Teh, when he acted in reliance on those misrepresentations. To wit: Teh wired $4 million of his funds to an account controlled by Melchionni and Benito individually and collectively and to date has not received even $1 in the form of distribution, payment or otherwise.

91. Rescission is an appropriately pled alternative remedy because regarding such conduct and direct damages, Teh would not have entered into the Agreement if Defendants had not made misrepresentations and rescission of the Agreement is an appropriate claim to place the parties back in their original positions.

**WHEREFORE**, Plaintiff, as rescission damages, seeks this equitable relief and demands the return of his $4 million, pre and post judgment interest, attorneys' fees and costs and all other relief that this Court deems just and proper.

## COUNT 3
## DIRECT BREACH OF CONTRACTUAL INDEMNITY
### (AS TO LEE MELCHIONNI)

92. Plaintiff re-alleges by reference paragraphs 1 through 76 as if fully set forth herein.

93. Paragraph 6 of the Agreement, attached as **Exhibit 5**, states, inter alia: "Melchionni…agrees to indemnify Allan Teh…from and against all…loss, cost, damage and expense … which relate to arise out of or in connection with the operation of the Partnership or a breach by the indemnifying partner (Lee Melchionni)".

94.     Prior to the filing of this complaint, Mr. Teh demanded indemnification from Melchionni.

95.     To date, Melchionni has breached his obligations and refused to comply with this indemnity provision.

96.     As a result of the acts, breaches and omissions set out herein, Allan Teh has suffered direct and individual damages because, inter alia, the contractual indemnity provisions referenced above run specifically and only to the benefit of Teh and not the Partnership or any other partner.

**WHEREFORE,** Plaintiff demands judgment against Defendant, Lee Melchionni, for damages including but not limited to the $4 million investment, lost opportunity costs, pre and post judgment interest, attorneys' fees and costs and any other relief this Court deems just and proper.

## COUNT 4
## DECLARATORY ACTION REGARDING CONTRACTUAL INDEMNITY DUTIES
### (AS TO LEE MELCHIONNI)

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

98.     Paragraph 6 of the Agreement, attached as **Exhibit 5**, states, inter alia: "Melchionni…agrees to indemnify Allan Teh…from and against all…loss, cost, damage and expense … which relate to arise out of or in connection with the operation of the Partnership or a breach by the indemnifying partner (Lee Melchionni)".

99.     Prior to the filing of this complaint, Teh demanded indemnification from Melchionni.

100.  To date, Melchionni has breached his obligations and refused to comply with this indemnity provision.

101.  There is a bona fide, actual and present, practical need for the declaration sought herein.

102.  Specifically, there is a significant controversy regarding defendant Melchionni's failure to provide indemnity as set forth in the Agreement and Teh's rights regarding that indemnity provision.

103.  The rights and interests of Melchionni and Teh are actual, present, adverse and antagonistic regarding the indemnity provision referenced herein because Melchionni has failed to comply with his duties and obligations in that regard.

104.  These antagonistic and adverse interests are all before this Court as set out in this Complaint.

105.  The relief and claims set out herein are not a request for legal advice by this Court or to seek answers to questions based on curiosity.

**WHEREFORE,** Plaintiff seeks a declaration from this Court, regarding the contractual provisions cited herein and Melchionni's duties thereupon that Melchionni shall forthwith, immediately and on a continuing basis, indemnify Plaintiff for his losses, damages and costs which include but are not limited to the $4 million investment, lost opportunity costs, pre and post judgment interest, attorneys' fees and costs and any other relief this Court deems just and proper.

## COUNT 5
## BREACH OF FIDUICARY DUTY
### (AS TO LEE MELCHIONNI AND SYLVIA BENITO)

106. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

107. Melchionni and Benito and Teh are partners in KS Law. As such, these partners owe each other and the firm fiduciary duties.

108. Melchionni and Benito, individually and collectively breached these duties as set forth above. Specifically, but without limitation, by Defendants Melchionni and Benito unilaterally and with absolutely no authority or legitimate reason transferred essentially all of Teh's funds and the entire working capital of Teh's law firm to a third-party (Defendant Persist) with no cognizable contract or agreement in place.

109. Moreover, this transfer by Teh's partners was done with literally no safeguards, benchmarks or monitoring arrangements regarding the use of these funds.

110. Melchionni and Benito, individually and collectively breached additional fiduciary duties by: failing to honestly and timely disclose and report the potential and actual cases in which KS Law was and has been retained as co-counsel, referring counsel, or otherwise.

111. As further evidence of the direct breach of fiduciary duties owed to Teh, the Defendants conspicuously and deliberately failed to keep even remotely competent financial operational or accounting records for KS Law. Shockingly and despite a $4 million capitalization and the logistics of managing hundreds of personal injury cases, Defendants have admitted that they did not even bother to keep a general ledger.

112.    Teh has been directly and individually damaged in a manner distinct from any damage suffered by others.

113.    Specifically, these distinct damages to Teh include, but are not limited to, the loss of his discrete and identifiable funds used to fully capitalize KS Law.

114.    This is especially relevant in the context of no other Partners contributing to the firm.

115.    Allan Teh has suffered direct and individual damages because, inter alia, all of the money involved in the acts and breaches sent out herein belonged to and was sent by Allan Teh and he was the only partner and investor to suffer direct financial losses as a result.

116.    Teh has suffered damages which were proximately caused by the breaches set forth above.

**WHEREFORE,** Plaintiff demands judgment against Defendants, Lee Melchionni and Sylvia Benito, jointly and severally, for damages, including pre and post judgment interest, attorneys' fees and costs and any such further relief this Court deems just and proper.

## COUNT 6
## EQUITABLE ACCOUNTING
### (AS TO LEE MELCHIONNI AND SYVLIA BENITO)

117.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

118.    Melchionni and Benito and Teh are partners in KS Law. As such, these partners owe each other and the firm fiduciary duties.

119. Melchionni and Benito, individually and collectively, breached their fiduciary duties by: failing to honestly and timely disclose and report the potential and actual cases in which KS Law was and has been retained as co-counsel, referring counsel, or otherwise.

120. Specifically, but without limitation, Defendants Melchionni and Benito unilaterally and with no authority or legitimate reason transferred essentially all of Teh's funds and the entire working capital of Teh's law firm to a third-party (Defendant Persist) with no cognizable contract or agreement in place.

121. As further evidence of the direct breach of fiduciary duties owed to Teh, the Defendants conspicuously and deliberately failed to keep even remotely competent financial operational or accounting records for KS Law. Shockingly and despite a $4 million capitalization and the logistics of managing hundreds of personal injury cases, Defendants have admitted that they did not even bother to keep a general ledger.

122. In addition, Melchionni has stated under oath that he is not aware of any retainer agreements in which KS Law is a party.

123. The notion that this formerly multi-million-dollar law firm would be obtaining and handling hundreds of personal injury cases without a single retainer agreement, is shocking and clearly demonstrates the breaches alleged herein as well as the Plaintiff's right to an Equitable Accounting.

124. Teh's right to an accounting is premised upon the existence of the fiduciary relationships set out herein as well as complex transactions involving the parties hereto.

125. Moreover, a breach of the duty imposed by those relationships is grounds for an equitable accounting.

**WHEREFORE,** Plaintiff states a remedy at law would be inadequate and demands judgment against Defendants, Lee Melchionni and Sylvia Benito, for all appropriate relief in this Claim, including damages, pre and post judgment interest, attorneys' fees and costs and any such further relief this Court deems just and proper.

## COUNT 7
## UNJUST ENRICHMENT
### (AS TO LAKE LAW FIRM AND PERSIST COMMUNICATIONS)

126. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

127. As is clear from the allegations set out herein, the contract and events that led to the cascade of events leading to Lake Law and Persist unjustly receiving the millions of dollars, arose from acts and omissions by Lake Law and Persist and those other named Defendants.

128. Specifically, neither Lake Law or Persist have provided anything of value to the Teh in exchange for the $4 million they received.

129. Defendants Lake Law and Persist were individually and collectively enriched by the receipt of funds as specifically set forth herein.

130. As referenced herein, Teh has conferred a benefit on the defendants Lake Law and Persist individually and collectively by paying such funds.

131. Lake Law and Persist, individually and collectively, had and have knowledge of the significant benefit conferred upon each of them.

132.   The Defendants, individually and collectively, voluntarily accepted and retained the benefit conferred, i.e., the Defendants, to this day, have continued to retain those funds.

133.   As specifically set out herein, circumstances are such that it would be inequitable for the Defendants to retain the benefit conferred upon them without first providing the appropriate exchange of value and consideration to the plaintiff.

134.   Teh was legally impoverished as that term is used in the context of this claim.  Specifically, $4,000,000 of Teh's dollars was wrongfully transferred to, and is being held by, Defendants, Lake Law and Persist.

135.   As set forth herein, there was and is an obvious relationship between the above-described enrichment and impoverishment.

136.   There is no justification regarding the enrichment realized by Lake Law and Persist.

137.   There is no adequate remedy available at law regarding that which Lake Law and Persist have occasioned upon the Plaintiff.

**WHEREFORE,** Plaintiff demands judgment for all damages allowable by this Unjust Enrichment claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, and all other relief this Court deems just and proper.

<div align="center">

**COUNT 8**
**<u>EQUITABLE ACCOUNTING</u>**
**(AS TO LAKE LAW FIRM AND PERSIST COMMUNICATIONS)**

</div>

138.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

139.   As is clear from the allegations set out herein, the events that led to the cascade of events leading to Lake Law and Persist unjustly receiving the subject funds arose from acts and omissions by Lake Law and Persist and those Defendants have been unjustly enriched thereby.

140.   Specifically, neither Lake Law or Persist have provided anything of value to Teh in exchange for the $4 million they received.

141.   Defendants Lake Law and Persist were individually and collectively enriched by the receipt of funds as alleged herein.

142.   As referenced herein, Teh has conferred a benefit on the Defendants Lake Law and Persist, individually and collectively.

143.   Lake Law and Persist, individually and collectively, had and have knowledge of the significant benefit conferred upon each of them.

144.   The Defendants, individually and collectively, voluntarily accepted and retained the benefits conferred.

145.   The Defendants, to this day, have continued to retain those funds.

146.   Teh's right to an accounting is premised upon the existence of the fiduciary relationships set out herein as well as the complex and significant transactions described herein.

147.   According to evidence available thus far, the funds referenced herein relate to a KS Law's ability to secure and manage hundreds personal injury mass tort cases.

148.   Specifically, Melchionni and Benito, unilaterally and with no authority or legitimate reason, and with Lake Law and Persist's knowledge and direction, transferred

essentially all of Teh's funds and the entire working capital of Teh's law firm to Defendants Lake law and Persist with no cognizable contract or agreement in place.

149.    In addition, Melchionni has stated under oath that he is not aware of any retainer agreements in which KS Law is a party.

150.    The notion that this formerly multi-million-dollar law firm would be obtaining and handling hundreds of personal injury cases without a single retainer agreement, is shocking and clearly demonstrates the breaches alleged herein as well as the Plaintiff's right to an Equitable Accounting.

151.    Plaintiff states that a remedy at law would be inadequate.

**WHEREFORE,** Plaintiff demands judgment for all damages allowable by this Equitable Accounting claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, and all other relief this Court deems just and proper.

The Plaintiff hereby demands trial by jury on all issues and claims so triable as of right.

Dated: March 15, 2023

Respectfully submitted,

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

By:

/s/ Matthew Jones, Esq.
Matthew L. Jones, Esq.
Florida Bar No. 909335
matthew@jones-adams.com

**2023 FLORIDA PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# P15000085963

**FILED**

**Jan 20, 2023**
**Secretary of State**
**7254299730CC**

**Entity Name:** PERSIST COMMUNICATIONS, CORPORATION

**Current Principal  Place of Business:**

1815 CORDOVA RD
FT. LAUDERDALE,  FL  33316



# Exhibit 1

**Current Mailing Address:**

1815 CORDOVA RD
FT. LAUDERDALE,  FL  33316  US

**FEI Number:** 81-0851001

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

LAKE, EDWARD J
1815 CORDOVA RD
FT. LAUDERDALE, FL  33316  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:  EDWARD LAKE                                                                01/20/2023

Electronic Signature of Registered Agent                                           Date

**Officer/Director Detail :**

Title            PRESIDENT

Name          LAKE, EDWARD J

Address       1815 CORDOVA RD

City-State-Zip:   FT. LAUDERDALE  FL  33316

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: EDWARD J LAKE                          PRESIDENT                    01/20/2023

Electronic Signature of Signing Officer/Director Detail                            Date



# Exhibit 2

## Invoice

| BILL TO: KS Law Group | CAMPAIGN: HM/TALC/3M/RU |
|---|---|
|  | DATE: 9/1/2021 |
|  | DUE DATE: |
| Phone: | TERMS: See Below |

| Quantity | Description | Unit Price | Line Total |
|---|---|---|---|
| 220 | Hernia Mesh | $5,600 | $1,232,000 |
| 200 | Talc | $6,000 | $1,200,000 |
| 155 | Round Up | $5,048.39 | $782,500 |
| 220 | 3M | $3,025 | $665,500 |
|  |  | Total | $3,880,000.00 |

**Hernia Mesh:** Cases provided with the following criteria below & guaranteed by medical records:

- Records showing revision, removal, or replacement surgery, or scheduled within 90 days or needed, but unable to be performed due to medical professional recommendation.
- Client states no previous or existing attorney representation.
- All manufacturers.
- Surgery 2011+

**Talc:** Cases provided with the following criteria below & guaranteed by medical records::

- Diagnosed with ovarian cancer, fallopian cancer, primary peritoneal cancer, or endometrioid cancer)
- 75 years old or younger
- 4 years plus of exposure
- Negative BRCA test, preferred but acceptable if unknown.
- No previous or existing attorney representation.
- Ovarian cancer, fallopian cancer, primary peritoneal cancer, or endometrioid cancer w/ chemo or treatment
- Death w/in 18 months and original diagnosis within four (4) years of death

**Round Up:** Cases provided with the following criteria below & guaranteed by medical records::

- Diagnosed with NHL or subtype within the last 10 years, unless medical records access then 2007 forward.
- Direct exposure ONLY to RoundUp for more than one year
- No existing attorney

**REMITTANCE BY WIRE:** *Beneficiary Name: Persist | *Bank Info: TD BANK, 1215 SE 17th Street, Fort Lauderdale, FL 33316 | *Bank Account No.: 4326532721 | *Bank Routing Info: 067014822

*1815 Cordova Road, Fort Lauderdale, FL 33316 US | www.LeadersInMassTorts.com*

**3M:** Cases provided with the following criteria below & guaranteed by medical records:

- Used 3M Combat Arms CAEv2 Earplugs between 2003-2015
- Diagnosed with tinnitus or documented loss of hearing 10% or more in at least one ear
- No existing attorney

**Edward J. Lake, Esq. (EL) agrees to the following:**

1. Market, intake, and sign-up potential clients.
2. Gather medical records, a medical summary, a plaintiff fact sheet and/or court complaint, as necessary.
3. EL will act as liaison between the undesigned and trial firms.
4. The Lake Law Offices will handle any client inquiries.
5. Any out-of-pocket expenses paid as result of the above will be a lien on clients' portion of any recovery.
6. Joint venture fee splits will be as follows: 20 % The Lake Law Offices; 60% Client firm; 20% Trial firm.

Print Name: Lee Melchionni

Signature: _____ Date: 9/1/21

## REMITTANCE BY WIRE:

*Beneficiary Name: Persist
*Bank Info: TD BANK, 1215 SE 17th Street, Fort Lauderdale, FL 33316
*Bank Account No.: 4326532721
*Bank Routing Info: 067014822

*1815 Cordova Road, Fort Lauderdale, FL 33316 US | www.LeadersInMassTorts.com*

CONFIDENTIAL

KS-Law-Teh-000051

**Lee Melchionni** <lee@capital4justice.com>          Thu, Jun 24, 2021, 2:10 PM
to Sohail Shahrasebi, allan.teh@icloud.com, Sylvia Benito

# Exhibit 3

Hi Sohail,

Yes, you are correct. Those are the current outstanding MDL"s against hernia mesh manufacturers.

As for our hypothetical settlements question, there will be cases where plaintiff's have suffered horrific injuries where settlement values are several hundred thousand dollars, potentially $1M+. There will also be 'nuisance' claims that will be worth $15,000. Based on our criteria for acceptable claims, we felt comfortable with the hypothetical ranges we provided. Obviously, the hope is that the compensable value of the cases we acquire is higher than our hypothetical averages.

Attached, you will find the returns for two previous torts I was involved in, Actos and DePuy ASR Hips. Please note that the return in these two torts were abnormally positive. Feel free to call me to discuss if there is any confusion.

Finally, I wanted to articulate the difference for Allan if he were to have his own law firm, versus being in the fund.

- Veto power on what litigations are pursued
- Control over dollar amounts in specific litigations
- Simplicity of documentation, meaning we have a simple operating agreement governing Allan's law firm
- The firm can be evergreen
- Ability for Allan to add partners/investors to his firm

If a follow up call makes sense, please let us know Sohail. Thank you for your time.

Best,
Lee

On Thu, Jun 24, 2021 at 12:22 PM Sohail Shahrasebi <Sohail@kstreetcap.com> wrote:
> Lee,
>
> Great speaking with you and Sylvia yesterday. While I wait for an email back on my outstanding questions, I had two specific questions on the Herniated Mesh opportunity specifically.
>
> 1. Are the below listed cases the current outstanding MDLs against hernia mesh manufacturers?
>    a. In Re: Ethicon, Case No: 1:17-md-02782-RWS (subsidiary of Johnson & Johnson) in the Northern District of Georgia
>    b. In Re: Davol, Inc./C.R. Bard, Inc., Case No: 2:18-md-2846 in the Southern District of Ohio
>    c. In Re: Atrium Medical Corp., Case No: 16-md-2753 LM in the District of New Hampshire
> 2. I know you ranged the potential hypothetical settlement amounts for Hernia Mesh. Doing some digging showed on that on individual cases, ranges went as high as a million and below the low end of the range on

the provided spreadsheet. Was the range provided based on the criteria you set for viable claimants?

Any additional information would be appreciated. Thank you!

Best Regards

Sohail Shahrasebi

Director

Kamunting Street Capital

119 Washington Ave, Suite 600

Miami Beach, Fl 33139

O: 786-484-0771

M: 646-707-4484

---

**2 Attachments** • Scanned by Gmail



**Actos.xlsx**          **DePuy ASR.xlsx**

**From:** Sylvia Benito <sylvia@capital4justice.com>
**Date:** June 21, 2021 at 11:24:32 AM EDT
**To:** allan.teh@icloud.com
**Cc:** Lee Melchionni <lee@capital4justice.com>
**Subject: Potential Allocation + Outcome Ranges**

# Composite Exhibit 4

Allan,

Please find attached the possible allocations for cases in an individual law firm should you choose to add more allocation to your current investment.  We can send background notes on all these cases for your analyst and/or schedule a call at your convenience to discuss.

Warmly
S

**One attachment** • Scanned by Gmail



**X** **Potential Allocati…**

## Subject: Re: Question / Request

 **Lee Melchionni** <lee@capital4justice.com>                    Tue, Aug 3, 2021,
to Sohail Shahrasebi, Brent Steinberg ■

Hi Sohail,

Below is our current breakdown. We look forward to discussing in more detail on Friday.

- RoundUp - 2%
- Firefighter Foam - 5%
- Zantac - 10%
- Talc - 34%
- 3M - 8%
- Hernia Mesh - 41%

Best,
Lee

On Tue, Aug 3, 2021 at 7:36 AM Sohail Shahrasebi <Sohail@kstreetcap.com> wrote:

Hi Lee,

The last time we spoke you mentioned you were calling an additional $2 million of Allan's investment - bringing t total to $4 million.

I wanted to know if you could give me a break- down, by case type/bucket, of the money invested so far (the tot$4mln.)

This should help me better assess how to distribute, by case type, the additional capital being injected into the d law firm. Please call me if you have any questions.

Best Regards
Sohail Shahrasebi
646-707-4484

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

# Exhibit 5

**KS LAW GROUP, LLP**
**LIMITED LIABILITY PARTNERSHIP AGREEMENT**
**EFFECTIVE AS OF July 26, 2021**

This Limited Liability Partnership Agreement ("Agreement") is entered into by Attorney Lee Melchionni and Non-Attorneys Allan Teh[1] and Sylvia Benito (collectively, the Managing "Partners"), pursuant to the provisions of the Business Organizations Title in the District of Columbia Code (specifically, D.C, Code § 29-101.01, *et seq.*, the "Act").

**1.      Formation.**

Pursuant to this Agreement, the limited liability partnership was formed (the "Partnership"), and the Managing Partners elected to become a registered, Limited Liability Partnership, in accordance with the provisions of the Code. The Managing Partners shall be:

1. Lee Melchionni, Esq.; (Melchionni as the "Attorney") and

2. Allan Teh,

3. Sylvia Benito

The Managing Partners agree that no person shall be added or admitted to the Partnership as either a Partner or Managing Partner without the unanimous, affirmative vote of the Managing Partners, with the sole exception of the provisions set forth in Section 16.

**2.      Name.**

The name of the Partnership shall be KS Law Group, LLP, and all business of the Partnership shall be conducted under and in such name. There shall be no change to the Partnership name without the affirmative majority vote of the total, combined ownership interests held by the Managing Partners in the Partnership.

**3.      Primary Place of Business.**

The Partnership shall be established and have the place of business in the District of Columbia, located at 1100 H Street NW, Suite 840, Washington, D.C. 20005 or at an address or location to be determined by the affirmative majority vote of the total, combined ownership interests held by the Managing Partners in the Partnership.

---

[1] All references to Allan Teh are to him in his capacity as Partner and nominee for Kamunting Street Capital Management, L.P. shall have the right to designate a replacement Partner for Allan Teh, who shall then become a Managing Partner, in the event that Allan Teh is unwilling to serve, becomes incapacitated or dies.

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

4.      **Sole Purpose.**

The Partnership's sole purpose is to engage in the practice of law, in order to provide the Partners with the opportunity for pecuniary gain, professional growth and service to the bar and the state and communities which the Partnership serves.

The Partnership shall be a partnership only for the purpose specified in this Section. Except as otherwise provided in this Agreement, the Partnership shall not engage in any other activity or business that is not reasonably necessary or appropriate to the accomplishment of its purpose, and no Partner shall have any authority to hold himself out as the agent of another Partner in regard to any other business or activity.

5.      **Statutory Compliance.**

The Partnership shall exist under and be governed by, and this Agreement shall be construed in accordance with, all the applicable laws of the District of Columbia and the District of Columbia Rules of Professional Conduct. The Managing Partners agree to and shall make all filings and disclosures required by, and shall otherwise comply with, all such laws. The Managing Partners agree to and shall execute and file any assumed or fictitious name certificates and other documents and instruments as may necessary or appropriate with respect to the formation of and conduct of business by the Partnership.

Further, each Managing Partner and Partner, other than the designated Legal Managing Partner (identified in Section 14 of this Agreement), hereby agrees not to hold himself or herself out to the general public, nor publicize in any media or forum their or any other Members' ownership, membership or affiliation with the Partnership.

6.      **Indemnification.**

Melchionni (an "Indemnifying Partner") hereby agrees to indemnify Allan Teh from time to time, and hold them harmless from and against all liability, loss, cost, damage and expense (including attorneys' fees and costs incurred in the investigation, defense and settlement of the matter) which the Partnership or any of such other Partners shall ever sustain, suffer or incur which relate or arise out of or in connection with the operation of the Partnership or a breach by the Indemnifying Partner of any representation, warranty or covenant made by the Indemnifying Partner in this Agreement. If the Partnership, Allan Teh from time to time are made a party to any litigation or otherwise incurs any loss or expense as a result of or in connection with any Indemnifying Partner's personal or professional obligations or liabilities unrelated to Partnership business, such Indemnifying Partner shall indemnify and reimburse the Partnership, Allan Teh from time to time, for all such loss and expense incurred, including reasonable attorneys' fees.

7.      **Title to Property.**

The Partnership shall hold all real and personal property interests in the name of the Partnership, and not in the name of any Partner.

8.      **No Payments of Individual Obligations.**

The Partners agree to and shall use the Partnership's credit and assets solely for the benefit of

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

the Partnership.

Melchionni in his capacity as agent and nominee for KS Law Group, LLP, shall pay the costs of acquiring and maintaining malpractice and general liability insurance (to the extent these coverages are available) for KS Law Group, LLP.  The policy shall be at least $5 million per claim/ $5 million in the aggregate and cover all Managing Partners for acts undertaken in their official capacity as Managing Partners.

**9.      Limitation of Duties**

Each Partner hereby agrees that he/she owes duties of care, honesty and loyalty to the other Partners and to the Partnership itself, subject only to the following limitations:

(a)      Subject to their Non-Circumvention obligations, the Partners are not restricted from competing with the Partnership. Each Partner and the Partnership itself waives any breach of duty arising from a Partner engaging in any business, enterprise or transaction, which may directly or indirectly compete with the partnership, or that otherwise would constitute a business opportunity for the Partnership.

(b)      Each Partner who is an Attorney shall have no limitation regarding the ethical practice of law, and any duty under this Agreement or implied in law shall be waived to the extent it would interfere with a lawyer's ability to represent any client as required by the rules of ethics and professional responsibility.

**10.      Non-Circumvention.**

Notwithstanding any other provision in this Agreement, if an attorney Partner withdraws from the Partnership, the withdrawing attorney Partner shall pay to the Partnership a share of the fees received for legal services provided to any client of the Partnership who subsequently engages the withdrawing attorney Partner. The allocation of the fees received shall be in proportion to the work done before and after the withdrawal. Recoverable costs shall be reimbursed upon receipt. The Partners irrevocably agree that they shall not, directly or indirectly, interfere with, circumvent or attempt to circumvent, avoid, by-pass or obviate the Partnership's interest in and relationship with pre-established sellers, buyers, brokers, dealers, distributors, technology providers, intermediaries, entrepreneurs, consultants, employees, legal counsel, professional relationships, individuals, or any other pre-established or un-contracted relationships revealed or introduced by one Partner to another in connection with any present and future transactions related to this Partnership.

**11.      Ownership Interests.**

The Managing Partners' Ownership Interest in the Partnership shall be:

1. Lee Melchionni, Esq.                25%

2. Allan Teh,                          50%

3. Sylvia Benito,                      25%

The Managing Partners agree that, other than the percentages and adjustments set forth in this Section, the Ownership Interest of the Partners shall not be amended or changed without the unanimous, affirmative vote of the Managing Partners.

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

**12.     Capital Contributions.**

It is expressly understood that Allan Teh will be underwriting and funding the activities of the Firm. The Partners agree that Capital Contributions, will be made from time to time over a six (6) month period, for a total minimum amount of $4,000,000. The Capital Contributions will be made by Allan Teh in the amount of $4,000,000.

**13.     Rights, Powers and Responsibilities of the Managing Partners.**

The Managing Partners shall divide the responsibility for certain areas of Partnership operations as set forth herein:

A) Lee Melchionni shall be the Legal Managing Partner. The Legal Managing Partner shall provide the legal support to work up, qualify, process, manage and settle cases. He shall also be responsible for case related expenses, including the use of third party vendors to accomplish these tasks.  In fulling these roles the Legal Managing Partner shall have complete and unequivocal control and veto power over any and all decisions relating to the practice of law, the prosecution of each of the Partnership's client's legal claims, the outward conduct of the law firm, the handling of funds in any IOLTA or client trust accounts, the public statements and representations of the law firm (including any and all marketing, branding and website design), conflicts of interest, whether actual or potential, co-counsel relationships, referrals to counsel, fee disputes, and client confidentiality, as well as any activities by or on behalf of the law firm, including the activities of any Partners, employees, agents, and independent contractors, which are regulated, limited or otherwise addressed in any way by the District of Columbia Rules of Professional Conduct.

Per District of Columbia Rule of Professional Conduct 5.4, the Legal Managing Partner hereby agrees to be responsible for and to supervise the managerial and other activities of the nonlawyer Partner, Allan Teh, and other Partners as they may be added, as if these non-lawyer Partners were lawyers admitted to practice in the District of Columbia, and to supervise the ethical conduct of same under the standards set forth in District of Columbia Rule of Professional Conduct 5.1. It is hereby agreed that this provision will require the Partnership and Legal Managing Partner to make reasonable efforts to ensure that the Partnership has in effect measures giving reasonable assurance that all the participants in the Partnership conform to the D.C. Rules of Professional Conduct.

Allan Teh and Sylvia Benito, as a Non-Lawyers participant in the Partnership per D.C. Rule of Professional Conduct 5.4, shall have the authority over marketing Partnership Activities, and provide other professional management services, all in order to assist the Partnership in providing legal services to the Partnership's clients. These managerial activities will include securing financing and funding, identifying emerging trends in litigation, planning and implementing marketing and branding of the Partnership, obtaining new clients and cases, joint venturing, firm infrastructure management, and advising the Managing Partners regarding the same.

A)     In the event that the Managing Partners disagree regarding a Partnership operation or activity which is directly addressed within the District of Columbia Rules of Professional Conduct and also relates to marketing, branding, marketing campaigns, internet marketing or internet design, or regarding any proposed, contemplated or actual activity for or on behalf of the Partnership which is

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

regulated and/or limited by the District of Columbia Rules of Professional Conduct, the Legal Managing Partners shall have complete and unequivocal control of and veto power over, any such activity, as set forth in Section 14(A) above.

Per District of Columbia Rule of Professional Conduct 5.4, the Non-Lawyer Managing Partner, hereby agrees and undertakes to abide by the D.C. Rules of Professional Conduct as if she was a lawyer admitted in the District of Columbia.

### 14. Partner Compensation.

No Partner shall receive any interest or salary with respect to his/her Capital Contributions or his/her Ownership Interest, or for services rendered to or on behalf of the Partnership, or otherwise in his/her capacity as Partner, except as otherwise provided in this Agreement or by unanimous written consent of all Partners.

### 15. Withdrawal, Divorce or Death of a Partner.

Any Partner may withdraw from the Partnership upon sixty (60) calendar days' written notice to the other Partners and Managing Partners. Upon withdrawal, the withdrawing Partner shall cease to have any rights to further participation in the management or operations of the Partnership. Such withdrawing Partner shall continue to have the right to payment of his/her percentage of the fees paid to the Partnership on claims that were retained by the Partnership prior to the day the Partner gave his/her notice of withdrawal to the Partnership. For purposes of this Section, the retainer date shall be deemed to be the first date on which the client executed a retainer agreement with the Partnership.

Furthermore, a Partner's death or permanent disability shall be deemed a "withdrawal" as of the date of the death or permanent disability. A deceased or permanently disabled Partner and/or his/her estate and heirs shall continue to have the right to payment of his/her share of the fees paid to the Partnership in accordance with the Partner's Partnership Interest as of the date of death or permanent disability on cases that were retained by the Partnership on or before such date. Payments under this provision shall be made in the normal course of business pursuant to the rules for distribution set forth in Section 22 of this Agreement.

The Partners hereby agree that, if by operation of law or by judgment or judicial decree in a bankruptcy or divorce case, any portion of a Partner's Ownership Interest in the Partnership is assigned to a third party, said assigned or transferred interest, to the extent it is assigned or transferred to a third party, shall be treated as if, on the date of the assignment or transfer order, the Partner in question became deceased, and any such Partner shall continue to have the right to payment of his/her percentage of the fees paid to the Partnership on cases that were retained by the Partnership prior to the date of withdrawal.

### 16.    Expulsion for Cause.

(a)      For Cause Only.

Any Partner may be expelled" for cause", upon the affirmative majority vote of the total, combined ownership interests held by the Managing Partners in the Partnership, For purposes of this provision, "cause" for expulsion will include but not be limited to any of the following:

(i)      Disbarment, suspension, or other major disciplinary action determined

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

adversely to any Attorney Partner by any duly constituted authority;

(ii)   Professional misconduct or violation of the canons of professional ethics, if such misconduct continues after its cessation bas been requested by the Managing Partners;

(iii)   Any action or inaction that injures or threatens the professional standing or business operations of the Partnership, if such action or inaction continues after its cessation is requested by the Managing Partners, as set forth below;

(iv)   Any Partner takes a position that adversely effects the continuation of the Partnership, if such continues after its cessation is requested by the Managing Partners.

(b)   Notice of Expulsion for Cause.

If majority of the combined ownership interests held by the Managing Partners in the Partnership determines that "cause" exists for expulsion of a Partner, then the Partnership shall provide notice of this decision to the Partner who is subject to expulsion, and the Partner shall have ten (10) business days after notice is given to cure or remedy the reason for expulsion, if a cure or remedy is possible.

(c)   Entitlement to Profits After Expulsion.

Upon any expulsion, the expelled Partner shall be treated as a "withdrawn" Partner pursuant to Section 15, above, as of the date on which the expelled Partner failed to cure the reason for his expulsion, or five (5) business days from the Notice of Expulsion, whichever is later. The expelled Partner will have no other entitlement to any compensation. Furthermore, the Managing Partners may withhold future payments to any Partner who has been expelled for cause and apply those payments as a setoff against any damages to the Partnership caused by the expelled Partner or any liabilities due from the expelled Partner to the Partnership.

## 18. Liquidating Events.

The Partnership shall dissolve and commence winding up and liquidating upon the first to occur of any of the following ("Liquidating Events"):

(a)   The affirmative vote of the majority of the total, combined ownership interests held by the Managing Partners in the Partnership, to dissolve, wind up, and/or liquidate the Partnership; or

(b)   The happening of any other event that makes it unlawful or impossible to carry on the business of the Partnership.

The Partnership shall not dissolve prior to the occurrence of a Liquidating Event. If it is determined by a court of competent jurisdiction, that the Partnership has dissolved prior to or without the occurrence of a Liquidating Event, the Managing Partners hereby agree to continue the business of the Partnership without a winding up or liquidation.

## 19. Winding Up.

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

(a)     Upon the occurrence of a Liquidating Event, the Partnership shall continue for the purpose of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and the Partners, and no Partner shall take any action that is inconsistent with, or not necessary to or appropriate for this winding up of the Partnership's business and affairs. To the extent not inconsistent with the foregoing, all covenants and obligations in this Agreement shall continue in full force and effect until such time as the Property has been distributed pursuant to this Agreement and the Partnership has terminated all operations.

(b)     The Managing Partners (or any Person elected for this purpose by the Managing Partners) shall be responsible for overseeing the winding up and liquidation of the Partnership, shall take full account of the Partnership's liabilities and Property, shall cause the Property to be liquidated as promptly as is consistent with obtaining the fair value thereof, and shall cause the proceeds there from, to the extent sufficient therefore, to be applied and distributed in the following order:

(i)      First, to the payment and discharge of all of the Partnership's debts and liabilities to creditors other than the Partners;

(ii)     Second, to the payment and discharge of the Underwriting Contribution (defined in Section 20);

(iii)    to the payment and discharge of all other Partnership's debts and liabilities to Partners; and

(iii)    The balance, if any, to the Partners in accordance with their Capital Accounts, after giving effect to all contributions, distributions, and allocations for all periods.

(c)     Except with respect to the Underwriting Contribution (defined in Section 20), each Partner hereby expressly waives any right which the Partner individually, as a creditor of the Partnership, might otherwise have under the Code, to receive distributions of Partnership assets *pari passu* with the other creditors of the Partnership, in connection with a distribution of assets of the Partnership or in satisfaction of any liability of the Partnership, and hereby subordinates any such right to said creditors.

## 20. Preferred Return.

Fifteen percent (15%) per annum simple interest multiplied by the invested capital, which shall accrue from the date of the Firm's acceptance of Allan Teh's Underwriting Contributions, until the Firm receives its first mass tort settlement proceeds via a Qualified Settlement Fund.

## 21. Profits and Losses.

After the Partnership repays the Underwriting Contribution (defined in this Section), the profit/loss allocation shall be calculated on a net basis as a percentage of the resulting fee, net of expenses, which shall not include legal fees and expenses of any kind. Expenses which pertain to a particular case should be deducted from the fees received for that case before allocating profits/losses to the extent that they cannot be charged to the client. Partnership Expenses which do not pertain to a particular case shall be amortized over all pending cases at the time the expense was incurred, in an

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

equal amount for each case.

Profits

Net Profits after full and complete reimbursement of funding by Allan Teh for a particular mass tort campaign shall be allocated as follows after the holdback of reserves as unanimously agreed to and approved by the Managing Partners:

(a)    Return of Capital: First, one hundred percent (100%) to Allan Teh until Distributions to such equal the amount of Allan Teh's Capital Contributions.

(b)    Preferred Return: Second, one hundred percent (100%) to Allan Teh until Distributions to such of Distributable Cash on a cumulative basis pursuant to this clause equal the Preferred Return.

(c)    Catch up: Second, one hundred percent (100%) to Lee Melchionni and Sylvia Benito until Distributions to Lee. Melchionni and Sylvia Benito on a cumulative basis as carried interest Distributions equal twenty percent (20%) of all Distributions,

(d)    Split: Any balance, (i) eighty percent (80%) to Allan Teh and (ii) twenty percent (20%) to Lee Melchionni and Sylvia Benito.

It is expressly understood that Allan Teh will be underwriting and funding the activities of the Law Firm.  Allan Teh is committing to fund a total of $4,000,000 ("Underwriting Contributions") to be paid to the firm as needed and determined by the Managing Partners to run a campaign related to any case/litigation as determined by the Managing Partners.  The Managing Partners agree and understand that all such costs incurred by Allan Teh on behalf of the Company, including the Underwriting Contribution, shall be treated as an interest-free loan and paid back in full prior to any Partnership distributions.

Losses

It is understood that Lee Melchionni, Esq. shall not be responsible to pay back Allan Teh in the event that a particular mass tort campaign, case or litigation effort fails to generate profits. In the event that either party wants to recoup losses from a particular Mass Tort campaign that did not generate a profit from the profit(s) of other Mass Tort campaign(s) that do generate profits, then all Parties shall have the right to recoup their losses. In the case of Allan Teh, the amount of the loan referenced above and all Capital Contribution made by them used to acquire such cases which are not paid back or recovered shall be subject to such offset.

**22. Management Fee.**

KS Law Group will charge a management fee of one percent (1%) on invested Capital Contributions.

**23. Entire Agreement.**

This Agreement constitutes and shall be considered the entire agreement between the parties with respect to the subject matter of this document, and supersedes all previous arrangements, understandings, representations or agreements between the parties, whether written or oral. As set forth

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

in Section 12, the Partners may, from time to time, by unanimous, affirmative vote, agree to alter certain portions of this Agreement for Special Allocations. However, the Partners hereby agree that any such secondary agreement shall apply only to the special circumstances considered therein and will not alter the terms or conditions of this Agreement beyond the limited time and scope set forth in said secondary, written agreement.

### 24. Distributions to Partners.

Distribution to the Managing Partners shall occur at the conclusion of any singular case pursuant to Section 21.

### 25. Amounts Withheld.

All amounts withheld pursuant to the Tax Codes or any other state or local tax law, with respect to any payment, compensation or distribution to the Partnership or the Partners, shall be treated as amounts distributed to the Partners, for all purposes under this Agreement. The Partnership is authorized to withhold from distributions, or with respect to allocations, to the Partner and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law and shall allocate such amounts to the Partners with respect to which such amount was withheld.

### 26. Decisions

Except as otherwise provided in this Agreement, all determinations, decisions, approvals, and actions affecting the Partnership and its business and affairs shall be determined, made, approved, or authorized only by the affirmative vote of 66 2/3% of the total, combined ownership interests held by the Managing Partners in the Partnership. It is further acknowledged and agreed, however, that any decision falling under the matters set forth in Section 14 of this Agreement shall be within the professional discretion of the Legal Managing Partner.

### 27. Vote Required for Certain Actions.

Notwithstanding Section 24 hereof:

(d)       no decision or action regarding the incurrence by the Partnership of any debt, contract or obligation for which the Partners are individually liable shall be made or taken without the affirmative vote of all Managing Partners in the Partnership; and

(e)     no decision or action regarding the incurrence by the Partnership of any debt for which the Partnership is liable shall be made or taken without the affirmative vote of all Managing Partners in the Partnership.

### 28. Partners Authorized to Take Certain Actions on Behalf of the Partnership.

Except as otherwise provided elsewhere in this Agreement, each Managing Partner is authorized to take the following actions and make the following decisions to the extent that such actions and decisions are necessary to permit such Managing Partner to carry on the Partnership's routine, day-to-day practice of law:

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

a. Accept clients on behalf of the Partnership based on criteria set forth by Legal Managing Partners, and agree to undertake specific matters for any Partnership client based on criteria set forth by Legal Managing Partners provided that a Managing Partner accepting such client or undertaking such matter is responsible for assuring that such action will not create a conflict with the interests of any other client and is otherwise consistent with the types of clients and matters normally handled by the Partnership, and provided further that such Managing Partner obtains the concurrence of any other Managing Partner or Managing  Partners whose services may reasonably be expected to be required to service such client or matter.

b. Take any other action and make any other decision that is clearly routine and incidental to the day-to-day conduct of the Partnership and/or its practice.

## 29. Banking.

All funds of the Partnership shall be deposited in the Partnership's name, in such account or accounts with member banks of the FDIC as may be approved by an affirmative majority vote of the total, combined ownership interests held by the Managing Partners in the Partnership; provided, however that the Managing Partners may elect to deposit all or a portion of the funds standing in the Partnership reserves in interest-bearing accounts with, or apply such funds to purchase short-term interest-bearing investments issued or guaranteed as to payment by, such banks or other financial institutions that are members of the FDIC or the United States (or its agencies or instrumentalities).

## 30. Restrictions on Transfers.

Except as provided in footnote 1, no Partner shall transfer all or any portion of his Partnership interest or any rights therein without the unanimous consent of the Managing Partners. The Partners not seeking to transfer their interests shall have the right of first refusal to purchase any such interest in equal shares. Any transfer or attempted transfer by any Partner in violation of the preceding sentence shall be null and void and of no force or effect whatsoever. Each Partner hereby acknowledges the reasonableness of the restrictions on transfer imposed by this Agreement in of the Partnership purposes and the relationship of the Partners. Accordingly, the restrictions on transfer contained herein shall be specifically enforceable. Each Partner hereby further agrees to hold the Partnership and each Partner (and each Partner's successors and assigns) wholly and completely harmless from any cost, liability, or damage (including, without limitation, liabilities for income taxes or costs of enforcing this indemnity) incurred by any of such indemnified Persons as a result of a transfer or an attempted transfer in violation of this Agreement.

## 31. Waiver of Partition.

No Partner shall, either directly or indirectly, take any action to require partition or appraisement of the Partnership or of any of its assets or properties or cause the sale of any Partnership property, and notwithstanding any provisions of applicable law to the contrary, each Partner (and his legal representatives, successors or assigns) hereby irrevocably waives any and all right to maintain any action for partition or to compel any sale with respect to his Partnership interest, or with respect to any assets or properties of the Partnership, except as expressly provided in this Agreement.

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

### 32. Rights of Partners.

Except as otherwise provided in this Agreement, each Partner shall look solely to the assets of the Partnership for the return of his Capital Contributions and shall have no right or power to demand or receive property other than cash from the Partnership. No Partner shall have priority over any other Partner as to the return of his Capital Contributions, distributions, or allocations unless otherwise provided in this Agreement.

### 33. Notice of Dissolution.

In the event a Liquidating Event occurs, or any other event occurs that would result in a dissolution of the Partnership, the Partnership shall, within thirty (30) calendar days thereafter: (a) provide written notice thereof to each of the Partners and to all other parties with whom the Partnership regularly conducts business, and (b) publish notice of such dissolution in a newspaper of general circulation in each place in which the Partnership regularly conducts business.

### 34. No Liability for Partnership Debts.

Except as provided in Section 7, no Partner shall be personally liable or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations or liabilities of or chargeable to the Partnership or other Partner, whether arising in tort, contract, or otherwise that are incurred, created or assumed by the Partnership, except with respect to an obligation as to which all of the Partners have unanimously agreed in writing that the Partners would be personally liable.

### 35. Indemnification of Managing Partners/Partners by Partnership.

The Partnership shall, to the extent of its assets, indemnify, defend and hold each Partner in the Partnership free and harmless from any and all claims, demands, liabilities, obligations, damages, losses, costs and expenses, including attorneys' fees (individually, a "Liability" and collectively, the "Liabilities") incurred in connection with the business of the Partnership, provided the acts or omissions from which the Liabilities arise were performed by the Partner in good faith and with a reasonable belief that the Partner was acting within the scope of the Partner's authority under this Agreement and the Partner was not grossly negligent or guilty of intentional misconduct.  Neither the Partnership nor any Partner shall have any claim against any other Partner by reason of any act or omission for which such Partner is entitled to indemnification under the Agreement.

### 36. Partnership Representative and Indemnification Thereof.

Partner Lee Melchionni, Esq. is specifically authorized to act as the "Partnership Representative" (hereafter the "PR") under the applicable tax Code, and in any similar capacity under state or local law. The Partnership and the other Partners agree to defend, indemnify and hold harmless the PR, from all costs and expenses, including fees of outside attorneys, accountants and experts, incurred in acting as PR during or after the termination or expiration of the term of the Partnership. The Partnership and the other Partners further agree to execute such powers of attorney and other forms and authorizations as may be required by the IRS for a Partner to act as PR.

### 37. Professional Liability Insurance.

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

The Partnership shall maintain policies of professional liability, errors and omissions, general liability, in the amount of $5 million per occurrence/$5 million aggregate. As stated above, this shall be paid annually by the Partnership.

### 38. Notices.

Any notice, payment, demand, or communication required or permitted to be given by any provision of this Agreement shall be in writing, and sent by overnight courier to recipient's hands, or U.S. certified mail with return receipt requested, to the following addresses:

Lee Melchionni, Esq.
20900 NE 30th Ave
Suite 510
Miami, FL 33180

Sylvia Benito
20900 NE 30th Ave
Suite 510
Miami, FL 33180

Allan Teh
119 Washington Ave
Suite 600
Miami Beach, FL 33139

Such addresses may be changed from time to time by any party by providing written notice in the manner set forth above. The date the party receiving notice will be considered to have been noticed will be the date of the delivery, as shown on the courier confirmation or return receipt from the U.S. postal service.

### 39. Resolution of Disputes.

Any controversy arising out of or related to this Agreement or the breach thereof shall be settled under the law of the District of Columbia without reference or regards to any conflict of laws principles, and shall be resolved via arbitration under the American Arbitration Action, 9 U.S.C. § 2, in the District of Columbia, in accordance with the rules of the American Arbitration Association, and judgment entered upon the award rendered may be enforced or appealed by appropriate judicial action pursuant to the District of Columbia Code of Civil Procedure. The arbitration shall be heard by a single arbitrator, which shall be a person unanimously agreed to by the Managing Partners, and the dispute shall be heard within thirty (30) days following notice by one party that he/she desires that a matter be arbitrated.

If the parties are unable, within such 30-day period to agree upon an arbitrator, then the issue shall be heard by an arbitrator selected by the District of Columbia office of the American Arbitration Association, which arbitrator shall be experienced in the area of legal partnerships and who shall be knowledgeable with respect to the subject matter area of the dispute.

The arbitrator shall render a decision within thirty (30) days following the close of presentation by the parties of their cases and any rebuttal. The parties shall agree within thirty (30) days following

DocuSign Envelope ID: 3CEFF3A9-195E-44C8-8A9B-084BC0EF0834

selection of the arbitrator to any prehearing procedures or further procedures necessary for the arbitration to proceed, including interrogatories or other discovery; provided, in any event each Partner shall be entitled to discovery in accordance with the District of Columbia Code of Civil Procedure. The arbitrator shall determine a prevailing party in the proceeding, and award the prevailing party his costs and expenses, including but not limited to reasonable attorneys' fees and arbitration costs, from the non-prevailing party in such proceeding.

**40. Counterparts.**

This Agreement may be executed by facsimile and/or in two or more counterparts, each of which shall constitute an original and all of which together shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, the parties have entered into this Agreement of Partnership as of the dates set forth below.

_Lee Melchionni_

Lee Melchionni, Esq.

Aug 24, 2021

Date

Allan Teh,

Date: August 24th, 2021

Sylvia Benito (Aug 24, 2021 16:33 EDT)

Sylvia Benito,

Aug 24, 2021

Date

# KS Law Group Operating Agreement.docx

Final Audit Report                                                                                   2021-08-24

| | |
|---|---|
| Created: | 2021-08-24 |
| By: | Lee Melchionni (lee@capital4justice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_4MpQdjxaqLAEo3BNLfP3BscoK90ghu0 |

## "KS Law Group Operating Agreement.docx" History

🖋 Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)
2021-08-24 - 2:40:53 PM GMT- IP address: 71.77.192.124

📄 Document created by Lee Melchionni (lee@capital4justice.com)
2021-08-24 - 6:10:55 PM GMT- IP address: 71.77.192.124

📧 Document emailed to Lee Melchionni (lee@capital4justice.com) for signature
2021-08-24 - 6:12:21 PM GMT

📧 Document emailed to Sylvia Benito (sylvia@capital4justice.com) for signature
2021-08-24 - 6:12:21 PM GMT

📄 Email viewed by Sylvia Benito (sylvia@capital4justice.com)
2021-08-24 - 6:12:22 PM GMT- IP address: 74.125.150.38

🖋 Document e-signed by Lee Melchionni (lee@capital4justice.com)
Signature Date: 2021-08-24 - 6:12:32 PM GMT - Time Source: server- IP address: 71.77.192.124

🖋 Document e-signed by Sylvia Benito (sylvia@capital4justice.com)
Signature Date: 2021-08-24 - 8:33:37 PM GMT - Time Source: server- IP address: 172.58.175.96

✅ Agreement completed.
2021-08-24 - 8:33:37 PM GMT

 Adobe Sign

Subject: Re: Data request / update

# Exhibit 6

 **Lee Melchionni** <lee@capital4justice.com>
to Sohail Shahrasebi, Sylvia Benito

Mon, Oct 18, 2021, 5:37 PM

Sohail,

We have answered your questions in blue below. Do not hesitate to reach out with follow up questions.

- Could we be given the following

  - A final copy of the legal documents supporting the supporting the Denovo US law firm?
    - We have attached an opinion from our ethics counsel, Jack Marshall, on non-lawyer partners.
  - Of the $8mln we've committed to the US cases, an update on how much has been invested and what the distribution is per case type
    - We have invested all of the $8mln committed. I have broken down the number of cases and case type, for Justice Partners and then KS Law Group below.
    - Justice Partners
    - 200 Firefighter Foam
    - 208 Talc
    - 380 Hernia Mesh
    - 350 3M
    - 150 RoundUp
    - 200 Zantac
      - KS Law Group
      - 155 RoundUp
      - 200 Talc
      - 212 Hernia Mesh
      - 212 3M
  - Any granularity on the number of claimants per case type that have been been warehoused with the amount currently invested.
    - The attached spreadsheet gives you the case list for KS Law Group. We have only filled 123 of the 155 RoundUp cases. We are taking in new cases daily. Please keep in mind that this list will change as a result of dropoff, but those cases are replaced at no cost.
  - Update on the status of the various cases in the US and timing on each case
    - Hernia Mesh - We continue to march towards settlement with multiple manufacturers.  We are in the process of working up our cases and replacing those that have been disqualified. We are cautiously optimistic that the majority of our docket will be settled by Q2 of 2022.
    - Talc - We will send a separate, longer update, given the bankruptcy news. We are in the process of gathering information.

- 3M - There have been four trials with mostly positive results. The first trial resulted in a $7.1M verdict for three plaintiffs in April, while the second ended in a victory for 3M in May. This was not a surprise, given that it was a 3M pick for trial. The third trial found 3M 62% liable for the $1.7M in damages a veteran sustained. A jury in the fourth trial awarded a U.S. Army veteran $8.2M after finding that 3M's Combat Arms Earplugs Version 2 caused him to suffer hearing loss and tinnitus. There are multiple trials scheduled over the next few months, but it is possible that a settlement is reached in the next few months.
    - RoundUp - in 2020, a global settlement agreement was proposed, where $10 billion was allocated to resolve existing claims and a controversial scientific panel was created to decide the fate of future claims. In March 2021 the RoundUp MDL Judge rejected Bayer's motion for approval of the proposed settlement for all future RoundUp claims. In August 2021 Bayer announced that it had set aside $4.5B for future RoundUp claims and that it had pulled glyphosate-based RoundUp from the U.S. consumer market.
    - Firefighter Foam - There is no substantive update since our last investor communication.
    - Zantac - There is no substantive update since our last investor communication.

- On the Diesel stuff

- Similar to Sam, could we be furnished with a copy of the agreement between you and the litigating counterparties when the documentation is completed?
    - Yes, our attorneys are currently preparing documents.

On Fri, Oct 15, 2021 at 9:34 AM Sohail Shahrasebi <Sohail@kstreetcap.com> wrote:
Hey Guys –

I spoke with Allan and he is asking for a bunch of stuff related to both the US cases we've invested in and Europe cases we intend to invest in.

- Could we be given the following
    - A final copy of the legal documents supporting the supporting the Denovo US law firm?
    - Of the $8mln we've committed to the US cases, an update on how much has been invested and what the distribution is per case type
    - Any granularity on the number of claimants per case type that have been been warehoused with the amount currently invested.
    - Update on the status of the various cases in the US and timing on each case
- On the Diesel stuff
    - Similar to Sam, could we be furnished with a copy of the agreement between you and the litigating counterparties when the documentation is completed?

Sorry again for the request. Just fulfilling Allan's demands.

Best Regards,
Sohail Shahrasebi


Director
Kamunting Street Capital
119 Washington Ave, Suite 600
Miami Beach, Fl 33139

O: 786-484-0771
M: 646-707-4484

**2 Attachments** • Scanned by Gmail



| | KS Case List 10.1… | | | Non-Lawyer Part… | |

# Exhibit 7

**From:** Lee Melchionni <lee@capital4justice.com>
**Date:** October 20, 2021 at 2:33:33 PM EDT
**To:** Sohail Shahrasebi <Sohail@kstreetcap.com>
**Cc:** Sylvia Benito <sylvia@capital4justice.com>, ALLAN TEH <allan.teh@icloud.com>
**Subject: Re: Data request / update**

Sohail,

For Allan's independent law firm, KS Law Group, we spent $3,880,080.00 to acquire 155 RoundUp cases, 200 Talc Cases, 212 Hernia Mesh Cases, and 212 3M cases. We are entitled to 60% of the attorney fee.

For Justice Partners, we have spent $11,250,000.00 to acquire 200 Firefighter Foam Cases, 208 Talc Cases, 380 Hernia Mesh Cases, 350 3M Cases, 150 RoundUp Cases, and 200 Zantac Cases. We are entitled to 72% of the attorney fee.

In addition, we purchased 12% of the attorney fee for 1128 Talc Cases, 1220 Hernia Mesh Cases, 302 3M Cases, and 300 RoundUp Cases. All of these cases were mature, meaning the clients had already been acquired and cases worked up to a certain point, mitigating case acquisition, drop off, and timing of settlement risk.

Best,
Lee

On Tue, Oct 19, 2021 at 9:52 AM Sohail Shahrasebi <Sohail@kstreetcap.com> wrote:
> Lee thanks for this. When you get a chance, as a follow-up can you please send me the $ invested per case type? Thank you.
>
> **From:** Lee Melchionni <lee@capital4justice.com>
> **Sent:** Monday, October 18, 2021 5:37 PM
> **To:** Sohail Shahrasebi <Sohail@kstreetcap.com>
> **Cc:** Sylvia Benito <sylvia@capital4justice.com>
> **Subject:** Re: Data request / update
>
> Sohail,
>
> We have answered your questions in blue below. Do not hesitate to reach out with follow up questions.
> - Could we be given the following
>   - A final copy of the legal documents supporting the supporting the Denovo US law firm?
>     - We have attached an opinion from our ethics counsel, Jack Marshall, on non-lawyer partners.
>   - Of the $8mln we've committed to the US cases, an update on how much has been invested and what the distribution is per case type
>     - We have invested all of the $8mln committed. I have broken down the number of cases and case type, for Justice Partners and then KS Law Group below.
>     - Justice Partners
>     - 200 Firefighter Foam
>     - 208 Talc
>     - 380 Hernia Mesh
>     - 350 3M
>     - 150 RoundUp
>     - 200 Zantac
>
>       - KS Law Group
>       - 155 RoundUp
>       - 200 Talc
>       - 212 Hernia Mesh
>       - 212 3M

- Any granularity on the number of claimants per case type that have been been warehoused with the amount currently invested.

    - The attached spreadsheet gives you the case list for KS Law Group. We have only filled 123 of the 155 RoundUp cases. We are taking in new cases daily. Please keep in mind that this list will change as a result of dropoff, but those cases are replaced at no cost.

- Update on the status of the various cases in the US and timing on each case

    - Hernia Mesh - We continue to march towards settlement with multiple manufacturers.  We are in the process of working up our cases and replacing those that have been disqualified. We are cautiously optimistic that the majority of our docket will be settled by Q2 of 2022.
    - Talc - We will send a separate, longer update, given the bankruptcy news. We are in the process of gathering information.
    - 3M - There have been four trials with mostly positive results. The first trial resulted in a $7.1M verdict for three plaintiffs in April, while the second ended in a victory for 3M in May. This was not a surprise, given that it was a 3M pick for trial. The third trial found 3M 62% liable for the $1.7M in damages a veteran sustained. A jury in the fourth trial awarded a U.S. Army veteran $8.2M after finding that 3M's Combat Arms Earplugs Version 2 caused him to suffer hearing loss and tinnitus. There are multiple trials scheduled over the next few months, but it is possible that a settlement is reached in the next few months.
    - RoundUp - in 2020, a global settlement agreement was proposed, where $10 billion was allocated to resolve existing claims and a controversial scientific panel was created to decide the fate of future claims. In March 2021 the RoundUp MDL Judge rejected Bayer's motion for approval of the proposed settlement for all future RoundUp claims. In August 2021 Bayer announced that it had set aside $4.5B for future RoundUp claims and that it had pulled glyphosate-based RoundUp from the U.S. consumer market.
    - Firefighter Foam - There is no substantive update since our last investor communication.
    - Zantac - There is no substantive update since our last investor communication.

- On the Diesel stuff

- Similar to Sam, could we be furnished with a copy of the agreement between you and the litigating counterparties when the documentation is completed?

    - Yes, our attorneys are currently preparing documents.

On Fri, Oct 15, 2021 at 9:34 AM Sohail Shahrasebi <Sohail@kstreetcap.com> wrote:

Hey Guys –

I spoke with Allan and he is asking for a bunch of stuff related to both the US cases we've invested in and Europe cases we intend to invest in.

- Could we be given the following

    - A final copy of the legal documents supporting the supporting the Denovo US law firm?
    - Of the $8mln we've committed to the US cases, an update on how much has been invested and what the distribution is per case type
    - Any granularity on the number of claimants per case type that have been been warehoused with the amount currently invested.
    - Update on the status of the various cases in the US and timing on each case

- On the Diesel stuff

    - Similar to Sam, could we be furnished with a copy of the agreement between you and the litigating counterparties when the documentation is completed?

Sorry again for the request. Just fulfilling Allan's demands.

Best Regards,
Sohail Shahrasebi

Director
Kamunting Street Capital
119 Washington Ave, Suite 600
Miami Beach, Fl 33139
O: 786-484-0771
M: 646-707-4484

Subject: KS Law Group

 **Lee Melchionni** <lee@capital4justice.com>
to Sohail Shahrasebi, Allan Teh, Sylvia Benito

Wed, Sep 28, 2022, 9:59 PM


# Exhibit 8

Sohail,

We have attached our agreement with the Lake Law Firm outlining our docket. In addition, I have attached a breakdown of the allocation of cases, pari passu, for each entity we manage, along with a list of every single client signed up, per case type, and their current status.

We have also attached an LOI for a loan the Lake Law Firm is about to receive, which addresses their credit worthiness.

Finally, we are in the process of negotiating replacement cases for KS Law Group which will most likely be 76 Talcum Powder cases, 98 Hernia Mesh cases, 22 Roundup cases, and we can discuss 3M in person on Monday. There will be drop off in these replacement cases as well. We also have alternative options to discuss on Monday. Any case, less those cases that drop off for non-medical records reasons, will be replaced when the litigation settles, at the cost of the case plus 8% interest per year.

There is an explanation from the CEO of Persis/Lake Law Firm below regarding the drop off in Mass Torts.

- Reasons why mass tort cases are rejected, what phase and reasons, with specific examples using talcum powder and hernia mesh. Most of the rejection is during/after phase 2 - the retrieval phase.

1. Clients are signed based on a verbal intake done, if they meet the specified criteria under the lawsuit, they are signed.
2. Phase 1 - Verbal Confirmation: Reconfirm intake details verbally, add additional information specific to case type. Shortly after, secondary outreach reconfirms the information provided over the phone with the addition of details not on the intake (details on the injury, length of use, diagnosis and doctor information).
   a. Reasons for Rejection - unfortunately, sometimes the potential new client doesn't recall the information required to proceed (or they do not have access to medical records if it's prior 7-10 years) to the next step of the case. So, they may be disqualified at this phase. Re: hernia mesh, fall off can be because they do not have access to the records proving the initial mesh implant product ID/records necessary to prove manufacturer of mesh implanted, particularly if the original mesh was implanted over 10 years ago, most facilities purge their records after 10 years and 7 in some cases.

3. Phase 2 - Retrieval Phase (medical records retrieval): Obtain medical records proving injury, diagnosis, and/or surgery where applicable.

   a. Reasons for Rejection - if the records are incomplete, no records found, or any issue with the records prohibiting us from moving forward with the case, they will have to be disqualified. Example re hernia mesh, if a product ID or "sticker" showing the manufacturer is not present/available, they will be disqualified (unable to prove).

4. Phase 3 - Nurse Review: review of medical records by a nurse/medical professional to determine if the injury, diagnosis, and/or surgery criteria are met based on case type.

   a. Reasons for Rejection - if upon reviewing the records, the link is not established between the case type and injury, criteria are not met. Therefore, the potential new client is disqualified.  As an example, with hernia mesh, the defect wasn't actually a defect with the mesh, but a recurrence of the hernia due to the individual and not a mesh defect, they will be disqualified. Example using talc, many times potential new clients believe they have ovarian cancer, but it is actually uterine or another cancer not part of criteria.

5. Phase 4 - PPF/PFS/Census Form: this is the document filed with the courts. It contains details involving the case including injuries, diagnosis, medical history, etc. as determined by the case type.

   a. Reasons for Rejection - very few will be disqualified at this phase. Mainly would be due to a client no longer wishing to pursue or unable to reach, but that will generally occur much earlier in the process.

A few outlier reasons for rejection:

1. No will/estate, unable to file on behalf of
2. Client no longer wishes to pursue
3. Client is uncooperative
4. Client is unresponsive/unable to reach

While these are reasons for rejection, there are processes in place to reduce the above. However, clients may be "rejected" due to one of the above reasons.

--

**Lee Melchionni, Esq.**
**Founder, COO**
**lee@capital4justice.com**
**717.380.7709**



---

**3 Attachments** • Scanned by Gmail



**PDF** KS Law Group IO…

**X** KS Case Allocati…

**PDF** LLF LOI.pdf

# Exhibit 9

| Row Labels | Total # of Cases | # of Good Cases | # of Bad Cases | Equity % |
|---|---|---|---|---|
| Hernia Mesh | 1533 | 519 | 1014 | 14% |
| Round Up | 252 | 83 | 169 | 44% |
| 3M | 770 | 399 | 371 | 29% |
| Talcum Powder | 1026 | 327 | 699 | 19% |
| **Grand Total** | **3581** | **1328** | **2253** | |

| Litigation | Total Cases Owed | Good Cases |
|---|---|---|
| Firefighter FM | 200 | 140 |
| Talc | 1026 | 327 |
| Hernia Mesh | 1533 | 519 |
| 3M | 770 | 399 |
| Roundup | 355 | 83 |

| KS Law Group | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Talc | 200 | 19% | 64 |
| Hernia Mesh | 220 | 14% | 74 |
| 3M | 220 | 29% | 114 |
| Roundup | 155 | 44% | 36 |

| Law Firm 1 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Hernia Mesh | 380 | 25% | 129 |
| 3M | 350 | 45% | 181 |
| Roundup | 150 | 42% | 35 |
| Firefighter FM | 200 | 100% | 140 |

| Law Firm 2 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Talc | 348 | 34% | 111 |

| Law Firm 3 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Hernia Mesh | 34 | 2% | 12 |

| Law Firm 4 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Talc | 237 | 23% | 76 |

| Law Firm 5 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Talc | 43 | 4% | 3 |
| Hernia Mesh | 49 | 3% | 17 |

| Law Firm 6 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Hernia Mesh | 380 | 25% | 129 |

| Law Firm 7 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Talc | 200 | 19% | 64 |
| Hernia Mesh | 350 | 23% | 118 |

| Law Firm 8 | Cases Owed | % of Total Cases | Cases Allocated |
|---|---|---|---|
| Hernia Mesh | 113 | 7% | 38 |
| 3M | 100 | 13% | 52 |
| Roundup | 50 | 14% | 12 |

From: **ALLAN TEH** <allan.teh@icloud.com>
Date: Fri, Oct 14, 2022 at 8:10 PM
Subject: Re: Communication
To: Sylvia Benito <sylvia@capital4justice.com>
Cc: Sohail Shahrasebi <sohail.shahrasebi@gmail.com>, Lee Melchionni <lee@capital4justice.com>

# Exhibit 10

I have been in many good and bad deals but the lack of transparency and competency I have seen so far has been appalling. Constant negative surprises. To the point that I have no confidence what so ever in anything that you said. Sohail shares my frustrations as well. If not my disappointment. This is not what I signed up for. Losing money is one thing but for me to get angry like this makes it worth less

Sent from my iPhone

> On Oct 14, 2022, at 7:41 PM, Sylvia Benito <sylvia@capital4justice.com> wrote:
>
> Allan
>
> I just got off another call with you, after multiple calls today. While I respect and honor you as a valued investor, and how to respond to all investors responsibly this communication is not professional or constructive.
>
> I suggest that we communicate through your CIO as he is a great fiduciary and can keep the flow of information appropriately on course.
>
> Next week you will receive:
>
> 1- your weekly report
> 2- any other updates as available
> 3- invitation to calls with co counsel  over the next two weeks as they are available
> 4- all questions answered via Sohail or emails
> 5- every option to move ahead in written detail
> 6- vendor letter
>
> I understand that investing can be an emotional rollercoaster but I continue to believe that we have solid and competent plans as your managers to preserve and grow your investor capital.
>
> Sylvia



**From:** Lee Melchionni <lee@capital4justice.com>
**Sent:** Friday, March 3, 2023 3:17:48 PM
**To:** Sohail Shahrasebi <Sohail@kstreetcap.com>; ALLAN TEH <allan.teh@icloud.com>
**Cc:** Sylvia Benito <sylvia@capital4justice.com>
**Subject:** KS Law Group Update

Sohail,

Attached are the case lists for KS Law Group ("KS"). To provide some context, KS is owed 200 Talcum Powder cases, with a maximum non-medical record drop off of 25%. Any shortfall in Talcu employees per converted Talcum Powder case, with the Internal Revenue Service ("IRS") under the Employee Retention Tax Credit program ("ERTC") under the Coronavirus Aid, Relief, and Ec Hernia Mesh cases, with a maximum non-medical record drop off of 30%. KS is owed 155 Roundup Cases, with a maximum non-medical record drop off of 25%. Any shortfall in Roundup cases one conversion basis. KS is owed 220 3M cases, with a maximum non-medical record drop off of 25%.

We are also sharing the executed case replacement agreement with the Lake Law Firm.

- **3M Earplugs**
  - 11 - Attempting to Contact
  - 3 - Filed
  - 54 - Pending
  - 79 - Retained and Sent to Firm
  - 5 - Unable to Reach/Unresponsive
- **Hernia Mesh**
  - 3 - Attempting to Contact
  - 8 - Filed
  - 82 - Pending
  - 2 - Ready to Submit
  - 43 - Retained and Sent to Firm
  - 4 - Unable to Reach/Unresponsive
- **Round Up**
  - 2 - Attempting to Contact
  - 27 - Pending
  - 14 - Ready to Submit
  - 18 - Retained - Sent to Firm
  - 14 - Unable to Reach/Unresponsive
- **Talcum Powder**
  - 1 - Attempting to Contact
  - 5 - Pending
  - 2 - Retained and Sent to Firm
  - 1 - Unable to Reach/Unresponsive

--
**Lee Melchionni, Esq.**
**Founder, COO**
**lee@capital4justice.com**
**717.380.7709**



---

**5 Attachments** • Scanned by Gmail



| KS_Talcum_Pow... | KS_3M_Earplugs... | KS_Round_Up_R... | KS_Hernia_Mesh... | KS Law Group - C... |

# Exhibit 12

**CASE REPLACEMENT AGREEMENT**

This CASE REPLACEMENT AGREEMENT (this "Agreement") is made and entered into as of December 1, 2022 by and among KS Law Group LLP, a District of Columbia limited liability partnership ("KS"), and Lake Law Firm, LLC, a New York limited liability company ("Lake") (each a "Party" and collectively the "Parties").

RECITALS

WHEREAS, Lake is a professional law firm engaged in the practice of law, with its principal offices in the State of New York;

WHEREAS, Lake is engaged in the acquisition of clients and case workup across multiple types of mass tort litigations, including talcum powder litigation ("Talcum Powder"), hernia mesh litigation ("Hernia Mesh"), Roundup litigation ("Roundup"), and 3M litigation ("3M", and combined with Talcum Powder, Hernia Mesh, Roundup, 3M, Firefighter Foam and Zantac, the "Cases", and each individual case within the Cases, a "Case");

WHEREAS, KS has previously paid Lake $3,880,000.00 in order to acquire client leads in connection with the Cases (the "Funded Amount");

WHEREAS, Lake has not delivered equivalent value in cases to the Funded Amount and owes KS Cases and replacement Cases, the quantity and identity of which are set forth below; and

WHEREAS, the Parties seek to memorialize the terms of their agreement.

NOW, THEREFORE, in consideration of the covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

1.     Replacement of Cases.  KS has previously paid Lake the Funded Amount for certain Cases as described below which Lake has yet to provide.  The Parties agree that notwithstanding any earlier agreement for Cases that existed between the Parties, Cases shall be provided by Lake to KS as set forth below.

    a.  Talcum Powder.

        i.  Lake agrees that KS is owed 200 Talcum Powder cases, guaranteed for medical records, which were purchased for $1,200,000, or $6,000 a Case (the "Talcum Power Purchase Price). The criteria for the medical record guarantee of the Talcum Powder cases are set forth in Exhibit A to this Agreement.

        ii.  Lake agrees that the maximum non-medical record drop off of KS' Talcum Powder cases will be 25%.

        iii.  Lake agrees that KS' is owed 60% of the total attorney contingency fee.

        iv.  Lake hereby agrees to allow KS to convert any shortfall in Talcum Powder cases owed into 6 filed employees per converted Talcum Powder case, with the Internal

Revenue Service ("IRS") under the Employee Retention Tax Credit program ("ERTC") under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

v. Lake agrees that if the owed filed employees are filed with the IRS by a law firm or company other than Lake, KS will receive 95% of the ERC fee received by Lake.

vi. Lake agrees that if the owed filed employees are filed with the IRS by Lake, KS will receive 50% of the ERC fee received by Lake.

vii. If Lake is unable to provide the filed employees before the statute of limitations expires on ERTC under the CARES Act, Lake agrees that within 90 days of the statute of limitations expiring, Lake will reimburse KS for the costs paid for each un-converted Talcum Powder case ($6,000 per case), plus 8% interest, per year, per case, from the purchase date of September 1, 2021.

b. Hernia Mesh.

i. Lake agrees that KS is owed 220 Hernia Mesh cases, guaranteed for medical records, which were purchased for $1,232,000, or $5,000 a Case (the "Hernia Mesh Purchase Price). The criteria for the medical record guarantee of the Hernia Mesh cases are set forth in Exhibit A to this Agreement.

ii. Lake agrees that the maximum non-medical record drop off of KS' Hernia Mesh cases will be 30%.

iii. Lake agrees that KS' is owed 60% of the total attorney contingency fee.

iv. Lake agrees to continue to replace Hernia Mesh cases for KS with additional Hernia Mesh cases

v. For Hernia Mesh cases that are replaced past October 15, 2022, Lake shall pay KS 79% of the attorney fee, which shall be identified by KS to Lake in writing.

vi. Solely as an example, if 100 Hernia Mesh cases are owed to KS where 79% of the attorney fee is paid to KS, the number of owed cases to KS shall be reduced to 91

vii. If the Hernia Mesh litigation were to reach a global settlement and cases are still owed to KS, Lake agrees that within 90 days of the global settlement being reached, Lake will reimburse KS for the costs paid for the undelivered Hernia Mesh cases ($5,000 per Case), plus 8% interest, per year, per Case, from the purchase date of September 1, 2021.

viii. The Hernia Mesh litigations include, but are not limited to, the litigations related to Johnson and Johnson Proceed and Prolene Hernia System, Ethicon Physio Mesh, Covidien, W.L. Gore & Associates, Atrium C-Qur, and Davol, Inc/C.R. Bard, Inc.

c. Roundup.

i. Lake agrees that KS is owed 155 Roundup cases, guaranteed for medical records, which were purchased for $782,500, or $5,048.39 a Case (the "Roundup Purchase Price). The criteria for the medical record guarantee of the Roundup cases are set

2

forth in Exhibit A to this Agreement.

    ii.    Lake agrees that the maximum non-medical record drop off of KS' Roundup cases will be 25%.

    iii.    Lake agrees that KS' is owed 60% of the total attorney contingency fee.

    iv.    Lake agrees to allow KS to convert any shortfall of Roundup cases into Camp Lejeune cases on a one-for-one conversion basis upon request from KS.  Solely as an example, KS would have the ability to convert 50 Roundup cases into 50 Camp Lejeune cases. To avoid any confusion, this example does not take into account non-medical record drop off.

    v.    If the Roundup litigation were to reach a global settlement and a shortfall of cases owed to KS still exists, Lake agrees that within 90 days of the global settlement being reached, Lake will reimburse KS for the costs paid for the undelivered Roundup cases ($5,048.39 per Case), plus 8% interest, per year, per Case, from the purchase date of September 1, 2021.

d.    3M.

    i.    Lake agrees that KS is owed 220 3M cases, guaranteed for medical records, which were purchased for $665,500, or $3,025 a Case (the "3M Purchase Price). The criteria for the medical record guarantee of the 3M cases are outlined in Exhibit A to this Agreement.

    ii.    Lake agrees that the maximum non-medical record drop off of KS' 3M cases will be 25%.

    iii.    Lake agrees that KS' is owed 60% of the total attorney contingency fee.

    iv.    Lake agrees to continue to replace 3M cases.

    v.    If the 3M litigation were to reach a global settlement and a shortfall of cases owed to KS still exists, Lake agrees that within 90 days of the global settlement being reached, Lake will reimburse KS for the costs paid for the undelivered 3M cases ($3,025 per Case), plus 8% interest, per year, per Case, from the purchase date of September 1, 2021.

2.    Written Notice of Modifications.  In the event that a case should be replaced, converted, or modified, KS will provide written notice to Lake informing them of the need for such replacement, conversion, or modification pursuant to Section 5(b) below.  Lake shall then use its best efforts to effect such replacement, conversion, or modification within a commercially reasonable timeframe.

3.    Guarantee of Medical Records. Subject to the agreed upon non-medical drop off for each of the Cases described above, if a client is disqualified based on the phases below, Lake agrees that the case will be replaced one-to-one, but subject to replacement provisions set forth above,

a.    Phase 1 – Verbal Confirmation.  The intake details are reconfirmed verbally, and additional information is added, based on the specific case type.  Secondary outreach from Lake reconfirms the information provided over the phone with additional details such as injury,

3

length of use, diagnosis, and doctor information to be provided.

    b.   Phase 2 – Medical Record Retrieval Phase.  Medical records are obtained, proving injury, diagnosis, and/or surgery where applicable.

    c.   Phase 3 – Nurse Review.  The medical records are reviewed by a nurse or medical professional to determine if the injury, diagnosis, and/or surgery criteria are met, based on the specific case type.

    d.   Phase 4 – Filing.  The plaintiff fact sheet, census form, and/or [PPF] are filed with the courts. They contain details of the case, including diagnosis, medical history, etc. and is based on the specific case type.

4.      <u>Responsibilities of Lake.</u>  Lake agrees to the following:

    a.   Lake will market, intake, and sign-up potential clients.

    b.   Lake will gather medical records, a medical summary, a plaintiff fact sheet, and/or court complaint as necessary.

    c.   Lake will act as liaison between the undesigned and trial firms.

    d.   Lake will handle any client inquiries. Any out-of-pocket expenses paid as result of the above will be a lien on clients' portion of any recovery.

5.      <u>Miscellaneous.</u>

    a.   <u>Expenses.</u>  Except as otherwise provided herein, KS, on the one hand, and Lake, on the other, shall each pay their own expenses incident to the negotiation, preparation, and carrying out of this Agreement, including all fees and expenses of its counsel and accountants for all activities of such counsel and accountants undertaken pursuant to this Agreement, irrespective of whether or not the transactions contemplated hereby are consummated.

    b.   <u>Notices.</u>  All notices and other communications given or made pursuant hereto shall be in writing and shall be deemed to have been duly given or made if and when delivered personally or by overnight courier to the Parties at the following addresses or sent by electronic transmission, with confirmation received (or at such other address for a Party as shall be specified by like notice):

        To KS:

        KS Law Group LLP
        20900 NE 30th Ave, Suite 510, Miami, FL 33180
        Attention: Lee Melchionni
        Email: lee@capital4justice.com

        To Lake:

        Lake Law Firm, LLC
        One Rockefeller Center, 11th Floor, New York, NY 10020
        Attention: Jeffrey Dubin

4

Email: elake@forpersist.com

Any such notice shall, when sent in accordance with the preceding sentence, be deemed to have been given and received on the earliest of (i) the day delivered to such address, (ii) the fifth (5th) business day following the date deposited with the United States Postal Service, or (iii) twenty-four (24) hours after shipment by such courier service.

c.  Assignment; Third Party Beneficiaries.  Neither this Agreement nor any rights or obligations under it are assignable, except that KS may assign its rights hereunder.  Except for any indemnified parties, there shall be no third party beneficiaries of this Agreement.

d.  Governing Law; Venue.  This Agreement shall be governed by, and construed in accordance with, the laws of New York applicable to contracts executed in and to be performed in New York.  Each of the Parties hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of New York and of the United States, in each case located in New York, for any litigation arising out of or relating to this Agreement (and agrees not to commence any litigation relating thereto except in such courts).

e.  Counterparts.  This Agreement may be executed in one or more counterparts, and by the different Parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  It is the express intent of the Parties to be bound by the exchange of signatures on this Agreement via DocuSign (or similar electronic means) or emailed PDF copies.

f.  No Implied Waiver; Remedies.  No failure or delay on the part of the Parties to exercise any right, power, or privilege hereunder or under any instrument executed pursuant hereto shall operate as a waiver nor shall any single or partial exercise of any right, power, or privilege preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. All rights, powers, and privileges granted herein shall be in addition to other rights and remedies to which the Parties may be entitled at law or in equity.

g.  Entire Agreement.  This Agreement, including the Exhibit attached hereto, sets forth the entire understandings of the Parties with respect to the subject matter hereof and thereof, and it incorporates and merges any and all previous communications, understandings, oral or written as to the subject matter hereof and thereof.

h.  Amendments; Actual Waivers.  This Agreement may not be amended except by an instrument in writing signed on behalf of KS and Lake.  Any agreement on the part of KS or Lake to any such extension or waiver shall be valid if set forth in an instrument in writing signed on behalf of KS or Lake.

i.  Headings.  The headings of the Sections of this Agreement, where employed, are for convenience only and do not form a part hereof and in no way modify, interpret or construe the meanings of the Parties.

5

j.   Severability.  Any provision of this Agreement which is invalid or unenforceable shall be ineffective only to the extent of such invalidity or unenforceability without invalidating or rendering unenforceable the remaining provisions of this Agreement; provided, however, in the event the provision which is invalid or unenforceable pertains to a material element of the transaction such that the principal objectives of the transaction provided for herein are materially impaired or are invalid or unenforceable, this Agreement shall be terminated.

k.   Specific Performance.  Each Party acknowledges that, in view of the uniqueness of the transactions contemplated by this Agreement, each Party would not have an adequate remedy at law for money damages in the event that this Agreement has not been performed in accordance with its terms, and therefore each Party agrees that the other Parties shall be entitled to specific enforcement of the terms hereof in addition to any other remedy to which it may be entitled, at law or in equity.

l.   No Presumption Regarding Drafter.  The Parties acknowledge and agree that the terms and provisions of this Agreement have been negotiated and discussed between them, and that this Agreement reflects their mutual agreement regarding the subject matter of this Agreement. Because of the nature of such negotiations and discussions, it would not be appropriate to deem any Party to be the drafter of this Agreement, and therefore no presumption for or against the drafter shall be applicable in interpreting or enforcing this Agreement.

\* \* \* \* \*

*[Signature Page Follows]*

6

IN WITNESS WHEREOF, the Parties hereto have executed this Case Replacement Agreement as of the date first set forth above.

**KS**:

KS Law Group LLP

By: *Lee Melchionni*
Lee Melchionni (Dec 27, 2022 20:53 EST)
Name: Lee Melchionni
Title:

**LAKE**:

Lake Law Firm, LLC

By: 
Edward Lake (Dec 27, 2022 20:47 EST)
Name: Edward Lake
Title:

[Signature Page to Case Replacement Agreement]

**Exhibit A**

**Talcum Powder:** Cases provided with the following criteria below and guaranteed by medical records:
- Diagnosed with ovarian cancer, fallopian cancer, primary peritoneal cancer, or endometrioid cancer).
- Seventy-five (75) years old or younger.
- Four (4) years plus of exposure.
- Negative BRCA test, preferred but acceptable if unknown.
- No previous or existing attorney representation.
- Ovarian cancer, fallopian cancer, primary peritoneal cancer, or endometrioid cancer with chemotherapy or treatment.
- Death within eighteen (18) months and original diagnosis within four (4) years of death.

**Hernia Mesh:** Cases provided with the following criteria below and guaranteed by medical records:
- Records showing revision, removal, or replacement surgery, or scheduled within ninety (90) days or needed, but unable to be performed due to medical professional recommendation.
- Client states no previous or existing attorney representation.
- All manufacturers.
- Surgery in 2011 or afterward.

**Roundup:** Cases provided with the following criteria below and guaranteed by medical records:
- Diagnosed with Non-Hodgkin lymphoma or subtype within the last ten (10) years, [unless medical records access then 2007 forward].
- Direct exposure only to Roundup for more than one (1) year.
- No existing attorney.

**3M:** Cases provided with the following criteria below and guaranteed by medical records:
- Used 3M Combat Arms CAEv2 Earplugs between 2003 and 2015.
- Diagnosed with tinnitus or documented loss of hearing of ten percent (10%) or more in at least one (1) ear.
- No existing attorney.

**Camp Lejeune:** Cases provided with the following criteria below and guaranteed by medical records:
- -PC must have resided, worked, or was otherwise exposed at Camp Lejeune, NC not less than 30 days from 8/1/1953 through 12/31/1987
- -PC must have been diagnosed with one of the following injuries after exposure at Camp Lejeune: Bladder Cancer, Brain Cancer, Brain Tumor, Cervical Cancer, Ovarian Cancer, Prostate Cancer, Rectal Cancer, Breast Cancer, Esophageal Cancer, Kidney Cancer, Liver Cancer, Lung Cancer, Leukemia, Hodgkin's Disease, Lymphoma, Multiple Myeloma, Hepatic Steatosis (Fatty Liver Disease), Parkinson's Disease, Renal Toxicity, Scleroderma, Non-Hodgkin's Lymphoma, Soft Tissue Cancer, Basal Cell Carcinoma, Melanoma, Merkel Cell Carcinoma, Squamous Cell Carcinoma, Colon (Colorectal) Cancer, Intestinal Cancer, Appendix Cancer, Aplastic Anemia and other Myelodysplastic syndromes, Cirrhosis of the Liver, Renal/Kidney Failure, Birth Defects (non-Cardiac), Cardiac Birth Defects, Miscarriage (19 weeks or earlier), Fetal Death (20 weeks gestation), Fertility Issues, Tremors (musculoskeletal), Pre-Parkinson's Disease, Neurobehavioral Effects - must have all symptoms: delayed reaction times, memory problems, attention/concentration problems, and motor function problems (e.g. hand tremor, postural sway)
- -PC must not currently be represented by an attorney

[Exhibit A]

# KS Law Group - Case Replacement Agreement

Final Audit Report                                                                 2022-12-28

| | |
|---|---|
| Created: | 2022-12-28 |
| By: | Lee Melchionni (lee@redwoodlg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4IPGrt0ky7Gi-3IFKgGAkBJ5kv2IPsl0 |

## "KS Law Group - Case Replacement Agreement" History

📄 Document created by Lee Melchionni (lee@redwoodlg.com)
2022-12-28 - 1:44:56 AM GMT- IP address: 99.110.180.129

📧 Document emailed to elake@forpersist.com for signature
2022-12-28 - 1:45:53 AM GMT

📄 Email viewed by elake@forpersist.com
2022-12-28 - 1:46:43 AM GMT- IP address: 73.205.234.141

✍ Signer elake@forpersist.com entered name at signing as Edward Lake
2022-12-28 - 1:47:04 AM GMT- IP address: 73.205.234.141

✍ Document e-signed by Edward Lake (elake@forpersist.com)
Signature Date: 2022-12-28 - 1:47:06 AM GMT - Time Source: server- IP address: 73.205.234.141

📧 Document emailed to Lee Melchionni (lee@redwoodlg.com) for signature
2022-12-28 - 1:47:07 AM GMT

📄 Email viewed by Lee Melchionni (lee@redwoodlg.com)
2022-12-28 - 1:53:47 AM GMT- IP address: 99.110.180.129

✍ Document e-signed by Lee Melchionni (lee@redwoodlg.com)
Signature Date: 2022-12-28 - 1:53:57 AM GMT - Time Source: server- IP address: 99.110.180.129

✔ Agreement completed.
2022-12-28 - 1:53:57 AM GMT

**Adobe Acrobat Sign**

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| :-- |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **CIVIL ACTION SUMMONS (b)**<br>**Form for Personal Service on a Natural Person** | **CASE NUMBER**<br><br>2023-004474-CA-01 |
| :-- | :--: | :-- |
| **PLAINTIFF(S)**<br><br>Allan Teh, individually | **VS.   DEFENDANT(S)**<br>LEE MELCHIONNI, individually,<br>SYLVIA BENITO, individually,<br>PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and<br>THE LAKE LAW FIRM, a New York Limited Liability Company. | **CLOCK IN** |

| THE STATE OF FLORIDA:TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant: |
| :-- |

| To Defendant(s):<br><br>Lee Melchionni | Address:<br><br>1537 Tryon Road NE Brookhaven, GA 30319 |
| :-- | :-- |

<div align="center">

**IMPORTANT**
</div>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

<div align="center">

**MIAMI-DADE COUNTY COURT LOCATIONS**
</div>

| ☒ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
| :-- | :-- | :-- | :-- |
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney<br><br>Florida Bar No. | Address: | |
| :-- | :-- | :-- |
| **LUIS G. MONTALDO**<br>**CLERK AD INTERIM**<br>**CIRCUIT AND COUNTY COURTS** | <br><br><br>DEPUTY CLERK | **DATE ON:** |

<div align="center">

# AMERICANS WITH DISABILITIES ACT OF 1990
# ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**
</div>

CLK/CT. 070 Rev. 01/23

Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| | | |
|---|---|---|
| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **CIVIL ACTION SUMMONS (b)**<br>**Form for Personal Service on a Natural Person** | **CASE NUMBER**<br>2023-004474-CA-01 |
| **PLAINTIFF(S)**<br>Allan Teh, individually | **VS. DEFENDANT(S)**<br>LEE MELCHIONNI, individually,<br>SYLVIA BENITO, individually,<br>PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and<br>THE LAKE LAW FIRM, a New York Limited Liability Company. | **CLOCK IN** |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>Sylvia Benito | Address:<br><br>5954 NE 5th Avenue, Miami, FL 33137 |
|---|---|

<u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at <u>www.dadecountyprobono.org</u>."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| ☒ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney<br><br>Florida Bar No. | Address: | |
|---|---|---|
| **LUIS G. MONTALDO**<br>**CLERK AD INTERIM**<br>**CIRCUIT AND COUNTY COURTS** | | **DATE ON:** |
| | DEPUTY CLERK | |

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email <u>ADA@jud11.flcourts.org</u>; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 070 Rev. 01/23                                                                                           Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2023-004474-CA-01 |
| **PLAINTIFF(S)**<br><br>Allan Teh, individually | **VS.  DEFENDANT(S)**<br>LEE MELCHIONNI, individually,<br>SYLVIA BENITO, individually,<br>PERSIST COMMUNICATIONS, INC, a Florida<br>Limited Liability Company, and  THE LAKE LAW<br>FIRM, a New York Limited Liability Company. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): ___Persist Communications, Inc._____

Edward J. Lake as registered agent
1815 Cordova Road, Ft. Lauderdale, FL 33316

Each defendant is required to serve written defense to the complaint or petition on

Plaintiff's Attorney: ___Matthew L. Jones, Esq._____

ss is: ___Jones & Adams, P.A._____

999 Ponce de Leon Blvd., Suite 925

Coral Gables, FL 33134

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **LUIS G. MONTALDO**<br>**CLERK AD INTERIM** | | DATE |
|---|---|---|
| | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 01/23                                                  Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION** ☒ CIVIL ☐ DISTRICTS ☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** **(a) GENERAL FORMS** | **CASE NUMBER** 2023-004474-CA-01 |
| **PLAINTIFF(S)** ALLAN TEH, individually | **VS. DEFENDANT(S)** LEE MELCHIONNI, individually, SYLVIA BENITO, individually, PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and THE LAKE LAW FIRM, a New York Limited Liability Company. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): The Lake Law Firm, LLC

1815 Cordova Road, Ft Lauderdale, FL 33316

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Matthew L. Jones, Esq.

whose address is: Jones & Adams, P.A.

999 Ponce de Leon Blvd., Suite 925, Coral Gables, FL 33134

**CLOCK IN**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **LUIS G. MONTALDO** **CLERK AD INTERIM** | DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314 Rev. 01/23                                        Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| | | |
|---|---|---|
| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION | **CIVIL ACTION SUMMONS (b)** | **CASE NUMBER** |
|---|---|---|
| [X] CIVIL | **Form for Personal Service on a Natural Person** | 2023-004474-CA-01 |
| ☐ DISTRICTS | | |
| ☐ OTHER | | |

| **PLAINTIFF(S)** | VS.   **DEFENDANT(S)** | **CLOCK IN** |
|---|---|---|
| Allan Teh, individually | LEE MELCHIONNI, individually, SYLVIA BENITO, individually, PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and THE LAKE LAW FIRM, a New York Limited Liability Company. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| Lee Melchionni | 1537 Tryon Road NE Brookhaven, GA 30319 |

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| | | | |
|---|---|---|---|
| [x] **Dade County Courthouse** (05) Room 133 73 West Flagler Street Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20) Suite 103 5400 N.W. 22nd Avenue Miami, FL 33142 | ☐ **Hialeah District Court** (21) Room 100 11 East 6th Street Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23) Room 100 15555 Biscayne Blvd. North Miami Beach, FL 33160 |
| ☐ **Miami Beach District Court** (24) Room 200 1130 Washington Avenue Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25) Room 100 3100 Ponce De Leon Blvd. Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26) Room 1200 10710 SW 211 Street Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney | Address: |
|---|---|
| Florida Bar No. | |

| **LUIS G. MONTALDO CLERK AD INTERIM CIRCUIT AND COUNTY COURTS** | 217043 [signature] DEPUTY CLERK | **DATE ON:** 3/17/2023 |
|---|---|---|

### AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 070 Rev. 01/23                                                                 Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| | |
|---|---|
| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | |

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☒ CIVIL | **CIVIL ACTION SUMMONS (b)** | 2023-004474-CA-01 |
| ☐ DISTRICTS | **Form for Personal Service on a Natural Person** | |
| ☐ OTHER | | |

| PLAINTIFF(S) | VS.  DEFENDANT(S) | CLOCK IN |
|---|---|---|
| Allan Teh, individually | LEE MELCHIONNI, individually, SYLVIA BENITO, individually, PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and THE LAKE LAW FIRM, a New York Limited Liability Company. | |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| Sylvia Benito | 5954 NE 5th Avenue, Miami, FL 33137 |

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

### MIAMI-DADE COUNTY COURT LOCATIONS

| | | | |
|---|---|---|---|
| ☒ **Dade County Courthouse** (05) Room 133 73 West Flagler Street Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20) Suite 103 5400 N.W. 22nd Avenue Miami, FL 33142 | ☐ **Hialeah District Court** (21) Room 100 11 East 6th Street Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23) Room 100 15555 Biscayne Blvd. North Miami Beach, FL 33160 |
| ☐ **Miami Beach District Court** (24) Room 200 1130 Washington Avenue Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25) Room 100 3100 Ponce De Leon Blvd. Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26) Room 1200 10710 SW 211 Street Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney | Address: | |
|---|---|---|
| Florida Bar No. | | |

| **LUIS G. MONTALDO** **CLERK AD INTERIM** **CIRCUIT AND COUNTY COURTS** | 217043 _Jason Bethel_ DEPUTY CLERK | **DATE ON:** 3/17/2023 |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2023-004474-CA-01 |
| **PLAINTIFF(S)**<br><br>Allan Teh, individually | **VS.  DEFENDANT(S)**<br>LEE MELCHIONNI, individually,<br>SYLVIA BENITO, individually,<br>PERSIST COMMUNICATIONS, INC, a Florida<br>Limited Liability Company, and   THE LAKE LAW<br>FIRM, a New York Limited Liability Company. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): __Persist Communications, Inc.__

__Edward J. Lake as registered agent__
__1815 Cordova Road, Ft. Lauderdale, FL 33316__

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: __Matthew L. Jones, Esq.__

ss is: __Jones & Adams, P.A.__

__999 Ponce de Leon Blvd., Suite 925__

__Coral Gables, FL 33134__

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **LUIS G. MONTALDO**<br>**CLERK AD INTERIM** | 217043<br><br>DEPUTY CLERK | DATE<br><br>3/17/2023 |
|---|---|---|

**CLOCK IN**

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 01/23                                                                 Clerk's web address: www.miami-dadeclerk.com

Filing # 168896700 E-Filed 03/16/2023 03:40:26 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION** ☒ CIVIL ☐ DISTRICTS ☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** **(a) GENERAL FORMS** | **CASE NUMBER** 2023-004474-CA-01 |
| **PLAINTIFF(S)** ALLAN TEH, individually | **VS.  DEFENDANT(S)** LEE MELCHIONNI, individually, SYLVIA BENITO, individually, PERSIST COMMUNICATIONS, INC, a Florida Limited Liability Company, and  THE LAKE LAW FIRM, a New York Limited Liability Company. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): The Lake Law Firm, LLC

1815 Cordova Road, Ft Lauderdale, FL 33316

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Matthew L. Jones, Esq.

whose address is: Jones & Adams, P.A.

999 Ponce de Leon Blvd., Suite 925, Coral Gables, FL 33134

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **LUIS G. MONTALDO CLERK AD INTERIM** | 217043 [signature] DEPUTY CLERK | [seal] | DATE 3/17/2023 |
|---|---|---|---|

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 01/23                                                                Clerk's web address: www.miami-dadeclerk.com

Filing # 171946438 E-Filed 04/27/2023 01:52:11 PM

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023-004474 CA 44

ALLAN TEH, individually,        COMPLEX BUSINESS LITIGATION

       Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS,
INC., a Florida Corporation, and
THE LAKE LAW FIRM, a New York
Limited Liability Company,

       Defendants.

_____/

**PERSIST COMMUNICATIONS' AND THE
LAKE LAW FIRM'S MOTION TO DISMISS
(and incorporated Memorandum of Law)**

Defendants Persist Communications, Inc. ("Persist Communications") and The Lake Law Firm, LLC ("Lake Law") move to dismiss Plaintiff Allan Teh's, Complaint for failure to state a claim as to the counts of Unjust enrichment (Count 7) and Equitable Accounting (Count 8).

## I.    INTRODUCTION

Persist Communications and Lake Law are not the primary targets of the Plaintiff. And they can't be because he lacks privity with them. They received $3,880,000.00 from an entity, KS Law Group, LLP ("KS Law"), pursuant to a

1

contract with KS Law, a D.C. law firm. Plaintiff owns a 50%-member interest in KS Law, and each individual Defendant owns 25%.

Plaintiff has sued the individual Defendants under various theories arising from their internal business relationship as members in KS Law. Plaintiff claims he was duped by the individual Defendants, who are his co-members in KS Law, into funding $4 million in KS Law's investment in hundreds of Hernia Mesh, Talc and Roundup cases being handled (or to be handled) by Lake Law, in exchange for a financial interest in each of the cases. (Persist Communications is a marketing company for Lake Law). Plaintiff claims he has not yet seen any results from his September 2021 investment in KS Law arising from **its**, not his, business relationship with Persist Communications and Lake Law.

But as this Court knows, pre-litigation and litigation of mass tort cases takes years. The cases that Lake Law is trying to attract and has signed up are percolating in various stages of litigation and pre-litigation. The contract between KS Law and Persist Communications and Lake Law, governed by New York law, is still in its executory stage. It appears that Plaintiff simply woke up one morning and decided he wanted his money back. But whatever his motivation, his targeting of these Defendants is misplaced.

Plaintiff's two claims against Persist Communications and Lake Law are unsustainable for the simple reason that he is trying to circumvent the corporate structure of KS Law.  He is not in privity with these Defendants.  **He** did not pay them any money. They owe **him** no money. They owe **him** no fiduciary duties or

2

any at all. They are **legal strangers** vis-à-vis Plaintiff. All their dealings are and have been with KS Law.

Counts 7 (unjust enrichment) and 8 (equitable accounting) should therefore be dismissed with prejudice for these and other reasons.

WHEREFORE, the Complaint against Persist Communications and Lake Law should be dismissed with prejudice.

## II.   LEGAL ARGUMENT

### A. COUNT 7 FAILS TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT.

#### i.   Plaintiff has no Standing.

It is obvious from the Complaint that any injury or damage caused by Lake Law or Persist Communications was to KS Law, the legal entity with whom they are in **contractual privity**.  It is established law that, "[g]enerally, a shareholder cannot sue in the shareholder's name for injuries to the corporation unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders." *Houri v. Boaziz,* 196 So. 3d 383, 392 (Fla. 3d DCA 2016). In that case, the plaintiff LLC member "**only suffered a harm that flowed from an initial harm to [the LLC]**. He was, therefore, without authority to bring this action directly …" *Id.*

Here there is no special duty between Plaintiff and these Defendants, **and none is alleged**, because they are legal strangers.  Plaintiff, like Boaziz, is simply a member of an LLC that has a contract with these Defendants. Any harm he allegedly suffered would only be indirect by virtue of his membership status.

3

### ii.   The Elements of the Cause of Action Itself Cannot be Met by Plaintiff

Count 7 alleges that Lake Law and Persist Communications were somehow unjustly enriched by Plaintiff's investment in KS Law. That cannot be. The elements of a cause of action for unjust enrichment are:

> (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009). This claim fails because the benefit conferred by a plaintiff on a defendant must be a "**direct benefit**" *Id.*

In *Extraordinary Tile*, the plaintiff brought a claim for unjust enrichment against a defendant with whom it had "no relationship." The Third District held that the plaintiff could not have conferred a benefit on that defendant because unjust enrichment required the conferring of a "direct benefit," holding: "Plaintiff contracted with FPL, not Group, for electricity; Plaintiff paid FPL, not Group; and Group provided no services to Plaintiff. Based on these facts, which are not in dispute, the Plaintiff cannot allege nor establish that it conferred a direct benefit upon Group." *Id.*

A better illustration of this concept in an analogous situation to here is *Peoples National Bank of Commerce v. First Union Nat. Bank of Florida, N.A.,* 667 So. 2d 876 (Fla. 3d DCA 1996). The facts are a bit convoluted but, in that case, Peoples, a participating lender in a syndicated loan package, claimed that other participating lenders were inequitably overpaid with the indubitable equivalent

4

of Peoples' creditor interest in the loan from the defaulted debtor (in that case voting rights rather than cash). Peoples received nothing because it refused to participate in an Intercreditor Agreement (as the others did). It sued the other lenders for unjust enrichment, claiming the value that they received were its interest inequitably distributed to them. The Third District disagreed and affirmed the dismissal with prejudice because Peoples conferred no direct benefit on them. Rather, the lead bank that collected the consideration from the defaulted borrower and distributed it to the other participating lenders is the one who conferred the direct benefit directly on them.

The claims against Persist Communications and Lake Law fall squarely within these holdings. Plaintiff conferred **no direct benefit** to Lake Law or Persist Communications. He never paid them a single dollar – **KS Law did**. He did not have a contract with them – **KS Law did**. And neither Lake Law nor Persist Communications ever provided a single service to Plaintiff – they provided services **to KS Law**.

To be sure, the Lake Law Invoice attached to the Complaint states that the amount of $3.88 million was directed to KS Law with the line "BILL TO: KS Law Group." (Complaint, Ex. 2, p. 1). This amount was directly pursuant to the agreement to furnish cases, which is evidenced by the Case Replacement Agreement – "KS has previously paid Lake $3,880,000.00 in order to acquire client leads in connection with the Cases (the "Funded Amount")." (Complaint, Ex. 12, p. 1.).

5

Where a plaintiff cannot and does not "allege ultimate facts that support a prima facie case of unjust enrichment," it is proper for the Court to dismiss an unjust enrichment claim with prejudice. *Peoples Nat. Bank of Com. v. First Union Nat. Bank of Fla.*, N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (affirming dismissal of an unjust enrichment claim, with prejudice, where "the plaintiff, Peoples National, could not and did not allege that it had directly conferred a benefit on the defendants...").

Moreover, for unjust enrichment to be found, it must be "inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC*, 1 So. 3d at 404. Under the Case Replacement Agreement, KS Law agreed to pay the already furnished amount of $3.88 million **in exchange for the receipt of 60% of the contingency fees of 795 cases** which Lake Law and Persist Communications would acquire and handle, through trial firms. (*See,* Complaint Ex. 12.). In essence, in exchange for the benefit of $3.88 million, Lake agreed to provide equal or greater value: a contingency fee on 795 cases, with guarantees of reimbursement and replacement. *See id.* Further, the Case Replacement Agreement explicitly states that the $3.88 million was paid to Lake Law "in order to acquire client leads in connection with the Cases." *Id.* at p.1.

Because KS Law has been provided the benefit of **its bargain** – it is just too early for that inchoate benefit to bear fruit - it cannot be deemed "inequitable" for Lake Law or Persist Communications to have retained their benefit (received from KS Law) because they "gave value in exchange," even if Plaintiff had

6

standing to sue. *See Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (holding that it would not be unjust for a defendant to retain a benefit where it returned value to the plaintiff.).

The bottom line is that neither Lake Law nor Persist Communications owe **anything** to Plaintiff. Their contractual dealings are all with KS Law. An individual member of KS Law has no standing to pursue claims in his own name when he lacks privity.

## B. COUNT 8 FAILS TO STATE A CAUSE OF ACTION FOR EQUITABLE ACCOUNTING

This claim fails for the simple reason that the parties are not in privity; they are legal strangers.  And Defendants owe Plaintiff no fiduciary duties.

One cannot sue a legal stranger for an accounting. There must be some duty to account in the first instance. In the typical case the right to equitable accounting spring from a contract. *See F.A. Chastain Constr., Inc. v. Pratt,* 146 So. 2d 910 (Fla. 3d DCA 1962), which states: "although courts of law have jurisdiction to enforce **contract demands** which involve an accounting, equity will take cognizance where the **contract demands** between litigants involve extensive or complicated accounts." Or it may arise from a fiduciary duty to account. But here there is nothing to give rise to any right to an accounting.

Accordingly, this claim fails as well.

## III.   CONCLUSION

The Complaint fails to state a cause of action against these Defendants for the reasons stated and Counts 7 and 8 should therefore be dismissed with prejudice.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the e-portal system this 27th day of April 2023, to Jones & Adams, P.A. Matthew Jones, Esq, 999 Ponce de Leon Blvd #925, Coral Gables, FL 33134, matthew@jones-adams.com  and Blank Rome LLP, Michelle M. Gervais, Esq, 100 S. Ashley Drive Suite 600, Tampa, FL, michelle.gervais@blankrome.com.

**YOUNG BERMAN KARPF & KARPF, P.A.**
Counsel for The Lake Law Firm and
Persist Communications, Inc.
825 Brickell Bay Dr., Tower III, Ste. 1748
Miami, Florida 33131
Tel. 305-377-2290
aberman@ybkklaw.com

    /s/ Andrew S. Berman

Andrew S. Berman
Florida Bar No.: 370932

8

Filing # 172236649 E-Filed 05/02/2023 11:20:43 AM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO.: 2023-004474-CA-01

ALLAN TEH, individually,

    Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a
Florida Corporation, and THE LAKE
LAW FIRM, a New York Limited
Liability Company,

    Defendants.

_____/

### DEFENDANTS LEE MELCHIONNI'S AND SYLVIA BENITO'S
### MOTION TO COMPEL ARBITRATION AND DISMISS

Defendants Sylvia Benito ("Benito") and Lee Melchionni ("Melchionni") (collectively, "Defendants"), pursuant to Fla. R. Civ. P. 1.110, the parties' Limited Liability Partnership Agreement, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, and the Florida Arbitration Code (the "FAC"), Fla. Stat. § 682.03, hereby move to compel arbitration and dismiss Plaintiff Allen Teh's ("Teh") action and state:

## I.    INTRODUCTION

On August 24, 2021, Teh, Benito, and Melchionni (collectively referred to herein as "parties") joined as partners in the formation of KS Law Group LLP ("KS Law") a District of Columbia partnership. (Complaint at ¶ 23). Pursuant to KS Law's Limited Liability Partnership Agreement ("Agreement"), any dispute or concern arising out of or related to a breach of the Agreement must be submitted to arbitration. (Complaint, Ex. 5 at ¶ 39)

On March 15, 2023, Teh filed this action alleging the following six causes of action against Defendants: (1) fraudulent inducement, (2) recission (pled in the alternative), (3) direct breach of contractual indemnity, (4) declaratory action regarding contractual indemnity duties, (5) breach of fiduciary duty, and (6) equitable accounting. (Complaint at ¶¶ 77-125).  Instead of submitting his alleged causes of action to mandatory arbitration, Teh sought judicial intervention.  Each and every count against Defendants arises from or relates to the Agreement requiring arbitration.  Pursuant to the parties' Agreement, the FAA and FAC, Teh's Complaint must be arbitrated in the District of Columbia, and this action dismissed.

## II.      FACTUAL BACKGROUND

The parties are partners in KS Law.  (Complaint Ex. 5, p. 1).  Melchionni, a D.C. admitted lawyer is the Managing Partner while Teh and Benito are permitted non-lawyer participants.  *See id*.  KS Law, governed by the parties' Agreement, was formed for the purposes of funding mass tort cases, with Teh providing the financing for the firm.  (Complaint at ¶ 11 and Ex. 5, p. 1).

Pursuant to the parties' Agreement, "…any controversy arising out of or related to [the Agreement] or the breach thereof . . . shall be resolved via arbitration under the American Arbitration Association, 9 U.S.C. § 2, in the District of Columbia[.]" (Complaint Ex 5 at ¶ 39) ("Arbitration Clause").  All of Teh's six causes of action against Defendants arise out of and/or relate to the Agreement requiring arbitration in the District of Columbia, and therefore, this action being dismissed.

## III.     ARGUMENT

### A.      Legal Standard

**1.        This Court has the authority to order these claims to be arbitrated in the District of Columbia.**

"When underlying contracts involve interstate commerce, agreements to arbitrate under the law of another state are enforceable in Florida under the FAA." *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008). The FAA is applicable "where an agreement evidences 'a transaction involving commerce.'" *Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC*, 59 So. 3d 1173, 1175 (Fla. 4th DCA 2011) (*citing* 9 U.S.C. § 2).  Florida courts recognize that the term "involving commerce" "means 'a transaction that, in fact, involves interstate commerce.'" *Id*. (quoting *Default Proof Credit Card Sys., Inc.*, 992 So. 2d at 445).  And "the term 'interstate commerce' is to be interpreted broadly." *Id*. (citing *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 660 (Fla. 4th DCA 2008).

The FAA is certainly applicable to the Agreement's Arbitration Clause. First, the Arbitration Clause specifically mentions 9 U.S.C. § 2, recognizing that the FAA would govern an arbitration under its terms. (Complaint, Ex 5 at ¶ 39).  Second, the Agreement explicitly provided for Teh, a Florida resident, to transfer $4 million to KS Law, created and organized under the Business Organization Title of the District of Columbia Code, which he did "**via Federal Wire**" on September 3, 2021. (Complaint at ¶¶ 2, 29; Complaint, Ex. 5, p. 1). This interstate transaction is specifically described in the Agreement: "It is expressly understood that Allan Teh will be underwriting and funding the activities of the Firm . . . . The Capital Contributions will be made by Allan Teh in the amount of $4,000,000." (Complaint, Ex. 5 at ¶ 12). Third, the entire Agreement, taken together, plainly evidences an agreement by which Teh invests in, expects profits from, and becomes a partner of, a D.C. partnership – one that does business across state lines and with Florida residents and entities. (*See* Complaint, Ex. 5, ¶ 21; Complaint, Ex. 2; Complaint, Ex. 12).

3

This transaction plainly involves "interstate commerce" and thereby the Arbitration Clause falls within the scope of the FAA and is enforceable in Florida courts. *See Catastrophe Servs., Inc. v. Fouche*, 145 So. 3d 151, 154 (Fla. 5th DCA 2014) (holding that a contract between a Florida resident and a foreign entity evidences interstate commerce.).

### 2. Arbitration clauses are favored in both federal and Florida courts.

"Where a contract falls within the scope of the [FAA], federal law applies in state courts as well as federal courts in construing and enforcing an arbitration agreement." *Donald & Co. Sec. v. Mid-Fla. Cmty. Servs., Inc.*, 620 So. 2d 192, 193 (Fla. 2d DCA 1993) (stating that "Florida courts are bound only by the United States Supreme Court in interpreting acts of Congress.").

The U.S. Supreme Court holds "Congress declared a national policy favoring arbitration" in enacting the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858 (1984). Likewise, the Florida Supreme Court also holds that "arbitration provisions are common, and their use generally favored by the courts." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Indeed, Florida federal courts also hold that the FAA "creates a presumption in favor of arbitrability." *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1325 (S.D. Fla. 2004) (citing *Ivax Corp. v. B. Braun of America, Inc.*, 286 F. 3d 1309 (11th Cir. 2002)).

### B. Under the FAA and the FAC, the Agreement Satisfies All the Elements Requiring Arbitration.

In Florida, "an arbitration clause in a contract involving interstate commerce is subject to the [FAC][.]" *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 463–64 (Fla. 2011). The Florida Supreme Court held, when ruling on a motion to compel arbitration, "the inquiry follows the same three-step process regardless of whether the inquiry is conducted under the FAC or the FAA," stating:

> Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a

4

> motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.

*Id*. at 465 (*quoting Seifert v. U.S. Home Corp*., 750 So. 2d 633 (Fla.1999).

### 1.    A valid agreement to arbitrate exists.

"The issue of 'whether a valid written agreement to arbitrate exists' is controlled by principles of state contract law." *Shotts*, 86 So. 3d at 464. Here, District of Columbia state law applies to the determination of a valid contract as KS Law is a Limited Liability Partnership created "pursuant to the Business Organizations Title in the District of Columbia Code" and the Agreement contains a choice of law provision designating that "[a]ny claim or controversy arising out of or related to this Agreement or the breach thereof shall be settled under the law of the District of Columbia[.]" (Complaint at Ex. 5, p. 1.; ¶ 39).

"Florida courts are required to enforce choice of law provisions in contracts unless the law of the foreign state contravenes the strong public policy of Florida or is unjust or unreasonable." *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008). As the Florida Supreme Court explains:

> Courts ... should [proceed with] extreme caution when called upon to declare transactions as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it is made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental policy of the right to freedom of contract between parties *sui juris*.

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000) (*quoting Pizza U.S.A. of Pompano Inc. v. R/S Assocs. of Fla*., 665 So. 2d 237, 239 (Fla. 4th DCA 1995)).

Here, the Agreement contains a clear, mandatory choice-of-law provision stating that "[a]ny controversy arising out of or related to this Agreement or the breach thereof . . . shall be resolved via arbitration under the American Arbitration Association, 9 U.S.C. § 2, in the District

of Columbia[.]" (Complaint Ex 5 at ¶ 39). Since there is no public policy exception and Teh also states in his Complaint that the Agreement governs the parties' relationship, this Court must apply District of Columbia law in determining whether a valid written agreement to arbitrate exists.

Under District of Columbia law, for an enforceable contract to exist, the parties must "express[ ] an intent to be bound, agree[ ] to all material terms, and assume[ ] mutual obligations sufficient to create an enforceable contract." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A. 2d 996, 1004 (D.C. 2008). There "must be mutual assent of each party to all the essential terms of the contract." *Malone v. Saxony Co-op. Apartments, Inc.*, 763 A. 2d 725, 729 (D.C. 2000).

It is beyond dispute that the parties assumed mutual obligations throughout the Agreement, financial obligations, ownership interests, and other rights and powers in the partnership. (Complaint, Ex. 5 at ¶¶ 9, 11-13). The parties' mutual assent to the material terms and intent to be bound is plainly evidenced by the parties' signatures further supported by Teh's own allegations. (Complaint, Ex. 5, p. 13). In fact, Teh attached the Agreement as an exhibit to his own Complaint.[1] (Complaint, Ex. 5). The Partnership Agreement includes a "Resolution of Disputes" paragraph which explicitly contains a broad arbitration clause. (Complaint Ex 5 at ¶ 39). Therefore, a valid and enforceable contract exists containing the mandatory arbitration provision requiring this action be dismissed.

> **2. All of the claims asserted are arbitrable under the broad Arbitration Clause in the Agreement**.

The Agreement contains an unambiguous and broad Arbitration Clause:

---

[1] Teh's claim of fraudulent inducement into the contract **as a whole** is for the arbitrator to decide and does not bear on the finding of a valid arbitration clause to compel arbitration. *See Reiterman v. Abid,* 26 F. 4th 1226, 1231 (11th Cir. 2022) ("[A]n arbitrator must decide any challenges to the validity of the contract as a whole should the trial court find that a contract containing a valid arbitration clause exists and that some or all of the claims in the lawsuit are contemplated by the arbitration clause.").

> **Any controversy arising out of or related to this Agreement** or the breach thereof shall be settled under the law of the District of Columbia without reference or regards to any conflict of laws principles, and **shall be resolved via arbitration** under the American Arbitration Association[.]

(Complaint Ex 5 at ¶ 39) (emphasis added).

Both state and federal courts analyzing FAA arbitration clauses have found that an arbitration "provision which is broad in scope allows for arbitration of all claims 'arising out of or related to' the contract, including tort claims." *Cooper v. Rehab. Ctr. at Hollywood Hills LLC*, 305 So. 3d 3, 4 (Fla. 4th DCA 2020) (*quoting Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 639 (Fla. 1999)); *see also Herrera*, 154 F. Supp. 3d at 1327 ("The presumption of arbitrability is particularly applicable where the arbitration clause is broad.") (citing *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 650 (1986)).

As the U.S. Supreme Court held:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*AT&T Technologies*, 475 U.S. at 650.

Where an unambiguous arbitration clause broadly covers "all claims or controversies" that arises out an agreement, any claim is covered thereunder barring **only** "the most forceful evidence of a purpose to exclude" a specific claim. *Herrera Cedeno v. Morgan Stanley Smith Barney*, LLC, 154 F. Supp. 3d 1318, 1327 (S.D. Fla. 2016).

The arbitration provision in *Herrera* is similar to the one here:

7

| Herrera | KS Law |
|---|---|
| **[A]ll claims or controversies** . . . concerning or **arising from [the agreement] . . . or breach of** this or any other agreement between us . . . shall be determined by arbitration[.] | **Any controversy arising out of or related to this Agreement or the breach thereof** … shall be resolved via arbitration[.] |

*Herrera,* 154 F. Supp. 3d at 1322.

As the *Herrara* Court held, for a claim to be outside the scope of such a broad arbitration clause, the parties must "clearly express their intent to exclude categories of claims from their arbitration agreement." *Id*. (citing *Paladino v. Avnet Comp. Techs., Inc.*, 134 F. 3d 1057, 1057 (11th Cir. 1998).

Like in *Herrera*, the Arbitration Clause here does not narrow or limit the types of claims that are subject to arbitration. Instead, it broadly covers "any controversy" and explicitly includes any claims arising out of or relating to alleged breaches of the Partnership Agreement. The Arbitration Clause does not exclude any categories of claims, and no evidence has been put forth to the contrary. Teh's claims are covered within the scope of the broad Arbitration Clause, which afforded no exclusions. As such, all of Teh's claims against Benito and Melchionni must be arbitrated.

### 3. The right to arbitration was not waived.

Finally, neither Melchionni nor Benito waived their right to arbitration. The right to arbitration is considered waived when a party acts inconsistently with that right, such as by actively participating in a lawsuit without asserting their right or filing an answer without claiming that the matter should be arbitrated. *See Bland v. Green Acres Grp., L.L.C.*, 12 So. 3d 822, 824 (Fla. 4th DCA 2009); *see also Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (waiving right to arbitrate involves "taking actions inconsistent with that right."). This Motion is Benito and Melchionni's first filing in this action, and they have not taken any other acts

inconsistent therewith.  Therefore, their right to arbitrate Teh's causes of action was maintained and this action should be dismissed.

## IV.    CONCLUSION

Defendants Benito and Melchionni respectfully request this Court dismiss Counts 1-6 of Plaintiff Teh's Complaint and order that his causes of action be submitted to arbitration pursuant to the Agreement in D.C., dismiss this action, grant Benito and Melchionni their attorney's fees and costs pursuant to the parties' Agreement for having to file this Motion and grant any further relief deemed just under the circumstances.

Dated:  May 2, 2023

Respectfully submitted,

**BLANK ROME LLP**

/s/ *Michelle Gervais*

Michelle Gervais
Florida Bar No. 173827
Email: Michelle.Gervais@blankrome.com

BLANK ROME LLP
100 S. Ashley Drive, Suite 600
Tampa, Florida 33602
T: (813) 255-2323
F: (813) 435-2256

*Attorneys for Defendants Benito and Melchionni*

9

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email

on this 2nd day of May, 2023 to:

Matthew Jones, Esq.
matthew@jones-adams.com
JONES & ADAMS, P.A.
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

*Counsel for Plaintiff, Allan Teh*

/s/ Michelle Gervais
Michelle Gervais

10

Filing # 172567561 E-Filed 05/05/2023 04:28:09 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023–004474–CA–01

ALLAN TEH, individually,

  Plaintiff(s),

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation, and
THE LAKE LAW FIRM, a New York Limited
Liability Company

  Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Allan Teh ("Teh"), by and through undersigned counsel hereby submits his Response in Opposition to Defendants, The Lake Law Firm, LLC ("Lake") and Persist Communications, Inc's ("Persist"), Motion to Dismiss Counts 7 and 8 of Plaintiffs Complaint, and as support states as follows:

## PRELIMINARY STATEMENT

Defendants, Lake and Persist, are attempting to dismiss the Counts 7 and 8 of Plaintiff's Complaint by stepping outside the four corners of the Complaint and mischaracterizing the law and facts of this case. This case involves the direct, specific, and unique damages suffered by the Plaintiff by the fraudulent conduct of his supposed partners, Defendants Lee Melchionni ("Melchionni") and Sylvia Benito (Benito), working in conjunction with Defendants Persist and Lake. The fraudulent conduct has led to Lake

and Persist being unjustly enriched to the amount of **$3,880,000**. Due to the complexity and secretive nature of the transactions an equitable accounting is warranted and necessary.

KS Law Group, LLP ("KS Law") is a District of Columbia law firm that was formed to obtain and handle various mass tort cases. *See ¶ 22 and 23 of Complaint.* KS Law was formed based on the representations made by Melchionni and Benito that Plaintiff would have veto power over what litigation was pursued and control over dollar amounts in specific ligation. *See ¶ 13 of Complaint.* The Complaint asserts that these representations were false. It is important for this Court to note that the **entirety** of KS Law's operations was funded by the Plaintiff. *See ¶ 28 of Complaint.* Section 12 of KS Law's Partnership Agreement specifically sets forth that "[i]t is expressly understood that Allan Teh will be underwriting and funding the activities of the Firm."

On September 16th, 2021, a mere thirteen (13) days after Plaintiff's funds were deposited into KS Law's bank account, the $3,880,000 of Plaintiff's funds were drained and transferred to Defendant Persist's TD Bank account ending in \*\*\*2721. The effectuation and execution of that transfer was at the direction of Melchionni, Benito, Lake and Persist and with no cognizable contract or agreement in place. *See ¶ 35 of Complaint.* As of the filing of this Response KS Law, **a law firm**, does not have a single retainer or contingent fee agreement in place with any other firm or client. *See ¶ 54 and 55 of Complaint.*

## STANDARD OF REVIEW

A motion to dismiss tests "whether the plaintiff has stated a cause of action, not whether the plaintiff will prevail at trial." *Lonestar Alternative Sol., Inc. v. Leview-Boymelgreen Soleil Developers, LLC.*, 10 So. 3d 1169, 1171 (Fla. 3d DCA 2009). The trial court is bound by the four corners of the complaint and attachments, and all ambiguities and inferences drawn from "the recitals in the complaint, together with the exhibits attached," must be construed in the light most favorable to the plaintiff. *Id*. (*quoting Vienneau v. Metro. Life Ins. Co.*, 548 So.2d 856, 858 (Fla. 4th DCA 1989)). The material allegations of the complaint must be taken as true. *See Davidson v. Iona-McGregor Fire Protection and Rescue District,* 674 So. 2d 858, 859 (Fla. 2d DCA 1996)*.* A motion to dismiss a complaint "must be decided on questions of law and questions of law only." *Connolly v. Sebeco, Inc.*, 89 So. 2d 482, 484 (Fla. 1956). It is error for the trial court to rely "upon matters raised in the motion, but not contained within the four corners of the complaint." *Chatham Mfg., Corp. v. Cates*, 969 So.2d 515, 516 (Fla. 1st DCA 2007).  A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff cannot prove a set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.* 680 F.2d 103, 104 (11th Cir. 1982).  "If a complaint does not state a cause of action, the opportunity to amend a complaint should be liberally given, unless it is apparent the pleading cannot be amended to state a cause of action." *Samuels v. King Motor Co.*, 782 So. 2d 489, 495 (Fla. 4th DCA 2001).

**ARGUMENT**

Defendants have asserted three grounds for which they believe Plaintiff's Complaint should be dismissed: 1) Plaintiff lacks standing to bring a direct suit; 2) Plaintiff has failed to properly plead a cause of action for Unjust Enrichment; and 3) Plaintiff has failed to properly plead a cause of action for Equitable Accounting. Plaintiff addresses each of Defendants' arguments as set forth below.

**I.     Plaintiff has Standing to Sue Defendants Lake Law and Persist.**

Defendants' argument that Plaintiff lacks standing to bring this direct action is incorrect. Defendants inappropriately characterize Plaintiff as "simply a member" of KS Law in an attempt to minimize the direct and special harm Plaintiff has suffered. Plaintiff holds a 50% ownership interest in KS Law and has capitalized the entirety of KS Law's operating funds in the amount of **$4,000,000**. Of that $4 million dollars Defendants have received and retained at least **$3,880,000**.

Further, prior to addressing Defendants' substantive arguments as to standing it is important to note that standing is an affirmative defense that should be raised in a responsive pleading, not in a motion to dismiss. *Hartford Ins. Co. of Midwest v. O'Connor*, 855 So.2d 189, 190 n.1 (Fla. 5th DCA 2003); *see also Lawson v. Frank,* 197 So.3d 1269, 1271 (Fla. 2d DCA 2016). The Defendants' argument are therefore premature and should be set forth in their Answer and Affirmative Defenses.

The court in *Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731 (Fla. 3d DCA 2014), undertook a comprehensive review of Florida case law and legal literature and then set out a two-part test to determine whether a plaintiff has standing to bring a direct action. *Dinuro* found that a direct suit may be brought if: (1) there is a direct harm to the

member such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by other members. *Id.* at 739-40.

For a harm to be direct it must flow first to the aggrieved member. *Arbitrage Fund v. Petty*, 307 So. 3d 119, 125 (Fla. 3d DCA 2020)(finding the differing treatment between unaffiliated and affiliate shareholders created a direct harm that flowed first and only to the unaffiliated shareholders). Plaintiff transferred $4 million of his own money based on a series misrepresentations made in order to fraudulently induce the Plaintiff into forming KS Law. *See ¶ 22 of Complaint* The damage suffered by Plaintiff flows directly from the initial transfer of his $4 million.

The second prong necessary to establish Plaintiff's right to bring this direct suit is satisfied because he has suffered a special injury that is separate and distinct from the other members. *Dinuro* at 736. Here, Plaintiff owns a 50% ownership interest in KS Law and has supplied **the entirety of its working capital**. His supposed "partners" and Defendants in this suit, Melchionni and Benito, have not contributed any funds to the partnership. Therefore, Plaintiff's injuries are special, direct, distinct and in fact derive from the other members/partners.

Plaintiff has pled a variety of specific facts in his Complaint to establish his right to bring this direct suit and in the context of a motion to dismiss all the material allegations present in the Complaint must be taken as true. *See Davidson v. Iona-McGregor Fire Protection and Rescue District,* 674 So. 2d 858, 859 (Fla. 2d DCA 1996).

II.   **Plaintiff has Properly Pled His Causes of Action for Unjust Enrichment Against Defendants Lake Law and Persist.**

Defendants utilizes outdated caselaw and an improper pleading standard for Unjust Enrichment in order to misdirect this Court in ruling in their favor. The purpose of a claim for unjust enrichment is to provide restitution where a person or entity has been unjustly enriched at the expense of another. *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). As Florida courts have noted, there are not "strict rules" as to what constitutes unjust enrichment, nor can an exhaustive list be given of elements which must be alleged in a pleading in order to state a cause of action for restitution. *Moore Handley, Inc. v. Major Realty Corp.*, 340 So. 2d 1238, 1239 (Fla. 4th DCA 1976). The claims depend on the circumstances of the individual case and whether or not the pleader has alleged facts which show that an injustice would occur if money were not refunded. *Id.*

Generally, courts will look to see if the plaintiff has established that: 1) plaintiff has conferred a benefit on the defendant; 2) defendant had knowledge of the benefit; 3) defendant voluntarily accepted and retained the conferred benefit; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1219 (Fla. 3d DCA 2017).[1]

Defendants cites to *Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400 (Fla. 3d DCA 2009) in order to impose on this Court an additional element

---

[1] To the extent this Court would utilize the law of the District of Columbia as provided for in Section 30 of KS Law's Partnership Agreement D.C. does not utilize the "direct benefit" analysis finding that the elements of unjust enrichment are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016). In fact, D.C. courts find Unjust enrichment claims typically lie in the absence of a contractual arrangement—they provide relief in equity where "circumstances are such that justice warrants a recovery as though there had been a promise." *4934, Inc. v. District of Columbia Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C.1992).

for unjust enrichment of a "direct benefit." Defendants confuse "direct benefit" with "direct contact." This argument fails to account for the law on the matter which clearly holds that the "direct benefit" element of an unjust enrichment claim does not require direct <u>contact.</u>

In *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287–88 (S.D. Fla. 2013), the court stated the following:

> A benefit may be inferred when an entity enriches itself unjustly to the detriment of another. That entity should be required to make restitution of all the benefits received, retained, or appropriated when it appears that to require it would be just and equitable.[]**There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact,* or privity, is not the equivalent of conferring a direct *benefit*.** (citations omitted)(bold emphasis added, but italic emphasis included in original)

In 2017, the Southern District Court of Florida reiterated this point:

> Century next argues that there is no *direct* benefit under Florida law because no named Plaintiff purchased a rifle directly from Century. **But Century's argument is contrary to Florida law, which provides that no direct contact is required for a direct benefit to be conferre**d. *See, e.g., Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2, 2007 U.S. Dist. LEXIS 86472, at *5-6 (S.D. Fla. Nov. 26, 2007) ("Defendant is correct in stating that 'Florida law does not support a cause of action for unjust enrichment unless the plaintiff can allege that he conferred a direct benefit on the defendant.' ... However, **Defendant erroneously equates direct *contact* with direct *benefit*** in arguing that '[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.' ") (internal citations omitted)

*Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1307 (S.D. Fla. 2017)(bold emphasis added, but italic emphasis included in original).

As stated in Plaintiff's Complaint, on September 16th, 2021, only thirteen days after Plaintiff's funds were deposited into KS Law's bank account, $3,880,000 of Plaintiff's

funds were transferred to Defendants Lake and Persist[2]. This transfer was effectuated and executed at the direction of Melchionni, Benito, Lake, and Persist and was done with no cognizable contract or agreement in place. *See ¶ 35 of Complaint.* Defendants go outside the four corners of the Complaint to argue that the transfer was "pursuant to the agreement to furnish cases" and that in fact there exists a "contract between KS Law and Persist Communications and Lake Law." *See Page 2 of Defendants' Motion.*

Interestingly, Defendants fail to attach a copy of this three-party agreement or make any reference to the provisions contained therein. Plaintiff, as the 50% owner of KS Law, has never been made aware of this three-party contract or even retroactively been provided a copy.  Regardless, for the purposes of a motion to dismiss all the material allegations present in Plaintiff's Complaint must be taken as true and as stated in Plaintiff's Complaint the transfer of his funds was effectuated "with no cognizable contract or agreement in place. *See ¶ 35 of Complaint; See also Davidson v. Iona-McGregor Fire Protection and Rescue District,* 674 So. 2d 858, 859 (Fla. 2d DCA 1996).

The fraudulent and improper conduct and transfer that led to Persist and Lake being unjustly enriched are the circumstances that make Defendants continued retention of Plaintiff's funds to be inequitable. However, to face Defendants arguments head on, even their argument that "it is just too early for that inchoate benefit to bear fruit" also falls flat. *See Pg. 6 of Motion to Dismiss.* Defendants received Plaintiff's funds on **September 16th, 2021**. Defendants argue the $3,880,000 was "in exchange for the receipt of 60% of the contingency fees of 795 cases." *See Pg. 6 of Motion to Dismiss*. Putting aside that no

---

[2] Throughout Defendants' Motion to Dismiss and specifically on Page 5 of the Motion Defendants state that both Lake and Persist received the benefit of $3,880,000 of Plaintiff's funds. Defendants make this admission despite Lake and Persist being separate and distinct entities.

Page 8 of 12

contract was in place at the time of the transfer to give any validity to Defendants' claims, we are now in 2023. Defendant, Melchionni, under oath has stated that KS Law, **a law firm**, does not have a single retainer agreement in place with a single firm or client. In addition, KS Law, **a law firm**, has no contingency agreements in place with any clients which are required to be in writing and disclose KS Law's involvement in their case pursuant to Rules 1.5(c) and (e) of the Rules of Professional conduct governing D.C. law firms. *See ¶ 53 and 54 of Complaint.*

Defendants' arguments rest on inapplicable caselaw and even with their attempt to go outside the four corners of Plaintiff's Complaint, fail to appropriately argue in any way that their retention of Plaintiff's fraudulently transferred $3,888,000 would be equitable. Therefore, Plaintiff has more than adequately pled his claim for unjust enrichment against Defendants, Lake and Persist.

### III.     Plaintiff has Properly Pled His Causes of Action for Equitable Accounting.

Defendants incorrectly argue that a claim for equitable accounting is only allowed in instances where a fiduciary relationship exists. To state a claim for an equitable accounting a plaintiff must allege that a fiduciary relationship **or a complex transaction exists**, and second, that a remedy at law would be inadequate. *Bedoyan v. Samra*, 352 So. 3d 361, 365 (Fla. 3d DCA 2022); *Bankers Tr. Realty, Inc. v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996); *See also Sodikoff v. Allen Parker Co.*, 202 So. 2d 4, 6 (Fla. 3d DCA 1967). In *Bankers* the Court clearly elucidated the existence of "extensive or complicated accounts" provide a sufficient basis to see and Equitable Accounting. *Bankers,* 672 So. 2d at 898.

In this case the extensive and complex transactions are set out in exacting detail in the Complaint. Defendants have retained Plaintiff's **$3,880,000** since **September 16th 2021**, and the funds were fraudulently transferred with no cognizable agreement in place, to be apparently utilized in the acquisition and handling of **hundreds of mass tort cases**. The complex analysis required to account for the current disposition of Plaintiff's $3,880,000 is self-evident.

Plaintiff's Complaint has properly pled all essential elements of a cause of action for equitable accounting. To the point, Defendants' own Motion illustrates the complexity of the transactions referenced herein and the need for an equitable accounting by blurring the lines regarding which Defendant actually received the $3,880,000. Persist is a corporation registered in the State of Florida and appears to be a marketing company. Whereas Lake is a **law firm** registered in the State of New York. Defendants appear in some contexts to be two distinct entities. According to the Lake Invoice, attached as **Exhibit 8** to Plaintiff's Complaint, and referenced in Defendants' Motion, Plaintiff's $3,880,000 was deposited into Persist's TD Bank account ending in ***2721. Despite these facts Defendants have taken the stance that they both received the funds and act as if the benefits conferred upon them, and the supposed services they were to render, are interchangeable between the two. The intermingling of Defendants' business practices and the possible, and very likely, commingling of their books and accounts necessitates an equitable accounting. Count 8 of Plaintiff's Complaint directly sets forth the complexity of the transaction and that no adequate remedy at law exists. *See ¶ 146 and 151 of Plaintiff's Complaint.*

Finally, throughout Defendants' Motion to Dismiss they refer to the Plaintiff as a "legal stranger." They frame the Plaintiff in this light for apparently two reasons: 1) to bolster their off-base arguments regarding requirements of privity and fiduciary duty, which are unsupported by caselaw; and 2) to distance themselves from recognizing the level of direct involvement of the Plaintiff.

First of all, this "legal stranger" argument is well outside the four corners of the Complaint and necessarily requires this Court to consider documents, witnesses, and matters that are not remotely set out in the Complaint. Even if this Court were to consider such improper arguments it is worth nothing that Allan Teh is not only the 50% owner of KS Law but he solely funded its entire operations. For Defendants to take the stance that they were merely doing business with KS Law and not the Plaintiff is a illogical. To do business with KS Law is inextricably linked to doing business with the Plaintiff. Defendants either knew full and well where the $3,880,000 they received came from or Defendants, Melchionni and Benito, failed to mention KS Law's 50% owner in any business dealings. Both conclusions illustrate the need and legitimacy of the claims set forth in Plaintiff's Complaint.

**WHEREFORE,** Plaintiff, ALLAN TEH, respectfully requests that this Court deny Defendants, Persist Communications, Inc. and The Lake Law Firm's, Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law in Support in its entirety, Order Defendant to Answer Plaintiff's Complaint within ten (10) days, and for such other and further relief as this Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on this 5th day of May 2023, with the Clerk of Court for the Eleventh Judicial Circuit using the Florida Courts e-filing portal to: Andrew S. Berman, aberman@ybkklaw.com.

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

By:

/s/ Matthew Jones, Esq.
Matthew L. Jones, Esq.
Florida Bar No. 909335
matthew@jones-adams.com

Filing # 173067225 E-Filed 05/12/2023 04:06:01 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

CASE NO.: 2023-004474-CA-01

ALLAN TEH, individually,

      Plaintiff(s),

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation, and
THE LAKE LAW FIRM, a New York Limited
Liability Company

      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS

Plaintiff, Allan Teh ("Teh"), by and through undersigned counsel hereby submits his

Response in Opposition to Defendants, Lee Melchionni ("Melchionni") and Sylvia Benito's

("Benito"), Motion to Compel Arbitration and Dismiss (the "Motion" D.E. #18), and as

support states as follows:

## ARGUMENT

The entirety of Defendant, Melchionni and Benito's, argument and case law are

premature and do not speak to the present issue before this Court. There is no valid

arbitration provision in place because there exists no valid Partnership Agreement (the

"Agreement") in which the arbitration provision is contained. Section 39 of the Agreement

does contain an arbitration provision, but Defendants are attempting to wield the provision

as a cudgel against Plaintiff and wishes this Court to allow them to have their cake and eat it too. Defendants have ignored and failed to perform every substantive duty present within the Agreement and now attempt to pick and choose the provisions of the Agreement to which they want to be bound. Plaintiff and Defendants had no meeting of the minds to create a valid contract because Defendants misrepresented essentially all material provisions present in the Agreement[1].

The only pleading before this Court is Plaintiff's Complaint. Defendants' Motion seeks the dismissal of Counts 1-6 of Plaintiff's Complaint and therefore Defendants are bound by the four corners of the Complaint and therefore the material allegations set forth in the Complaint must be taken as true. *See Davidson v. Iona-McGregor Fire Protection and Rescue District,* 674 So. 2d 858, 859 (Fla. 2d DCA 1996). Defendants heavily rely on the notion that public policy favors arbitration clauses but do not take into account that "[n]either the statutes validating arbitration clauses nor the policy favoring such provisions should be used to block a party's access to the judicial forum." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 642 (Fla. 1999). D.C. and Florida Law both follow the view that arbitration provisions are contractual in nature and therefore the construction of such a provision remains a matter of contract interpretation left to the court. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 642 (Fla. 1999); *Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458, 465 (D.C. 2010). The authority of the arbitrator is derived from the consent of the parties and whether the parties are bound by an arbitration provision first raises the

---

[1] Plaintiff understands the Florida Supreme Court's decision in *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306 (Fla. 2000) to mean that a choice of law provision is presumed valid until it is proved invalid. *Id.* at 311. Based on that understanding Plaintiff will provide both Florida and District of Columbia ("D.C.") case law in support of his argument.

Page **2** of **6**

question of arbitrarily for the court to decide.  *Hossain v. JMU Properties, LLC*, 147 A.3d 816, 821 (D.C. 2016).

Before granting a motion to compel arbitration, a court must find that (1) the parties have an enforceable agreement to arbitrate, and (2) the parties' underlying dispute falls within the scope of that agreement. *Univ. of the D.C. Faculty Ass'n / Nat'l Educ. Ass'n v. Bd. of Trustees of Univ. of the D.C.*, 257 A.3d 1026, 1031 (D.C. 2021); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, (Fla. 1999). Defendants' argument fails at step one and this Court need not progress further. In addition, since Defendants are seeking to enforce the arbitration provision the burden falls on them to establish an enforceable agreement to arbitrate. *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017).

This case centers around the fraudulent conduct of Melchionni and Benito in inducing the Plaintiff into providing $4 million dollars for the alleged purpose of funding his own law firm, KS Law Group, LLP ("KS Law"), in order for KS Law to obtain and handle hundreds of various mass tort cases. *See Complaint ¶ 11, D.E. #2.* Prior to the execution of the Agreement on August 24th, 2021, Defendants made a series of material misrepresentations which included that: 1) Plaintiff would have veto power over what litigation was pursued; 2) Plaintiff would have control over dollar amounts in specific litigation; 3) Plaintiff would have the ability add partners to "his firm"; 4) KS Law would handle various mass tort cases represented to include Hernia Mesh injuries, Talc toxicity, Round Up toxicity, and 3M Ear Plugs injuries; and 5) that imminent settlements were upcoming in several of the represented mass tort cases. *See Complaint ¶ 13, 14, and 17*

*D.E. #2.* All of the direct and specific representations made by the Defendants have been alleged to be false.

Defendants' actions following the execution of the Agreement illustrate that they never had the intention of being bound by or complying with the provisions set forth in the Agreement. In exchange for Plaintiff's $4 million capital contribution, constituting the entirety of KS Law's working capital, Plaintiff received a 50% ownership interest in KS Law. *See Complaint ¶ 22, D.E. #2.* Despite this Defendants have intentionally and wrongfully treated Plaintiff as an arms-length investor and completely expelled him from taking part in any substantive decision making of the partnership. Defendants have failed to even include or inform Plaintiff of innocuous changes such as the address change of KS Law. Pursuant to Section 3 of the Agreement KS Law was to be located at 1100 H Street NW, Suite 840, Washington D.C. 20005. The address was unilaterally changed by Defendants to 20900 NE 30th Avenue, Miami, Florida 33180. *See Complaint ¶ 24 and 25, D.E. #2.* Such a change should have been decided by "the affirmative majority vote of the total, combined ownership interests." *See Complaint D.E. #2 Ex 5 Section 3.* No vote was held or notice given to the Plaintiff of this address change.

The core of Plaintiff's argument is that he was fraudulently induced into executing the Agreement and therefore no mutual assent is present and thereby no enforceable contract exists. As set out in Plaintiff's Complaint the most obvious indicia of Plaintiff's argument is Defendants' deviation and noncompliance with the "sole purpose" of KS Law which is to "engage in the practice of law." *See Complaint D.E. #2 Ex 5 Section 4.* Melchionni has admitted that, despite KS Law being formed in August of 2021, KS Law is not a party to a single retainer, co-counsel, or referring counsel agreement. *See*

*Complaint ¶ 54 and 55, D.E. #2.* KS Law also does not maintain an "Interest on Lawyer Trust Account" ("IOLTA") required by the D.C rules of professional conduct in order to hold, manage, and account for client funds. *See Complaint D.E. #2 Ex 5 Section 13(A).* KS Law also does not have or maintain any general or malpractice liability insurance that Section 8 of the Agreement requires Melchionni to pay for, acquire, and maintain. *See Complaint D.E. #2 Ex 5 Section 8.*

Defendants induced Plaintiff to provide $4 million to fund the entire operations of a **law firm** and in return established an entity that does not and has not engaged in the practice of the law. Defendants somehow attempt to argue that by Plaintiff attaching the Agreement to his Complaint it some how indicates the mutual assent of the parties to be bound by the Agreement. This is incorrect. Plaintiff's "use" of the Agreement and references to it are meant to establish the exact opposite, that the funds Plaintiff provided were not and have never been used for the represented purpose. There is no manifestation of assent if that assent is procured by either the fraudulent or material misrepresentations of the other party upon the which the recipient is justified in relying. *Steiner v. Am. Friends of Lubavitch (Chabad)*, 177 A.3d 1246, 1255–56 (D.C. 2018).

The misappropriation of Plaintiff's funds is self-evident by the fact that a mere thirteen days after being deposited into KS Law's bank account it was subsequently transferred to an entity named "Persist." *See Complaint ¶ 31 and 32, D.E. #2.* Persist is not another law firm but is a marketing firm. A marketing firm that clearly has not assisted in KS Law's effort to "engage in the practice of the law" because as set out in the four-corners of the Complaint, KS Law has no retainer, co-counsel, or contingent agreements in place. *See Complaint ¶ 54 and 55, D.E. #2.* The effectuation of the transfer was done

with no cognizable contract or agreement in place and with no notification given to Plaintiff as the 50% owner of KS Law. *See Complaint ¶ 35, D.E. #2*

To rule in favor of the Defendants would deny Plaintiff his right to a judicial forum and allow Defendants to unjustly utilize an arbitration provision present in an agreement that they themselves have failed to conform to.

**WHEREFORE,** Plaintiff, ALLAN TEH, respectfully requests that this Court deny Defendants, Lee Melchionni and Sylvia Benito's, Motion to Compel Arbitration and Dismiss in its entirety, Order Defendant to Answer Plaintiff's Complaint within ten (10) days, and for such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on this 12th day of April 2023, with the Clerk of Court for the Eleventh Judicial Circuit using the Florida Courts e-filing portal to: Michelle M. Gervais, mgervais@blankrome.com, Elizabeth V. Young, elizabeth.young@blankrome.com, and Kenneth Bressler ken.bressler@blankrome.com.

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

By:

/s/ Matthew Jones, Esq.
Matthew L. Jones, Esq.
Florida Bar No. 909335
matthew@jones-adams.com

Page **6** of **6**

Filing # 173540583 E-Filed 05/19/2023 11:26:00 AM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO.: 2023-004474-CA-01

ALLAN TEH, individually,

 Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a
Florida Corporation, and THE LAKE
LAW FIRM, a New York Limited
Liability Company,

 Defendants.

_____/

**DEFENDANTS LEE MELCHIONNI'S AND SYLVIA BENITO'S**
**REPLY BRIEF IN FURTHER SUPPORT OF**
**<u>MOTION COMPEL ARBITRATION AND DISMISS</u>**

 Defendants Lee Melchionni and Sylvia Benito's ("Defendants") hereby files this Reply

Brief in Further Support of their Motion to Compel Arbitration and Dismiss as Plaintiff Allan

Teh's ("Plaintiff" and/or "Teh") Response is based on a fundamental misapplication of the law.

According to Teh, the arbitration clause of the KS Law Limited Liability Partnership Agreement

("Agreement") is unenforceable because Defendants purportedly fraudulent induced Teh to enter

said Agreement.  However, the law is crystal clear—allegations of fraud in the inducement of **a**

**contract as a whole** are resolved by *arbitration*, while allegations of fraud in the inducement of

**the arbitration clause itself** are resolved by the court. *See Prima Paint Corp. v. Flood & Conklin*

*Mfg. Co.*, 87 S. Ct. 1801, 1806, 388 U.S. 395, 404 (1967); *see also Medident Const., Inc. v.*

*Chappell*, 632 So. 2d 194, 195 (Fla. 3rd DCA 1994) ("Where fraud or some other ground for

avoidance or invalidity of contract is alleged as to an entire agreement rather than specifically as to the arbitration clause contained within that agreement, the entire matter should be resolved by arbitration."); *see also Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A. 2d 916, 924 (D.C. 1992) ("[A] party seeking to avoid arbitration by raising a claim of fraudulent inducement must allege that the arbitration clause itself—rather than the contract as a whole—was fraudulently induced.").

Plaintiff's Response specifically states "[t]he core of Plaintiff's argument is that he was fraudulently induced into executing the Agreement," which Defendants vehemently deny. (Opposition Brief, D.E. #22 at p. 4).  Teh fails to allege that he was fraudulently induced to enter into the actual *arbitration clause* of the Agreement, and therefore, Teh's Complaint must be submitted to arbitration and this matter dismissed.  Defendants should be granted its attorney's fees and costs for having to prepare this Reply.

WHEREFORE, Defendants respectfully request this Court grant its Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, grant Defendants its attorney's fees and costs for having to file this Motion and Reply and grant any further relief deemed just under the circumstances.

Dated:  May 19, 2023

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Michelle Gervais*_____
Michelle Gervais
Florida Bar No. 173827
Email: Michelle.Gervais@blankrome.com
Nicolas Bednarek
Florida Pro Hac Vice No. 1045014
Email: Nicolas.Bednarek@blankrome.com

BLANK ROME LLP
100 S. Ashley Drive, Suite 600

2

Tampa, Florida 33602
T: (813) 255-2323
F: (813) 435-2256

*Attorneys for Defendants Benito and
Melchionni*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email

on this 19th day of May, 2023 to:

Matthew Jones, Esq.
matthew@jones-adams.com
JONES & ADAMS, P.A.
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

*Counsel for Plaintiff, Allan Teh*


Andrew Berman, Esq.
aberman@ybklaw.com
YOUNG, BERMAN, KARPF & KARPF, P.A.
825 Brickell Bay Drive, Tower III, Suite 1748
Miami, Florida 33131
Telephone: (305) 945-1851
Facsimile: (786) 219-1981

*Counsel for Defendants Persist Communications, Inc. and Lake Law Firm, LLC*


*/s/ Michelle Gervais*
Michelle Gervais

3

Filing # 173791441 E-Filed 05/23/2023 01:51:14 PM

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023-004474 CA 44

ALLAN TEH, individually,                    COMPLEX BUSINESS LITIGATION

      Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS,
INC., a Florida Corporation, and
THE LAKE LAW FIRM, a New York
Limited Liability Company,

      Defendants.

_____/

### PERSIST COMMUNICATIONS' AND THE
### LAKE LAW FIRM'S REPLY IN SUPPORT OF MOTION TO DISMISS
### (and incorporated Memorandum of Law)

Defendants Persist Communications, Inc. ("Persist Communications") and

The Lake Law Firm, LLC ("Lake Law") file this Reply and state:

Defendants fully anticipated the arguments made by Plaintiffs in

opposition to their motion to dismiss.

They have nothing to add to their previous argument except that a claim

for unjust enrichment and equitable accounting cannot exist when a contract is

in place covering the same subject matter. *12550 Biscayne Condominium Assoc.,*

*Inc. v. NRD Investments, LLC,* 336 So. 3d 750 (Fla. 3rd DCA 2021) ("[A] plaintiff

cannot pursue a quasi-contract claim for unjust enrichment if an express

contract exists concerning the same subject matter."); *Bedoyan v. Samra,* 352

1

So. 3d 361, n.5 (Fla. 3d DCA 2022)(A claim for equitable accounting cannot coexist with a breach of contract claim covering the same subject matter, as plaintiff would be able to obtain that information through discovery of the breach of contract claim).

Exhibit 12 to the Complaint covers all issues with respect to the $3.8 million dollars.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the e-portal system this 23rd day of May 2023, to Jones & Adams, P.A. Matthew Jones, Esq, 999 Ponce de Leon Blvd #925, Coral Gables, FL 33134, matthew@jones-adams.com  and Blank Rome LLP, Michelle M. Gervais, Esq, 100 S. Ashley Drive Suite 600, Tampa, FL, michelle.gervais@blankrome.com.

**YOUNG BERMAN KARPF & KARPF, P.A.**
Counsel for The Lake Law Firm and
Persist Communications, Inc.
825 Brickell Bay Dr., Tower III, Ste. 1748
Miami, Florida 33131
Tel. 305-377-2290
aberman@ybkklaw.com

   */s/ Andrew S. Berman*

Andrew S. Berman
Florida Bar No.: 370932

2

Filing # 177593541 E-Filed 07/17/2023 04:47:56 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

**ORDER ON PERSIST COMMUNICATIONS' AND THE LAKE LAW FIRM'S MOTION TO DISMISS [DE#16] AND MELCHIONNI'S AND BENITO'S MOTION TO COMPEL ARBITRATION AND DISMISS [DE#18]**

THIS CAUSE was heard on Thursday, July 13, 2023 on (a) Defendants, Persist Communications, Inc. and the Lake Law Firm, LLC's Motion to Dismiss Count 7 (unjust enrichment) and Count 8 (equitable accounting) of the Complaint (the "Motion to Dismiss") [DE#16] as to these Defendants; (b) Melchionni's and Benito's Motion to Compel Arbitration (the "Motion to Compel Arbitration") [DE#18] as to the remaining Defendants; and (c) Plaintiff's *Ore Tenus* Motions for Leave to Amend the Complaint. The Court, having reviewed the motions, responses and replies as well as applicable case law, heard argument of counsel and being otherwise fully advised in the premises, it is,

ORDERED and ADJUDGED that the Motion to Dismiss [DE#16] be and the same is hereby GRANTED for the reasons stated on the record.

Plaintiff's *Ore Tenus* Motion to Amend the Complaint regarding the Lake Law Firm, LLC and Persist Communications, Inc. is granted. If Plaintiff elects not to amend, this action against Persist and the Lake Law Firm shall stand dismissed with prejudice.

AND IT IS FURTHER ORDERED and ADJUDGED that the Motion to Compel [DE#18] filed by Lee Melchionni and Sylvia Benito is GRANTED for the reasons stated on the record. The Court retains jurisdiction to enforce any judgment and hear any pending motions.

Plaintiff shall file his amended complaint within 15 days of the date hereof, if any.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>17th day of July, 2023</u>.

2023-004474-CA-01 07-17-2023 4:29 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Kenneth L Bressler, ken.bressler@blankrome.com
Matthew L. Jones, matthew@jones-adams.com
Michelle M. Gervais Esq., michelle.gervais@blankrome.com
Michelle M. Gervais Esq., BRFLeservice@blankrome.com
Michelle M. Gervais Esq., Silvia.Membreno@blankrome.com
Nicolas B Bednarek, nicolas.bednarek@blankrome.com
Nicolas B. Bednarek, nicolas.bednarek@blankrome.com

**Physically Served:**

Filing # 187683837 E-Filed 12/08/2023 04:06:46 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

### AGREED ORDER EXTENDING DEFENDANTS PERSIST COMMUNICATION AND THE LAKE LAW FIRM'S TIME TO RESPOND TO PLAINTIFF'S MOTION FOR SANCTIONS

**THIS CAUSE** having come before the Court and the Court being fully advised of opposing counsels being consulted and their agreement, it is hereupon,

**ORDERED and ADJUDGED** that Defendants, PERSIST COMMUNICATIONS, INC and THE LAKE LAW FIRM will have thirty (30) additional days to file their Response in Opposition to Plaintiff, Allan Teh's, Motion for Sanctions placing Defendants deadline to respond on or before January 10, 2023.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 8th day of December, 2023.

2023-004474-CA-01 12-08-2023 4:00 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2023-004474-CA-01

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Kenneth L Bressler, ken.bressler@blankrome.com
Matthew L. Jones, matthew@jones-adams.com
Michelle M. Gervais Esq., michelle.gervais@blankrome.com
Michelle M. Gervais Esq., BRFLeservice@blankrome.com
Michelle M. Gervais Esq., Silvia.Membreno@blankrome.com
Nicolas B Bednarek, nicolas.bednarek@blankrome.com
Nicolas B. Bednarek, nicolas.bednarek@blankrome.com

**Physically Served:**

Filing # 187842589 E-Filed 12/12/2023 11:14:26 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

### AGREED ORDER EXTENDING DEFENDANTS LEE MELCHIONNI AND SYLVIA BENITO'S TIME TO RESPOND TO MOTION FOR SANCTIONS

THIS CAUSE having come before the Court and the Court being fully advised of the agreement of counsel, it is hereby:

**ORDERED AND ADJUDGED** that pursuant to the agreement of counsel, Defendants Lee Melchionni and Sylvia Benito will have 30 additional days to file its response in opposition to Plaintiff Allan Teh's Motion for Sanctions, placing their deadline to respond on or before January 10, 2024.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 12th day of December, 2023.

2023-004474-CA-01 12-12-2023 10:59 AM
 Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2023-004474-CA-01

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Kenneth L Bressler, ken.bressler@blankrome.com
Matthew L. Jones, matthew@jones-adams.com
Michelle M. Gervais Esq., michelle.gervais@blankrome.com
Michelle M. Gervais Esq., BRFLeservice@blankrome.com
Michelle M. Gervais Esq., Silvia.Membreno@blankrome.com
Nicolas B Bednarek, nicolas.bednarek@blankrome.com
Nicolas B. Bednarek, nicolas.bednarek@blankrome.com
Silvia Membreno, silvia.membreno@blankrome.com


**Physically Served:**

Filing # 193163547 E-Filed 03/02/2024 01:00:49 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

## ORDER DIRECTING PLAINTIFF TO SET HEARING

The plaintiff has filed a motion to enforce settlement. Claims against two parties, MELCHIONNI'S AND BENITO were dismissed by this court because of a binding arbitration clause. The arbitrator must hear any motion to enforce the settlement concerning these parties. Moreover, the order dismissing Melchionni and Benito was entered on July 17, 2023, and the court lacks jurisdiction over these parties.

On remaining defendants, the Plaintiff shall set an evidentiary hearing on his motion to compel enforcement of settlement, and shall do so within 45 days of this order or the court will dismiss all remaining claims.

The hearing should be coordinated with any pending hearing in related cases.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 2nd day of March, 2024.

2023-004474-CA-01 03-02-2024 12:41 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Kenneth L Bressler, ken.bressler@blankrome.com
Matthew L. Jones, matthew@jones-adams.com
Michelle M. Gervais Esq., michelle.gervais@blankrome.com
Michelle M. Gervais Esq., BRFLeservice@blankrome.com
Michelle M. Gervais Esq., Silvia.Membreno@blankrome.com
Nicolas B Bednarek, nicolas.bednarek@blankrome.com
Nicolas B. Bednarek, nicolas.bednarek@blankrome.com

**Physically Served:**

Filing # 193236764 E-Filed 03/04/2024 02:15:53 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023–004474–CA–01

ALLAN TEH,

      Plaintiff(s),

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation, and
THE LAKE LAW FIRM, a New York Limited
Liability Company

      Defendants.
_____/

## NOTICE OF COMPLIANCE WITH COURT'S ORDER [DE #57]

Plaintiff, Allan Teh ("Plaintiff" or "Mr. Teh"), by and through undersigned counsel herby submits this Notice of Compliance with this Court's March 3rd, 2024, Order Directing Plaintiff to Set Hearing [DE #57], and in support states as follows:

1. On March 3rd, 2024, this Court entered an Order compelling the Plaintiff to "set an evidentiary hearing on his motion to compel enforcement of settlement" within 45 days following the entry of the Order [DE #57].

2. Plaintiff has already complied with this Court's Order via the scheduling of the April 15th, 2024, 2-hour evidentiary hearing on both the Motion to Enforce Settlement in the present case, as well as the Motions to Enforce Settlement filed in the Related Cases. *See February 20th, 2024, NOH attached as* **Exhibit 1**.

3. The NOH sets forth all pending Motions to Enforce Settlement and includes:

    a. *Teh v. Lee Melchionni, et al.*, Case No: 2023-004474-CA-01 – Motion to Enforce Settlement [DE #40];

    b. *Teh v. Justice Partners, LLC*, Case No: 2022-022470-CA-01 – Motion to Enforce Settlement [DE #119];

    c. *Teh v. KS Law Group, LLP et al.*, Case No: 2023-015702-CA-01 -Motion to Enforce Settlement [DE #59]

    d. *Teh v. Justice Partners, LLC et al.*, Case No: 2023-018039-CA-01

4. The 2-hour evidentiary hearing was set pursuant to this Court's direction during the January 29th, 2023, hearing in the Related Case of *Teh v. Justice Partners, LLC*, Case No: 2022-022470-CA-01.

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered to all of the parties via the Florida E-Filing Portal on March 4th, 2024.

**JONES & ADAMS, P.A.**
Coral Gables Centre
999 Ponce de Leon Blvd., Ste 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778
Email: matthew@jones-adams.com

By:    /s/ Matthew L. Jones, Esq.
        Matthew L. Jones, Esq.
        Florida Bar No. 909335

Filing # 192282865 E-Filed 02/20/2024 08:41:20 AM

**IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA CIVIL DIVISION**

ALLAN TEH,
an individual,

      Plaintiff,

  vs.                              Case No.: 2022−022470−CA−01

JUSTICE PARTNERS, LLC,
a limited liability company,

      Defendants.

_____/

## NOTICE OF HEARING
(Special Set)

      PLEASE TAKE NOTICE that the following hearing will be held:

MATTER:              **Hearing on Plaintiff's Motions to Enforce Settlement:**

-  *Teh v. Justice Partners, LLC*, Case No: 2022-022470-CA-01 – Motion to Enforce Settlement [DE #119]
-  *Teh v. Lee Melchionni, et al.*, Case No: 2023-004474-CA-01 – Motion to Enforce Settlement [DE #40]
-  *Teh v. KS Law Group, LLP et al.*, Case No: 2023-015702-CA-01 -Motion to Enforce Settlement [DE #59]
-  *Teh v. Justice Partners, LLC et al.*, Case No: 2023-018039-CA-01

DATE AND TIME:     **Monday, April 15th, 2024 at 2:00 PM[1]**

BEFORE:              **Honorable Judge Lisa S. Walsh**

---

[1] Plaintiff's Counsel is set for a 3-week trial period beginning on April 8th, 2024, in *Altex v. Jasu Juice,* 2018-035375-CA-01, before Judge William Thomas

LOCATION:  **Miami-Dade County Courthouse, 73 West Flagler St., Miami, FL 33130**

In accordance with the American With Disabilities Act of 1990 (ADA), disabled persons who, because of their disabilities, need special accommodation to participate in this proceeding should contact the ADA Coordinator at the Court Clerk's office, for assistance, no later than seven days prior to the proceeding; if hearing impaired, please utilize the TDD service.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered to all of the parties on the e-filing service list via the Court's e-portal on this 20th day of February, 2024.

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

By:

/s/ Matthew Jones, Esq.
Matthew L. Jones, Esq.
Florida Bar No. 909335
matthew@jones-adams.com

Filing # 199206967 E-Filed 05/25/2024 08:25:22 AM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

### ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT [DE #40]

THIS CAUSE, having come before this Court on Plaintiff's Motion to Enforce Settlement [DE #40] (the "Motion") filed on October 10th, 2023, and the Court having taken evidence, heard argument of counsel on April 15, 2024, reviewed the file, and being otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that the Plaintiff's Motion is DENIED.

The court incorporates a transcript of proceedings April 15, 2024.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 25th day of May, 2024.

2023-004474-CA-01 05-25-2024 8:13 AM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Kenneth L Bressler, ken.bressler@blankrome.com
Matthew L. Jones, matthew@jones-adams.com
Michelle M. Gervais Esq., michelle.gervais@blankrome.com
Michelle M. Gervais Esq., BRFLeservice@blankrome.com
Michelle M. Gervais Esq., Silvia.Membreno@blankrome.com
Nicolas B Bednarek, nicolas.bednarek@blankrome.com
Nicolas B. Bednarek, nicolas.bednarek@blankrome.com

**Physically Served:**

Filing # 202058941 E-Filed 07/08/2024 03:27:42 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

## ORDER DIRECTING PLAINTIFF TO SET THIS CASE FOR CASE MANAGEMENT CONFERENCE

Plaintiff shall coordinate and set a case management conference on this case within 14 days or the court may dismsis this case.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 8th day of July, 2024.

2023-004474-CA-01 07-08-2024 3:20 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com

Case No: 2023-004474-CA-01                                        Page 1 of 2

Matthew L. Jones, matthew@jones-adams.com


**Physically Served:**

Filing # 202443329 E-Filed 07/12/2024 03:58:30 PM

<div align="right">

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023-004474 CA 44

COMPLEX BUSINESS LITIGATION

</div>

ALLAN TEH, individually,

      Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS,
INC., a Florida Corporation, and
THE LAKE LAW FIRM, a New York
Limited Liability Company,

      Defendants.

_____/

## DEFENDANTS PERSIST COMMUNICATIONS AND LAKE LAW'S ADVICE TO COURT

Defendants, Persist Communications, Inc., and The Lake Law Firm's file this Advice to Court.

The Court lacks subject matter jurisdiction over this case because the case is over through entry of a final order that was never appealed. We explain.

On July 17, 2023, this Court entered an order compelling arbitration as to Melchionni and Benito "for the reasons stated on the record" and of dismissal as to Persist Communications and Lake Law. [DE 36]. As to the latter, if Plaintiff

<div align="center">1</div>

did not amend within 15 days, the action would stand dismissed as to Persist and Lake Law. Plaintiff did not amend.[1]

On July 31, 2023, Plaintiff filed a Motion for Clarification and Extension of Time Regarding the June [sic] 17, 2023 Order. The motion sought to clarify what Plaintiff viewed as a discrepancy between the written order and verbal ruling as to the ability to amend as to Melchionni and Benito. Apart from the fact that there could be no discrepancy because the order expressly referred to the ruling on the transcript as its order, the motion was not authorized, which is now fatal to Plaintiff.

A motion for clarification in a trial court does not toll rendition of a final order as it is not among those enumerated under Rule 9.020(h)(1) of the Florida Rules of Appellate Procedure. *See Tyler v. State of Florida – Governor Chiles,* 718 So. 2d 811 (Fla. 2d DCA 1997) (dismissing appeal as untimely because motion for clarification did not toll rendition of the order); *Adventist Health System/Sunbelt Inc. v. Kiss,* 510 So. 2d 971 (Fla. 5th DCA 1987) (motion for clarification did not delay rendition of final order). Such a motion is one for the appellate courts only. *See* Fla. R. App. P.9.330 (Rehearing; Clarification; Certification; Written Opinion).  As such, since Plaintiff did not appeal within 30 days of July 17, 2023, the order is now final and cannot be appealed.

---

[1] In full candor, counsel for Persist and Lake Law did agree that Plaintiff could have an extension to amend until the motion for clarification was decided (so Plaintiff could file a single amended pleading), but as explained below, that motion did not toll rendition, so the case is over as to everyone.

Notably, the Court did not retain jurisdiction over the arbitration portion of the order to enforce any award either.

Since the clarification motion can serve no purpose because the Court lost jurisdiction, the extension as to Persist and Lake Law lapsed as well, and the case is now over as to all parties because Plaintiff never amended before the Court lost jurisdiction.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the e-portal system on this 12th day of July 2024, to: Jones & Adams, P.A. Matthew Jones, Esq., matthew@jones-adams.com, Cheyenne Moghadam, Esq., c.moghadam@jones-adams.com, Blank Rome LLP, Michelle M. Gervais, Esq., michelle.gervais@blankrome.com, Kenneth L. Bressler, Esq. ken.bressler@blankrome.com, and Mitrani, Rynor, Adamsky & Toland, P.A., Issac J. Mitrani, Esq., imitrani@mitrani.com, Daniel S. Bitrani, Esq., dbitrani@mitrani.com.

**YOUNG BERMAN KARPF & KARPF, P.A.**
Counsel for The Lake Law Firm and
Persist Communications, Inc.
825 Brickell Bay Drive
Tower III, Ste. 1748
Miami, Florida 33131
Telephone: 305-945-1851
Direct Tel. 305-377-2290
Email: aberman@ybkklaw.com
Email: eservice@ybkklaw.com


   /s/ *Andrew S. Berman*

Andrew S. Berman
Florida Bar No.: 370932

3

Filing # 203058712 E-Filed 07/22/2024 04:20:50 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

### ORDER ON CASE MANAGEMENT

Post dismissal, port-enforcement motions have been filed.

No action on these motions has been taken.

The court's subject matter jurisdiction is called into question.

The parties shall: (1) set all pending motions within 30 days of this order and (2) brief the court on whether the court's final order has reserved any matter or the court will presume all matters have been resolved and will re-close this case and deny all motions.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 22nd day of July, 2024.

2023-004474-CA-01 07-22-2024 4:09 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2023-004474-CA-01                                        Page 1 of 2

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Daniel Bitran, dbitran@mitrani.com
Daniel Bitran, jlopez@mitrani.com
Daniel Bitran, miamidocketing@mitrani.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Isaac J. Mitrani, imitrani@mitraani.com
Jesus A. Lopez, jlopez@mitrani.com
Matthew L. Jones, matthew@jones-adams.com

**Physically Served:**

Filing # 205284922 E-Filed 08/21/2024 05:25:39 PM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2023-004474 CA 44

ALLAN TEH, individually,

        Plaintiff,

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
PERSIST COMMUNICATIONS, INC., a
Florida Corporation, and THE LAKE
LAW FIRM, a New York Limited
Liability Company,

        Defendants.

_____/

COMPLEX BUSINESS LITIGATION

## DEFENDANTS' BRIEF ON THE COURT'S RESERVATION OF JURISDICTION

Defendants, Lee Melchionni, Sylvia Benito, Persist Communications, Inc., and the Lake Law Firm ("Defendants"), pursuant to the Court's Order on Case Management, dated July 22, 2024 [D.E. 64], provide this brief on the Court's reservation of jurisdiction in this case.

In the Court's Order on Persist Communications' and the Lake Law Firm's Motion to Dismiss and Melchionni's and Benito's Motion to Compel Arbitration and Dismiss [D.E. 36], the Court stated that "The Court retains jurisdiction to enforce any judgment and hear any pending motions." The Defendants are simultaneously noticing their pending motions for sanctions [D.E. nos. 30, 47, and 48] for hearing.

Respectfully submitted,

**MITRANI, RYNOR, ADAMSKY &
TOLAND, P.A**.

301 Arthur Godfrey Road, PH
Miami Beach, FL  33140

1

Tel.:  305-358-0050
Fax:  305-358-0550
*/s/ Daniel S. Bitran*
Isaac J. Mitrani
Florida Bar No. 348538
imitrani@mitrani.com
jlopez@mitrani.com
Daniel S. Bitran
Florida Bar No. 124041
dbitran@mitrani.com
miamidocketing@mitrani.com


**YOUNG BERMAN KARPF & KARPF, P.A.**
Counsel for The Lake Law Firm and
Persist Communications, Inc.
825 Brickell Bay Drive
Tower III, Ste. 1748
Miami, Florida 33131
Telephone: 305-945-1851
Direct Tel. 305-377-2290
Email: aberman@ybkklaw.com
Email: eservice@ybkklaw.com


   */s/ Andrew S. Berman*

Andrew S. Berman
Florida Bar No.: 370932


### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was delivered to all of the parties via the Florida E-Filing Portal on June 24, 2024.


*/s/ Daniel S. Bitran*

2

Filing # 208615261 E-Filed 10/11/2024 10:54:37 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA

ALLAN TEH, individually

                                    Case No.: 2023-004474-CA-01
                                    Judge: Lisa S. Walsh

      Plaintiff,

      v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually
PERSIST COMMUNICATIONS, INC.,
a Florida Corporation, and
THE LAKE LAW FIRM, a
New York Limited Liability Company,

      Defendants.

_____/

## NOTICE OF FILING HEARING TRANSCRIPT

PLEASE TAKE NOTICE Plaintiff, Allan Teh, by and through the undersigned, hereby

files this hearing transcript regarding Defendants' Motion for Sanctions Pursuant to Fla. Stat. §

57.105 (D.E. #30), which took place on October 9, 2024, before the Honorable Judge Lisa Walsh.

                                  Respectfully submitted,

                                  **JONES & ADAMS, P.A.**
                                  *Attorney for Plaintiff*
                                  999 Ponce de Leon Blvd., Suite 925
                                  Coral Gables, FL 33134
                                  Tel: 305-270-8858
                                  Fax: 305-270-6778
                                  matthew@jones-adams.com
                                  c.moghadam@jones-adams.com

              By:     */s/ Matthew L. Jones*
                      Matthew L. Jones, Esq.
                      Florida Bar No.: 909335
                      Cheyenne Moghadam, Esq.
                      Florida Bar No.: 1040660

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that on October 11, 2024, the foregoing document was electronically

Clerk of the Court using the Florida e-filing portal.


By:*/s/ Matthew L. Jones*
Matthew L. Jones, Esq.

Page 1

IN THE CIRCUIT COURT OF THE 11 TH JUDICIAL CIRCUIT IN

AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:  2023-004474 CA 44


ALLAN TEH, individually

v.

LEE MELCHIONNI, individually,

SYLVIA BENITO, individually

PERSIST COMMUNICATIONS, INC., a

Florida Corporation, and THE LAKE

LAW FIRM, a New York Limited

Liability Company,

Defendants.

_____

NOTICE OF HEARING

( Defendants, Sylvia Benito and Lee Melchionni's

DEFENDANTS LEE MELCHIONNI'S AND SYLVIA BENITO'S MOTION

FOR SANCTIONS PURSUANT TO FLORIDA STATUTES § 57.105,

dated June 22, 2023 (D. E. # 30 )

BEFORE

THE HONORABLE LISA WALSH


DATE:  October 09, 2024.

TIME:  11:00 a.m. - 11:35 a.m.

Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF:

MATTHEW L. JONES, Esquire

Jones & Adams, P.A.

999 Ponce De Leon Boulevard Suite 925

Coral Gables, Florida 33134-3080

Office:  305-270-8858

Email :  Matthew@jones-adams.com

ON BEHALF OF THE DEFENDANT:

Thomas Mott, Esquire

Thomas R. Mott, P. A

PO Box 2055

Daytona Beach, Florida 32115-2055

Telephone:  386-257-2400

Email    :  Thomasrmott@bellsouth.net

Page 3

(WHEREUPON, the following proceedings were held as follows.)

THE COURT:  Okay.  We are here on the case of Teh, Allan v. Melchionni Lee.  State your appearances for the record.

MR. JONES:  On behalf of the Defendant.

MR. MOTT:  Thomas Mott.  Mr. Patron (ph) here.  I see him there.  Thank you for defendants, Melchionni, and Benito.  I wanted to note that we have an unopposed, --application pending.  I hope it's all right if I argue the motion.  But Mr. Patron is available if need be.

THE COURT:  That's fine.

MR. MOTT:  Okay, great.  I'll begin.  We're seeking sanctions because plaintiff and his attorneys knowingly violated the mandatory arbitration provision in the partnership agreement of issue, before filing this action, plaintiff and his attorneys filed an arbitration.  In that arbitration, they recognize the arbitration provision, quote: "Requires that a dispute between the parties be submitted to arbitration."  That's exhibit A, to our opening brief at paragraph 26.  Indeed, the arbitration provision, which is Section 39 of the agreement, is clear.  Quote, "Any controversy

Page 4

arising out of or related to this agreement where the breach thereof shall, be resolved via arbitration." Plaintiff does not dispute that this is a mandatory and broad arbitration provision. We moved to compel arbitration.

THE COURT: Am I in the order of the motion to compel?

MR. MOTT: What's that?

MR. JONES: Yes, Your Honor, you are.

MR. MOTT: Yeah, we moved to compel arbitration, and the court granted that motion, after holding a hearing in July of 2023. Mandatory arbitration provisions are meant to avoid the high costs of litigation. Plaintiff should not be allowed to consciously ignore the arbitration provision. If he's able to do so without being sanctioned, that the protections of the arbitration provision are toothless. Section 57 105 is also meant to prevent cost of litigation. That Section ensures that parties and their lawyers are accountable for frivolous claims not supported by the facts or the law. It's clear that sanctions under 57 105 are appropriate under these facts.

I'd like to discuss two cases from the briefs in support. The first is cited by Plaintiff in his

Page 5

opposition at page three to Young v. Ganese (ph) In that case, an insurance company sought legal fees pursuant to 57105.  The company argued that the insured, plaintiff in the case, would have filed his case as an arbitration because the policy at issue had an arbitration provision.  The Fourth District found that sanctions were not called for there because the arbitration provision was permissive, not mandatory.  There, the policy said that the parties, quote: "May arbitrate," making it permissive."  Here, the partnership agreement requires that claims, quote: "Shall be arbitrated," making it mandatory.  It stands to reason that had the provision in Young, being mandatory, sanctions would have been justified.

The second case I want to discuss is cited in our reply, Coke v. Coke(ph).  That case involved a marriage separation agreement which a husband and the wife entered into as a way to avoid the costs of litigating their divorce.  The wife went back on that agreement and filed for a contested divorce and sought to avoid a separation agreement.  After upholding the separation agreement, the Trial court sanctioned the wife and her lawyer because for their actions.  Quote: "Needlessly extended the litigation."  Those sanctions were affirmed by the Second district, like the wife in the Coke case.

Page 6

Plaintiff and his lawyers here have knowingly ignored an agreement meant to protect the parties from litigation costs.

Also like the wife in Coke, they have done so based on frivolous arguments.  Plaintiff's only argument in defense of his bringing suit and not on arbitration in this case, is clearly frivolous.  He argues that he is not bound by the arbitration provision because he alleges that he was fraudulently induced to enter the partnership agreement.  However, as this Court recognized during the July 13, 2023, hearing.  It is well settled law that alleging fraudulent inducement on the contract as a whole is not enough to circumvent a mandatory arbitration provision.  To get around the provision, plaintiff would need to allege that the arbitration provision itself was procured by fraud. Plaintiff has not alleged that, nor could he.

I do want to note that at the end of that July 20 or July 13, 2023 hearing, the Court indicated it would allow Plaintiff to amend its complaint, however, and this is the subject of a motion for clarification at docket 37 and 38.  It appears that the Court concluded that amendment would be futile, and ultimately granted the motion to compel without allowing amendment.  We don't make this sanctions motion lightly.  However,

Page 7

given the clarity of the arbitration provision, as well as Plaintiff's prior recognition that the provision, quote: "Required arbitration." We assert that sanctions here are appropriate. We ask the Court to grant the motion and order Plaintiff and his attorneys to cover the cost, the Defendants have incurred defending against this frivolous suit. I'm happy to answer any questions the Court may have.

THE COURT: Mr. Jones. I'll hear your response.

MR. JONES: Thank Your Honor. So, first of all, there's a couple of things to consider. Number one, I think that Your Honor is familiar with the law in this district that there has to be substantial, competent evidence submitted on a hearing like this. And they did not present any evidence -- this isn't an evidentiary hearing, but to the extent that Your Honor considers what council just argued as evidence. I'm not agreeing that the Court can do that.

THE COURT: I mean, you know I entered an order dismissing whatever evidence would there be?

MR. JONES: Well, again, Your Honor. I know that Your Honor has heard multiple hearings on motions for sanctions before. But before the Court can enter into the --

Page 8

THE COURT: -- You know this is based on the record, not on subjective decisions' of why you filed your lawsuit.

MR. JONES:  Right, and then the Court would be required to determine those decisions about filing the lawsuit.  But again, I'm ready to proceed.

THE COURT:  It's not your subjective intent, it's whether or not the lawsuit --there's any reasonable argument that the lawsuit wasn't frivolous.

MR. JONES:  Right.  So, let's go to what they must show to get sanctions.  So, number one, there's no evidence before this Court that the lawsuit itself is frivolous. And I want to make sure that we're directed on that. They're not saying that the lawsuit is frivolous. They're saying that our effort in filing the suit --

THE COURT:  -- Right.

MR. JONES:  -- Should not have been done because we didn't comply with the arbitration provision. Your Honor will recall this is a related case. The KS law case is Justice Public Well, I should say it's virtually identical to the Justice Partners (ph) case that we just tried before Your Honor, where we got a verdict in our favor. These are all related cases. This is the Alan te dispute, where he put four million in KS law, four million in Justice Partners, and he's been

spending the past two years trying to figure out where his eight million dollars went. So that's, that's related to this case, so it gives Your Honor some -- So what the Defendants want to say, is that Mr. Te and this firm should be sanctioned, because instead of initiating arbitration pursuant to that clause, we filed the lawsuit. They're pretending as if, Your Honor, knows this very well, as if 100 times every quarter, there are lawsuits filed on agreements that have arbitration provisions and for a variety, an infinite variety of reasons, the arbitration provision is waived if the parties decide not to invoke it, and the parties move along. There're other arguments associated with why the case ultimately doesn't end up in arbitration. So, to say that we should be sanctioned for testing the waters in whether or not the Defendants would waive off on that arbitration argument, I would respectfully submit as an absurd proposition. And to make that point even more crystal clear.  In the Justice Partner's case, Your Honor, you'll recall that we also had a derivative action going.  In the derivative action, they also move to compel arbitration.

THE COURT:  Can you point out to me in your response, where you go through any of this?

MR. JONES:  In our response, we go through,

Page 10

and we cite to a various of case law, we cite with regard to the Defenses to Arbitration.  That's mentioned uh-on page six of seven. Uh- There's various portions in our response, and, and with regard to --

THE COURT:  Talk about the merits of the actual action, which is well and good --

MR. JONES:  -- Right, and then I should also point out the fact that, and Your Honor this is critical.  There's not a single case in Florida that has ever held, that says, that initiating the case in the manner which we did results in sanctions against the Plaintiffs or Plaintiff's counsel.  Not one.  Notice how in their filings, they've not put a single shred of authority before you that says, oh, initiating a case or -- litigation and not utilizing the arbitration provision is a sanctionable conduct. And the reason they can't put one in front of you, Your Honor, is because there isn't one.  And we did point that out to the Court.  And I think that when you consider the standards associated in the MC Liberty(ph) case, the Phills Amy (ph)case, and all of the cases that are well vetted and well understood in the state of Florida, it's absolutely not a sanctionable conduct. And to come in and say, well, because you're able to get it dismissed, and because you did not prevail; that,

Page 11

that results in sanctions, I mean, the MC Liberty case and the Phills Amy case directly speaks to that. The fact that you lose doesn't mean that it's sanctionable conduct. And again, I think it's acritical to point out, that what they're literally saying, because we did not file an arbitration immediately, and we tested the legal waters to see if they would waive it, to see if there was another defense associated with it. That that is somehow sanctionable. And there's no legal authority in the state of Florida to suggest that that's the case.

MR. MOTT: May I respond Your Honor?

THE COURT: Sure.

MR. MOTT: I'd like to point, Your Honor to a case I first mentioned, which was young v. Genese, which really indicated that had the arbitration provision there been mandatory, it very well could have resulted in sanctions. That's one Florida case that I think supports sanctions here. There are cases outside of Florida that we did not cite in our briefs that also hold sanctions in very similar situations. I'd also say that the Coke v Coke case, which I mentioned is very analogous here.

THE COURT: Speaking of papers, can you give me the citation to it, please?

Page 12

MR. MOTT:  Yeah, So, it's Young v Ganese (ph).

THE COURT:  Okay.

MR. MOTT:  Okay, and then coke v Coke is our reply, and that's 47So3rd320.

THE COURT:  If I might add, the reply was not uploaded.  It might have been filed, but it was not uploaded.

MR. MOTT:  Oh, my apologies there, Your Honor, we can get that to you.

THE COURT:  Okay.

MR. MOTT:  Uh- and then uh- on the point about the related case where we, -uhm, you know, move to compel arbitration.

THE COURT:  Can I ask a question?  Is there a prevailing party fee agreement?  Or a prevailing party provision in the settlement agreement?

MR. MOTT:  There's no prevailing party provision in the partnership agreement at issue.

THE COURT:  (Indiscernible) Okay.

MR. MOTT:  Sorry, was there a question?

THE COURT:  No, no, no. I'm just taking a look at code because I haven't seen it before.

MR. MOTT:  Okay.

THE COURT:  And to the arguments uhm- being

Page 13

made that you know, it's true, I have half a dozen cases that involve related parties.  Um- That is it, is it frivolity to you know, to attempt to litigate your case, not knowing whether the uh- arbitration provision is going to be enforced by the other party?

MR. JONES:  That was our point.  Your Honor.

THE COURT:  No, no, I'm not asking you.  I'm asking your opponent.  Thank you.

MR. MOTT:  I would say that you know, when we filed our motion to compel arbitration in response, it was clear that we were not waiving arbitration.  And then, when we were before - we filed this sanctions motion, we followed 57 105 notice provision and provided them with 20-days to withdraw the complaint.  And by not doing so, that was their way of, you know, lowering our damages, or not our damages, but the amount of attorney's fees that we incurred defending against this action. So, I'd say that, you know, if they're putting their foot in the water, that it's clear that the water was hot and that they shouldn't have been  --

THE COURT:  -- Alright, what about their argument that this is just a motion for sanctions, and you have to support it with more than just allegations or just the docket in this case.  And that there needs to be --like, I have to conduct an evidentiary hearing.

Page 14

MR. MOTT:  Yeah, I am not sure what sort of evidence you would need, other than the arguments here. Other than the papers, I think this is a pretty clear issue on the factual record that is based on an agreement that they filed.  And you know, in terms of the legal arguments that there are.  They're frivolous. It's easy to see, that those arguments are clear on their face, given the clear law in Florida, DC, the Federal arbitrations Act, and in the case law that we submitted.  So, I don't see what other evidence would be required, or even, if it could be even really contemplated here.

MR. JONES:  Your Honor, I have a response, but I'll wait, if you're reading.

THE COURT:  Okay, so this is what they're relying on.  Within the body of MC Liberty Express vs. All Points Services.  This is out of the Third District Court of Appeal.  This is from 2018 uh- Chalkboards findings must be based on substantial, competent evidence that is either contained in the record or otherwise before the Court.  So, the items in the record are, you know, the 57 105 Letter, The Complaint that is filed, the legal arguments that are made.  Is there anything else?

MR. MOTT:  If that's a question to me?  I

Page 15

don't see that there's any other evidence that's

necessary to make a finding here.

THE COURT:  Okay, so Mr. Jones.  What else

would be necessary in order to make a finding?

MR. JONES:  Well, I think that-

THE COURT:  As to lack of good faith.

MR. JONES:  Right.  You would have to have

some sort of evidence before the Court that would show

this lack of good faith.  What were counsels'

understandings, tactics, reasons for filing, and all

those things that are required, in filing for sanctions.

And none of that is before the Court.  I think the MC

Liberty case and the Phills Amy case make that crystal

clear.  In fact, it's my recollection of the Phills Amy

case talks about the plaintiff acting in good faith, and

those things are not before the Court.

There's nothing before the court.  But I can, again, to

the extent Your Honor considers this appropriate to

explore in the absence of arguments and without us

waving it, I've explained to the Court the Plaintiff is

allowed to vigorously test whether or not the Defendants

are going to waive off on an arbitration provision, and

as evidence of our good faith.  Look at what they did in

the Justice Partners case.  They moved to compel

arbitration.  They also asked for sanctions in that case

Page 16

for the same reason, and then the day before the hearing, they withdrew their objection to arbitration. And now we are litigating the Justice Partner's case before you, Your Honor.

So, our good faith in this regard cannot even be remotely questioned, and in the absence of case law supporting their argument, this motion should be denied outright.

MR. MOTT:  On the Justice Partners case, I just note that that's a very different arbitration provision.  It's a lot less clear than this one, which is clearly mandatory, clearly broad, and, you know, it's well related.  It's a different agreement, and therefore, you know, a different legal issue.

MR. JONES:  So that's a concession, Your Honor.  Regarding our good faith.  We're allowed to test these waters.  It is an appropriate litigation tactic to see if they'll waive off on it.  They waved off on Justice Partners, I think that it's and, again, I would respectfully request that the Court denies the motion.

THE COURT: Okay.  All right.  Anything else?  All right, respectfully, the Motion for 57105, Sanctions is Denied.  It is true in the context of filing a motion to compel arbitration or a motion to be relieved from an arbitration clause, -- it is, you know. -- There's

Page 17

nothing on the face of the record right now that indicates that, that was conducted in bad faith or without any justiciable basis in order to do.  So, I certainly don't have any evidence in that regard.  It ended up being a well taken motion to compel arbitration.  I'm sensitive to not delay and waste, but I don't believe that sanctions are merited in this case, under these circumstances.  So, denied.

MR. JONES:  Thank you, Your Honor.  We'll prepare an order.

THE COURT:  -- Okay, and I have another hearing just, I'm going to excuse you.  Thank you.

MR. JONES:  Thank you, Your Honor.

MR. MOTT:  Thank you, Your Honor.

(THEREUPON, the hearing was concluded.)

Page 18

                    C E R T I F I C A T E


STATE OF FLORIDA        )

MIAMI-DADE COUNTY       )

          I, Daisy L. Amador, Reporter and Notary

Public for the State of Florida at Large, do hereby

certify that I was authorized to and did report said

hearing; and that the foregoing pages, numbered 1 to 19,

inclusive, are a true and complete transcription of my

notes of said hearing.

          I further certify that said hearing was

taken at the time and place hereinabove set forth and

that the taking of said hearing was commenced and

completed as hereinabove set out.

          I further certify that I am not an attorney

or counsel of any of the parties, nor am I a relative or

employee of any attorney or counsel connected with the

action, nor am I financially interested in the action.

          The foregoing certification of this

transcript does not apply to any reproduction of the

same by any means under the direct control and/or

direction of the certifying reporter.

          IN WITNESS WHEREOF, I have hereunto set my

hand and seal this 10 th day of October, 2024.

Page 19

Daisy L. Amador

Notary Public for the State of Florida

Commission No. HH175493

Expires:  10/17/2025

[& - argues]                                                                    Page 20

**&**

**&** 2:6

**0**

**09** 1:23

**1**

**1** 18:8
**10** 18:24
**10/17/2025** 19:5
**100** 9:8
**105** 4:18,22
  13:13 14:22
**11** 1:1
**11:00** 1:24
**11:35** 1:24
**13** 6:11,19
**17328** 19:1
**19** 18:8

**2**

**20** 6:18 13:14
**2018** 14:18
**2023** 1:19 4:12
  6:11,19
**2023-004474**
  1:3
**2024** 1:23 18:24
**2055** 2:16
**22** 1:19
**26** 3:23

**3**

**30** 1:19
**305-270-8858**
  2:9

**32115-2055**
  2:17
**33134-3080** 2:8
**37** 6:22
**38** 6:22
**386-257-2400**
  2:18
**39** 3:24

**4**

**44** 1:3
**47so3rd320**
  12:5

**5**

**57** 4:18,22 13:13
  14:22
**57.105** 1:18
**57105** 5:3 16:22

**9**

**925** 2:7
**999** 2:7

**a**

**a.m.** 1:24,24
**able** 4:16 10:24
**absence** 15:19
  16:6
**absolutely**
  10:23
**absurd** 9:18
**accountable**
  4:20
**acritical** 11:4
**act** 14:9
**acting** 15:15

**action** 3:19 9:21
  9:21 10:6 13:18
  18:18,18
**actions** 5:23
**actual** 10:6
**adams** 2:6
**adams.com** 2:10
**add** 12:6
**affirmed** 5:24
**agreeing** 7:19
**agreement** 3:18
  3:25 4:1 5:10,17
  5:19,21,22 6:2
  6:10 12:16,17
  12:19 14:5
  16:13
**agreements** 9:9
**alan** 8:24
**allan** 1:5 3:5
**allegations**
  13:23
**allege** 6:15
**alleged** 6:17
**alleges** 6:9
**alleging** 6:12
**allow** 6:20
**allowed** 4:14
  15:21 16:16
**allowing** 6:24
**alright** 13:21
**amador** 18:5
  19:2
**amend** 6:20
**amendment**
  6:23,24

**amount** 13:16
**amy** 10:21 11:2
  15:13,14
**analogous** 11:23
**answer** 7:7
**apologies** 12:9
**appeal** 14:18
**appearances** 2:1
  3:5
**appears** 6:22
**application** 3:11
**apply** 18:20
**appropriate**
  4:22 7:4 15:18
  16:17
**arbitrate** 5:9
**arbitrated** 5:11
**arbitration** 3:17
  3:20,20,21,22
  3:24 4:2,4,5,11
  4:13,15,17 5:4,5
  5:7 6:6,8,14,16
  7:1,3 8:18 9:6,9
  9:11,14,17,22
  10:2,15 11:6,16
  12:14 13:4,10
  13:11 15:22,25
  16:2,10,24,25
  17:6
**arbitrations**
  14:9
**argue** 3:12
**argued** 5:3 7:18
**argues** 6:7

**[argument - contemplated]** Page 21

argument 6:5
  8:9 9:17 13:22
  16:7
arguments 6:5
  9:13 12:25 14:2
  14:6,7,23 15:19
arising 4:1
asked 15:25
asking 13:7,8
assert 7:3
associated 9:13
  10:20 11:8
attempt 13:3
attorney 18:15
  18:17
attorney's 13:17
attorneys 3:16
  3:19 7:5
authority 10:14
  11:10
authorized 18:7
available 3:13
avoid 4:13 5:18
  5:20

**b**

back 5:19
bad 17:2
based 6:4 8:1
  14:4,19
basis 17:3
beach 2:17
behalf 2:4,13
  3:7
believe 17:7

bellsouth.net
  2:19
benito 1:8,16
  3:10
benito's 1:17
body 14:16
boulevard 2:7
bound 6:8
box 2:16
breach 4:2
brief 3:23
briefs 4:24
  11:20
bringing 6:6
broad 4:4 16:12

**c**

c 18:1,1
ca 1:3
called 5:7
case 1:3 3:4 5:2
  5:4,4,15,16,25
  6:7 8:19,20,21
  9:3,14,19 10:1,9
  10:10,14,21,21
  11:1,2,11,15,18
  11:22 12:13
  13:3,24 14:9
  15:13,13,15,24
  15:25 16:3,6,9
  17:7
cases 4:24 8:23
  10:21 11:19
  13:1
certainly 17:4

certification
  18:19
certify 18:7,11
  18:15
certifying 18:22
chalkboards
  14:18
circuit 1:1,1
circumstances
  17:8
circumvent 6:13
citation 11:25
cite 10:1,1 11:20
cited 4:25 5:15
claims 4:20 5:11
clarification
  6:21
clarity 7:1
clause 9:6 16:25
clear 3:25 4:21
  9:19 13:11,19
  14:3,7,8 15:14
  16:11
clearly 6:7
  16:12,12
code 12:23
coke 5:16,16,25
  6:4 11:22,22
  12:4,4
come 10:24
commenced
  18:13
commission
  19:4

communicatio...
  1:9
company 1:12
  5:2,3
compel 4:4,7,10
  6:24 9:22 12:14
  13:10 15:24
  16:24 17:5
competent 7:15
  14:19
complaint 6:20
  13:14 14:22
complete 18:9
completed
  18:14
comply 8:18
concession
  16:15
concluded 6:22
  17:16
conduct 10:16
  10:23 11:4
  13:25
conducted 17:2
connected 18:17
consciously
  4:15
consider 7:12
  10:20
considers 7:18
  15:18
contained 14:20
contemplated
  14:12

**[contested - filing]**

Page 22

contested 5:20
context 16:23
contract 6:13
control 18:21
controversy 3:25
coral 2:8
corporation 1:10
cost 4:18 7:6
costs 4:13 5:18 6:3
council 7:18
counsel 10:12 18:16,17
counsels 15:9
county 1:2 18:4
couple 7:12
court 1:1 3:4,14 4:6,11 5:22 6:10 6:19,22 7:4,8,9 7:19,20,24 8:1,4 8:7,12,16 9:23 10:5,19 11:13 11:24 12:3,6,11 12:15,20,22,25 13:7,21 14:15 14:18,21 15:3,6 15:8,12,16,17 15:20 16:20,21 17:11
cover 7:5
critical 10:9
crystal 9:19 15:13

**d**

d 1:19
dade 1:2 18:4
daisy 18:5 19:2
damages 13:16 13:16
date 1:23
dated 1:19
day 16:1 18:24
days 13:14
daytona 2:17
dc 14:8
de 2:7
decide 9:12
decisions 8:2,5
defendant 2:13 3:7
defendants 1:13 1:16,17 3:9 7:6 9:4,16 15:21
defending 7:6 13:17
defense 6:6 11:8
defenses 10:2
delay 17:6
denied 16:7,23 17:8
denies 16:20
derivative 9:20 9:21
determine 8:5
different 16:10 16:13,14
direct 18:21

directed 8:13
direction 18:22
directly 11:2
discuss 4:24 5:15
dismissed 10:25
dismissing 7:21
dispute 3:21 4:3 8:24
district 5:6,25 7:14 14:17
divorce 5:19,20
docket 6:22 13:24
doing 13:15
dollars 9:2
dozen 13:1

**e**

e 1:19 18:1,1
easy 14:7
effort 8:15
eight 9:2
either 14:20
email 2:10,19
employee 18:17
ended 17:5
enforced 13:5
ensures 4:19
enter 6:9 7:24
entered 5:18 7:20
esquire 2:5,14
evidence 7:15 7:16,18,21 8:11 14:2,10,20 15:1

15:8,23 17:4
evidentiary 7:17 13:25
excuse 17:12
exhibit 3:23
expires 19:5
explained 15:20
explore 15:19
express 14:16
extended 5:24
extent 7:17 15:18

**f**

f 18:1
face 14:8 17:1
fact 10:8 11:3 15:14
facts 4:21,23
factual 14:4
faith 15:6,9,15 15:23 16:5,16 17:2
familiar 7:13
favor 8:23
federal 14:9
fee 12:16
fees 5:2 13:17
figure 9:1
file 11:6
filed 3:19 5:4,20 8:2 9:6,9 12:7 13:10,12 14:5 14:23
filing 3:18 8:5 8:15 15:10,11

**[filing - justified]**                                                      Page 23

16:23
**filings** 10:13
**financially** 18:18
**finding** 15:2,4
**findings** 14:19
**fine** 3:14
**firm** 1:11 9:5
**first** 4:25 7:11 11:15
**florida** 1:2,10 1:18 2:8,17 10:9 10:23 11:10,18 11:20 14:8 18:3 18:6 19:3
**followed** 13:13
**following** 3:1
**follows** 3:2
**foot** 13:19
**foregoing** 18:8 18:19
**forth** 18:12
**found** 5:6
**four** 8:24,25
**fourth** 5:6
**fraud** 6:16
**fraudulent** 6:12
**fraudulently** 6:9
**frivolity** 13:3
**frivolous** 4:20 6:5,7 7:7 8:9,12 8:14 14:6
**front** 10:17

**further** 18:11 18:15
**futile** 6:23

**g**

**gables** 2:8
**ganese** 5:1 12:1
**genese** 11:15
**give** 11:24
**given** 7:1 14:8
**gives** 9:3
**go** 8:10 9:24,25
**going** 9:21 13:5 15:22 17:12
**good** 10:6 15:6 15:9,15,23 16:5 16:16
**grant** 7:4
**granted** 4:11 6:23
**great** 3:15

**h**

**half** 13:1
**hand** 18:24
**happy** 7:7
**hear** 7:9
**heard** 7:23
**hearing** 1:15 4:12 6:11,19 7:15,17 13:25 16:2 17:12,16 18:8,10,11,13
**hearings** 7:23
**held** 3:2 10:10

**hereinabove** 18:12,14
**hereunto** 18:23
**hh175493** 19:4
**high** 4:13
**hold** 11:21
**holding** 4:12
**honor** 4:9 7:11 7:13,17,22,23 8:19,22 9:3,7,20 10:8,18 11:12 11:14 12:10 13:6 14:13 15:18 16:4,16 17:9,13,14
**honorable** 1:21
**hope** 3:11
**hot** 13:20
**husband** 5:17

**i**

**identical** 8:21
**ignore** 4:15
**ignored** 6:1
**immediately** 11:6
**inclusive** 18:9
**incurred** 7:6 13:17
**indicated** 6:19 11:16
**indicates** 17:2
**indiscernible** 12:20
**individually** 1:5 1:7,8

**induced** 6:9
**inducement** 6:12
**infinite** 9:10
**initiating** 9:5 10:10,14
**insurance** 5:2
**insured** 5:3
**intent** 8:7
**interested** 18:18
**invoke** 9:12
**involve** 13:2
**involved** 5:16
**issue** 3:18 5:5 12:19 14:4 16:14
**items** 14:21

**j**

**jones** 2:5,6,10 3:7 4:9 7:9,11 7:22 8:4,10,17 9:25 10:7 13:6 14:13 15:3,5,7 16:15 17:9,13
**judicial** 1:1
**july** 4:12 6:11 6:18,19
**june** 1:19
**justice** 8:20,21 8:25 9:19 15:24 16:3,9,19
**justiciable** 17:3
**justified** 5:14

**[know - p.a.]** Page 24

**k**

know 7:20,22 8:1 12:13 13:1,3 13:9,15,18 14:5 14:22 16:12,14 16:25
knowing 13:4
knowingly 3:17 6:1
knows 9:7
ks 8:19,24

**l**

l 2:5 18:5 19:2
lack 15:6,9
lake 1:10
large 18:6
law 1:11 4:21 6:12 7:13 8:20 8:25 10:1 14:8,9 16:6
lawsuit 8:3,6,8,9 8:12,14 9:7
lawsuits 9:9
lawyer 5:23
lawyers 4:20 6:1
lee 1:7,16,17 3:5
legal 5:2 11:7,10 14:6,23 16:14
leon 2:7
letter 14:22
liability 1:12
liberty 10:20 11:1 14:16 15:13

lightly 6:25
limited 1:11
lisa 1:21
literally 11:5
litigate 13:3
litigating 5:18 16:3
litigation 4:14 4:19 5:24 6:2 10:15 16:17
look 12:23 15:23
lose 11:3
lot 16:11
lowering 13:15

**m**

made 13:1 14:23
make 6:25 8:13 9:18 15:2,4,13
making 5:10,12
mandatory 3:17 4:3,12 5:8,12,13 6:14 11:17 16:12
manner 10:11
marriage 5:16
matthew 2:5,10
mc 10:20 11:1 14:16 15:12
mean 7:20 11:1 11:3
means 18:21
meant 4:13,18 6:2

melchionni 1:7 3:5,10
melchionni's 1:16,17
mentioned 10:2 11:15,22
merited 17:7
merits 10:5
miami 1:2 18:4
million 8:24,25 9:2
motion 1:17 3:12 4:6,11 6:21 6:24,25 7:5 13:10,13,22 16:7,20,22,23 16:24 17:5
motions 7:23
mott 2:14,15 3:8 3:8,15 4:8,10 11:12,14 12:1,4 12:9,12,18,21 12:24 13:9 14:1 14:25 16:9 17:14
move 9:12,21 12:13
moved 4:4,10 15:24
multiple 7:23

**n**

necessary 15:2 15:4
need 3:13 6:15 14:2

needlessly 5:23
needs 13:24
new 1:11
notary 18:5 19:3
note 3:10 6:18 16:10
notes 18:10
notice 1:15 10:12 13:13
number 7:12 8:11
numbered 18:8

**o**

objection 16:2
october 1:23 18:24
office 2:9
oh 10:14 12:9
okay 3:4,15 12:3,4,11,20,24 14:15 15:3 16:21 17:11
opening 3:23
opponent 13:8
opposition 5:1
order 4:6 7:5,21 15:4 17:3,10
outright 16:8
outside 11:19

**p**

p 2:15
p.a. 2:6

**[page - response]**                                                 Page 25

page  5:1 10:3
pages  18:8
papers  11:24
  14:3
paragraph  3:23
parties  3:22
  4:19 5:9 6:2
  9:12,12 13:2
  18:16
partner's  9:19
  16:3
partners  8:21
  8:25 15:24 16:9
  16:19
partnership
  3:18 5:10 6:10
  12:19
party  12:16,16
  12:18 13:5
past  9:1
patron  3:8,12
pending  3:11
permissive  5:8
  5:10
persist  1:9
ph  3:8 5:1,16
  8:21 10:20,21
  12:2
phills  10:21
  11:2 15:13,14
place  18:12
plaintiff  2:4
  3:16,19 4:3,14
  4:25 5:3 6:1,15
  6:17,20 7:5

15:15,20
plaintiff's  6:5
  7:2 10:12
plaintiffs  10:12
please  11:25
po  2:16
point  9:18,23
  10:8,18 11:5,14
  12:12 13:6
points  14:17
policy  5:5,9
ponce  2:7
portions  10:3
prepare  17:10
present  7:16
pretending  9:7
pretty  14:3
prevail  10:25
prevailing
  12:16,16,18
prevent  4:18
prior  7:2
proceed  8:6
proceedings  3:1
procured  6:16
proposition
  9:18
protect  6:2
protections  4:17
provided  13:13
provision  3:17
  3:21,24 4:4,15
  4:17 5:6,8,13
  6:8,14,15,16 7:1
  7:2 8:18 9:11

10:16 11:17
12:17,19 13:4
13:13 15:22
16:11
provisions  4:13
  9:10
public  8:20 18:6
  19:3
pursuant  1:18
  5:2 9:6
put  8:24 10:13
  10:17
putting  13:18

**q**

quarter  9:8
question  12:15
  12:21 14:25
questioned  16:6
questions  7:7
quote  3:21,25
  5:9,11,23 7:3

**r**

r  2:15 18:1
reading  14:14
ready  8:6
really  11:16
  14:11
reason  5:12
  10:17 16:1
reasonable  8:8
reasons  9:11
  15:10
recall  8:19 9:20

recognition  7:2
recognize  3:20
recognized  6:11
recollection
  15:14
record  3:6 8:2
  14:4,20,21 17:1
regard  10:2,4
  16:5 17:4
regarding  16:16
related  4:1 8:19
  8:23 9:3 12:13
  13:2 16:13
relative  18:16
relieved  16:24
relying  14:16
remotely  16:6
reply  5:15 12:5
  12:6
report  18:7
reporter  18:5
  18:22
reproduction
  18:20
request  16:20
required  7:3 8:5
  14:11 15:11
requires  3:21
  5:11
resolved  4:2
respectfully
  9:17 16:20,22
respond  11:12
response  7:10
  9:24,25 10:4

**[response - unopposed]**

Page 26

13:10 14:13
**resulted** 11:18
**results** 10:11
11:1
**right** 3:12 8:4
8:10,16 10:7
15:7 16:21,22
17:1

**s**

**sanctionable**
10:16,23 11:4,9
**sanctioned** 4:16
5:22 9:5,15
**sanctions** 1:18
3:16 4:22 5:6,13
5:24 6:25 7:3,24
8:11 10:11 11:1
11:18,19,21
13:12,22 15:11
15:25 16:22
17:7
**saying** 8:14,15
11:5
**says** 10:10,14
**seal** 18:24
**second** 5:15,25
**section** 3:24
4:18,19
**see** 3:9 11:7,8
14:7,10 15:1
16:18
**seeking** 3:16
**seen** 12:23
**sensitive** 17:6

**separation** 5:17
5:21,21
**services** 14:17
**set** 18:12,14,23
**settled** 6:12
**settlement**
12:17
**seven** 10:3
**show** 8:10 15:8
**shred** 10:13
**signature** 19:1
**similar** 11:21
**single** 10:9,13
**situations** 11:21
**six** 10:3
**sorry** 12:21
**sort** 14:1 15:8
**sought** 5:2,20
**speaking** 11:24
**speaks** 11:2
**spending** 9:1
**standards** 10:20
**stands** 5:12
**state** 3:5 10:22
11:10 18:3,6
19:3
**statutes** 1:18
**subject** 6:21
**subjective** 8:2,7
**submit** 9:18
**submitted** 3:22
7:15 14:10
**substantial** 7:14
14:19

**suggest** 11:10
**suit** 6:6 7:7 8:15
**suite** 2:7
**support** 4:25
13:23
**supported** 4:21
**supporting** 16:7
**supports** 11:19
**sure** 8:13 11:13
14:1
**sylvia** 1:8,16,17

**t**

**t** 18:1,1
**tactic** 16:17
**tactics** 15:10
**taken** 17:5
18:12
**talk** 10:5
**talks** 15:15
**te** 8:24 9:4
**teh** 1:5 3:5
**telephone** 2:18
**terms** 14:5
**test** 15:21 16:16
**tested** 11:7
**testing** 9:15
**th** 1:1 18:24
**thank** 3:9 7:11
13:8 17:9,12,13
17:14
**thereof** 4:2
**things** 7:12
15:11,16
**think** 7:13 10:19
11:4,19 14:3

15:5,12 16:19
**third** 14:17
**thomas** 2:14,15
3:8
**thomasrmott**
2:19
**three** 5:1
**time** 1:24 18:12
**times** 9:8
**toothless** 4:17
**transcript** 18:20
**transcription**
18:9
**trial** 5:22
**tried** 8:22
**true** 13:1 16:23
18:9
**trying** 9:1
**two** 4:24 9:1

**u**

**uh** 10:3,3 12:12
12:12 13:4
14:18
**uhm** 12:13,25
**ultimately** 6:23
9:14
**um** 13:2
**under** 4:22,22
17:8 18:21
**understandings**
15:10
**understood**
10:22
**unopposed** 3:11

Veritext Legal Solutions

800-726-7007

305-376-8800

**[upholding - young]**

| | |
|---|---|
| **upholding**  5:21 | **whereof**  18:23 |
| **uploaded**  12:7,8 | **wife**  5:17,19,22 |
| **utilizing**  10:15 | 5:25 6:4 |
| **v** | **withdraw**  13:14 |
| **v**  1:6 3:5 5:1,16 | **withdrew**  16:2 |
| 11:15,22 12:1,4 | **witness**  18:23 |
| **variety**  9:10,10 | **y** |
| **various**  10:1,3 | **yeah**  4:10 12:1 |
| **verdict**  8:23 | 14:1 |
| **vetted**  10:22 | **years**  9:1 |
| **vigorously** | **york**  1:11 |
| 15:21 | **young**  5:1,13 |
| **violated**  3:17 | 11:15 12:1 |
| **virtually**  8:21 | |
| **vs**  14:16 | |
| **w** | |
| **wait**  14:14 | |
| **waive**  9:16 11:7 | |
| 15:22 16:18 | |
| **waived**  9:11 | |
| **waiving**  13:11 | |
| **walsh**  1:21 | |
| **want**  5:15 6:18 | |
| 8:13 9:4 | |
| **wanted**  3:10 | |
| **waste**  17:6 | |
| **water**  13:19,19 | |
| **waters**  9:16 | |
| 11:7 16:17 | |
| **waved**  16:18 | |
| **waving**  15:20 | |
| **way**  5:18 13:15 | |
| **went**  5:19 9:2 | |

Filing # 211788977 E-Filed 11/26/2024 03:17:10 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS [DE #30]

THIS CAUSE, having come before this Court and the Court having heard argument of counsel on October 9th, 2024, reviewed the file, and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that Defendants Lee Melchionni and Sylvia Benito's Motion for Sanctions Pursuant to Florida Statute §57.105 [DE #30], is DENIED.

DONE and ORDERED in Chambers at Miami-Dade County, Florida on this 26th day of November, 2024.

2023-004474-CA-01 11-26-2024 3:00 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Beatriz Chaves Barbosa, b.barbosa@jones-adams.com
Beatriz Chaves Barbosa, matthew@jones-adams.com
Beatriz Chaves Barbosa, steven@jones-adams.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Daniel Bitran, dbitran@mitrani.com
Daniel Bitran, jlopez@mitrani.com
Daniel Bitran, miamidocketing@mitrani.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Isaac J. Mitrani, imitrani@mitraani.com
Jesus A. Lopez, jlopez@mitrani.com
Matthew L. Jones, matthew@jones-adams.com
Thomas Mott, tmott@seidenlaw.com


**Physically Served:**

Filing # 212574700 E-Filed 12/10/2024 04:41:26 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

### ORDER TO SHOW CAUSE WHY THE LAKE LAW FIRM AND PERSIST COMMUNICATIONS, SHOULD NOT BE DEFAULTED FOR FAILURE TO COMPLY WITH COURT ORDER

The court granted a motion to withdraw filed by counsel for The Lake Law Firm and Persist Communications,. The defendants had until November 21, 2024 to retain successor counsel. No compliance was had.

The defendants shall wither obtain counsel who shall file a notice of appearance within 7days of this order or the court will enter a default against these parties.

Corporate entities may not self-represent in Florida.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 10th day of December, 2024.

2023-004474-CA-01 12-10-2024 4:24 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2023-004474-CA-01

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Beatriz Chaves Barbosa, b.barbosa@jones-adams.com
Beatriz Chaves Barbosa, matthew@jones-adams.com
Beatriz Chaves Barbosa, steven@jones-adams.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Daniel Bitran, dbitran@mitrani.com
Daniel Bitran, jlopez@mitrani.com
Daniel Bitran, miamidocketing@mitrani.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Isaac J. Mitrani, imitrani@mitraani.com
Jesus A. Lopez, jlopez@mitrani.com
Matthew L. Jones, matthew@jones-adams.com
Thomas Mott, tmott@seidenlaw.com


**Physically Served:**

Filing # 212574850 E-Filed 12/10/2024 04:42:16 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2023-004474-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Allan Teh**

Plaintiff(s)

vs.

**Lee Melchionni et al**

Defendant(s)

_____/

## ORDER STAYING CASE AND PLACING THIS CASE ON INACTIVE STATUS PENDING ARBITRATION

In DE 36, the court entered its ORDER ON PERSIST COMMUNICATIONS' AND THE LAKE LAW FIRM'S MOTION TO DISMISS [DE#16] AND MELCHIONNI'S AND BENITO'S MOTION TO COMPEL ARBITRATION AND DISMISS [DE#18]

The case is proceeding in arbitration, and therefore the case is ordered STAYED and the clerk is ordered to place this case on inactive status.

The Plaintiff shall place this case on the court;s docket within 30 days of an arbitral decision.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 10th day of December, 2024.

2023-004474-CA-01 12-10-2024 4:30 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2023-004474-CA-01

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Scott Berman, aberman@ybkklaw.com
Andrew Scott Berman, eservice@ybkklaw.com
Beatriz Chaves Barbosa, b.barbosa@jones-adams.com
Beatriz Chaves Barbosa, matthew@jones-adams.com
Beatriz Chaves Barbosa, steven@jones-adams.com
Cheyenne Moghadam, c.moghadam@jones-adams.com
Daniel Bitran, dbitran@mitrani.com
Daniel Bitran, jlopez@mitrani.com
Daniel Bitran, miamidocketing@mitrani.com
Eric Rojo-Dotel, e.rojodotel@jones-adams.com
Isaac J. Mitrani, imitrani@mitraani.com
Jesus A. Lopez, jlopez@mitrani.com
Matthew L. Jones, matthew@jones-adams.com
Thomas Mott, tmott@seidenlaw.com


**Physically Served:**