**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ALLAN TEH,

     On a derivative basis as a member of,

JUSTICE PARTNERS, a Delaware
Limited Liability Company

     Plaintiff(s),

                                    Case No: 1:25-cv-25578-B

v.

LEE MELCHIONNI, individually,
SYLVIA BENITO, individually,
JUSTICE PARTNERS MANAGEMENT, a
Delaware Limited Liability Company,
JUSTICE PARTNERS LAW GROUP, a District of
Columbia Limited Partnership,
PERSIST COMMUNICATIONS, INC., a Florida
Corporation,
THE LAKE LAW FIRM, a New York Limited
Liability Company,

     Defendants
and

JUSTICE PARTNERS, a Delaware Limited
Liability Company

     Nominal Defendant.

_____/

## PLAINTIFF'S RENEWED MOTION FOR PARTIAL REMAND AND FOR ATTORNEYS' FEES PURSUANT TO DEFENDANT, SYLVIA BENITO'S, "CORRECTED AMENDED NOTICE OF REMOVAL" [ECF #16]

Pursuant to the Court's December 22, 2025, Order Consolidating Cases in Case No. 25-cv-5578 [ECF # 17], this submission is being filed by Plaintiff in Case No. 25-cv-25578 but relates to the administratively closed proceedings of Case No. 25-cv-25584-BB. Plaintiff hereby files this Renewed Motion for Partial Remand and For Attorneys' Fees pursuant to Defendant Sylvia

Benito's, December 17th, 2025, filing of her Corrected Amended Notice of Removal in Case No. 25-cv-25584-BB [ECF #16].

Therefore, Plaintiff, Allan Teh, pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), 1452(b), and 1447(c), respectfully moves for an Order **partially remanding this action to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida as to all non-debtor defendants**, confirming that any claims involving the Lake Law debtor entity remain subject solely to the automatic stay, and awarding Plaintiff his attorneys' fees and costs incurred as a result of this improper removal. In support, Plaintiff states:

## **INTRODUCTION**

This is a pure Florida state-law derivative action brought on behalf of Justice Partners, LLC ("JP"), seeking to redress the wholesale diversion of investor funds, systemic fiduciary breaches, and internal fraud perpetrated by JP's own insiders and their downstream recipients. Defendant Sylvia Benito removed this case based solely on the filing of an involuntary Chapter 7 petition against The Lake Law Firm, LLC[1] on November 26, 2025, asserting—without legal or factual support—that this derivative action is "related to" the Lake Law bankruptcy estate within the meaning of 28 U.S.C. § 1334(b).

That jurisdictional premise fails as a matter of law. Bankruptcy "related-to" jurisdiction exists only where the outcome of the civil proceeding could conceivably alter the debtor's rights, liabilities, options, or freedom of action in a manner that impacts administration of the estate. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990), adopting *Pacor, Inc. v. Higgins*,

---

[1] Pursuant to Defendant Benito's Corrected Amended Notice of Removal she states that "there is no legal entity named Lake Law Firm LLC that is affiliated with Edward J. Lake or the Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm. For purposes of this filing the Plaintiff will reference the Defendant as The Lake Law Firm or LLF.

743 F.2d 984 (3d Cir. 1984). Where any alleged estate effect depends on contingent future litigation, speculative enforcement steps, or layered third-party claims, jurisdiction fails. *Pacor*, 743 F.2d at 995. The Supreme Court has likewise made clear that shared facts, background financial relationships, and overlapping business narratives do not create bankruptcy jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

Here, Plaintiff proceeds derivatively on behalf of JP against non-debtors Benito, Melchionni, Justice Partners Management, Justice Partners Law Group, and Persist Communications. Any recovery belongs first and exclusively to JP, not to Plaintiff personally and not to Lake Law. Lake Law is merely alleged to be a downstream recipient of misappropriated funds. Confirmation of derivative liability against JP's insiders does not adjudicate estate property, require turnover, or bind the Lake Law bankruptcy estate in any respect. Any hypothetical estate impact would require multiple layers of separate litigation, making it legally insufficient under *Pacor* and *Lemco Gypsum*.

Even if bankruptcy jurisdiction could be hypothesized, mandatory abstention applies because this is a non-core, purely state-law action commenced in state court and capable of timely adjudication there. 28 U.S.C. § 1334(c)(2); *In re United Container LLC*, 284 B.R. 162, 171–72 (Bankr. S.D. Fla. 2002). Independently, permissive abstention and equitable remand compel return to state court under 28 U.S.C. §§ 1334(c)(1) and 1452(b). *United Container*, 284 B.R. at 176–77. At minimum, partial remand of all non-debtor defendants is required. Section 1452(b) expressly authorizes remand of "any claim or cause of action," and federal courts routinely remand non-debtor disputes while preserving the automatic stay as to the debtor alone. *United Container*, 284 B.R. at 176–77; *Matter of Mandalay Shores Co-Op Housing Ass'n*, 21 B.R. 379, 387–88 (Bankr. M.D. Fla. 1982).

Finally, the same-day filing of an involuntary bankruptcy petition and immediate removal of this trial-ready state-court case constitutes precisely the type of abusive scheme designed to benefit from the automatic stay that federal courts have condemned as "nothing short of abuse." *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 52–53 (M.D. Fla. 2000). Because this removal lacks any objectively reasonable jurisdictional basis, attorneys' fees are warranted under 28 U.S.C. § 1447(c). *Id.*

## BACKGROUND

Plaintiff brings this action derivatively on behalf of Justice Partners, LLC to recover more than $11 million in investor funds misappropriated through a coordinated insider scheme. The Second Amended Derivative Complaint asserts claims for breach of fiduciary duty, common-law fraud, civil conspiracy, aiding and abetting, and unjust enrichment against Benito, Melchionni, Justice Partners Management, Justice Partners Law Group, Persist Communications, and The Lake Law Firm, LLC. All causes of action arise exclusively under Florida law.

From its inception, the case proceeded as a complex, actively managed state-court action. Discovery was extensive. Experts were designated and deposed. Dispositive motions were filed and litigated. The Miami-Dade Circuit Court placed the matter on a **three-week jury trial docket beginning November 24, 2025**, with final pretrial proceedings and motions in limine scheduled beforehand. At the moment of removal, the case was **fully trial-ready**.

On **November 26, 2025**, Benito and Melchionni caused an **involuntary Chapter 7 petition to be filed against The Lake Law Firm, LLC in the Eastern District of New York**. That same day, Benito removed this derivative action to federal court under 28 U.S.C. §§ 1334 and 1452. At the time of removal, no order for relief had entered in the bankruptcy case, no trustee had been appointed, and no estate property had been adjudicated.

**ARGUMENT**

**I.    REMOVAL FAILS FOR LACK OF "RELATED-TO" JURISDICTION UNDER 28 U.S.C. § 1334(b)**

The Eleventh Circuit's test for "related-to" jurisdiction is narrow and functional. A civil proceeding is related to a bankruptcy case only if its outcome could **conceivably have an effect on the bankruptcy estate**. *Lemco Gypsum*, 910 F.2d at 788. Where the alleged estate effect would require further litigation to occur before any impact is realized, jurisdiction fails. *Pacor*, 743 F.2d at 995.

This derivative action cannot satisfy that test. Plaintiff seeks to enforce JP's rights against JP's insiders and their downstream recipients. Any recovery belongs **first to JP**. Lake Law is not the beneficiary of the claims; it is, at most, alleged to be a recipient of misappropriated funds. Confirmation of derivative liability does not adjudicate ownership of Lake Law assets, does not compel turnover from Lake Law, and does not determine the scope of any bankruptcy estate.

Any hypothetical effect on the Lake Law estate would require multiple independent steps: a final derivative judgment, collection by JP, an independent adjudication of Lake Law's entitlement to JP assets, and only then possible turnover to a trustee. That layered contingency is **legally insufficient under *Pacor***. 743 F.2d at 995. Nor do overlapping factual allegations concerning investor funds and mass-tort representations create jurisdiction. The Supreme Court has expressly rejected bankruptcy jurisdiction grounded in common facts alone. *Celotex*, 514 U.S. at 308.

Because the outcome of this derivative case **cannot directly alter the Lake Law estate**, § 1334(b) jurisdiction is absent as a matter of law.

**II.    MANDATORY ABSTENTION IS REQUIRED UNDER 28 U.S.C. § 1334(c)(2)**

Even if this Court were to assume for purposes of argument that "related-to" jurisdiction exists under 28 U.S.C. § 1334(b), Congress has expressly withdrawn federal discretion through the **mandatory abstention** provision of § 1334(c)(2). Mandatory abstention applies where: (1) a timely motion is filed; (2) the action is based upon a state-law claim; (3) the action is "related to" a bankruptcy case but does not arise under Title 11 or arise in a Title 11 case; (4) the proceeding could not have been commenced in federal court absent § 1334; (5) the action was commenced in state court; and (6) the action can be timely adjudicated in the state forum. *In re United Container LLC*, 284 B.R. 162, 171–72 (Bankr. S.D. Fla. 2002). Each of these elements is not merely satisfied here — it is unequivocally met.

First, Plaintiff's motion is timely. Removal was effected on November 26, 2025, and this motion is brought at the earliest practicable stage of federal proceedings. Second, every cause of action pleaded in the Second Amended Derivative Complaint arises under Florida law, including breach of fiduciary duty, common-law fraud, civil conspiracy, aiding and abetting, and unjust enrichment. There are no federal causes of action, no Title 11 statutory claims, and no bankruptcy-exclusive remedies invoked.

Third, this case is at most "related to" a bankruptcy proceeding and plainly does not "arise under" Title 11 or "arise in" a bankruptcy case. The claims existed long before any bankruptcy filing, depend entirely on pre-petition conduct, and do not invoke or require construction of any provision of the Bankruptcy Code. *United Container*, 284 B.R. at 171.

Fourth, this case could not have been commenced in federal court absent § 1334. There is no diversity jurisdiction, no federal-question jurisdiction, and no other independent basis for federal subject-matter jurisdiction. Benito's Notice of Removal relies solely on § 1334(b).

Fifth, the action was unquestionably **commenced in state court and actively litigated there for over a year**. The Miami-Dade Circuit Court exercised continuous supervision over discovery, expert practice, and dispositive motion proceedings and placed the case on a **three-week jury trial docket beginning November 24, 2025**. This factor alone strongly favors abstention under *United Container*. 284 B.R. at 172.

Sixth, and most decisively, the case could not only be timely adjudicated in state court it **was on the verge of final adjudication there**. At the time of removal, discovery had closed, experts had been disclosed and deposed, dispositive motions had been fully briefed, motions in limine and pretrial matters were scheduled. There is no serious argument that the state forum lacked the ability to timely resolve this matter; the record establishes the opposite. Where a state court has already invested substantial judicial resources and trial is imminent, courts consistently hold that the "timely adjudication" element is satisfied for purposes of mandatory abstention. *United Container*, 284 B.R. at 171–72.

Mandatory abstention under § 1334(c)(2) is therefore not discretionary in this case. Congress enacted this provision to prevent precisely what has occurred here: the late-stage federalization of state-law disputes that have no independent federal character but are tangentially connected to a bankruptcy proceeding. Allowing this case to remain in federal court would nullify the statute's purpose and permit removal to be wielded as a purely tactical delay mechanism.

Because all six elements of mandatory abstention are satisfied, this Court must abstain and remand the case to state court as a matter of law. 28 U.S.C. § 1334(c)(2); *United Container*, 284 B.R. at 171–72.

### III.   PERMISSIVE ABSTENTION AND EQUITABLE REMAND COMPEL REMAND

Even if jurisdiction existed and abstention were not mandatory, this Court must still remand under the permissive abstention and equitable remand provisions of 28 U.S.C. §§ 1334(c)(1) and 1452(b). In assessing equitable remand, courts consider the predominance of state law, the degree of nexus to the bankruptcy case, feasibility of severance, judicial economy, comity, and evidence of forum manipulation. *United Container*, 284 B.R. at 176–77.

Every factor favors remand. This is a **Florida fiduciary-duty and fraud case**, not a bankruptcy administration proceeding. The bankruptcy filing occurred only after over a year of active state-court litigation and on the eve of trial. Retaining the case in federal court would waste extensive judicial labor already expended by the Miami-Dade court, risk inconsistent rulings, and improperly displace Florida courts from adjudicating Florida law.

The timing and posture of removal further establish forum manipulation. Benito waited until trial was imminent, then invoked an involuntary bankruptcy against a different entity and immediately removed the derivative action. That sequence reflects strategic re-foruming, not a legitimate invocation of federal jurisdiction.

Section 1452(b) authorizes the remand of "any claim or cause of action," permitting courts to remand non-debtor disputes while preserving the automatic stay as to the debtor alone. *United Container*, 284 B.R. at 176–77.

In *Mandalay Shores*, the bankruptcy court declined to retain jurisdiction over a state-law controversy dominated by non-debtors, holding that it was "not convinced that it should entertain a controversy between non-debtor plaintiffs and non-debtor defendants," and reaffirmed that remand does not modify the automatic stay. 21 B.R. at 387–88.

Here, every active defendant driving the litigation is a non-debtor. Lake Law's bankruptcy status does not convert this derivative enforcement action into a bankruptcy case. Partial remand preserves the automatic stay while restoring the proper judicial forum for the actual dispute.

Federal courts consistently condemn the use of bankruptcy as a litigation weapon. In *Singer Furniture*, the court described such tactics as an **abusive scheme** designed to **benefit from the automatic stay**, concluding that the conduct was "nothing short of abuse." 254 B.R. at 52–53.

That is precisely what occurred here. Benito allowed this case to proceed through full discovery, expert practice, and dispositive motion briefing, waited until a three-week jury trial was imminent, and then orchestrated an involuntary bankruptcy filing against a tangentially related law firm and immediately removed the case. The bankruptcy filing was not invoked to address insolvency. It was invoked to halt a state-court trial that Benito and her co-defendants were poised to lose.

The Bankruptcy Code does not exist to provide an emergency brake on adverse litigation. This Court should not permit its jurisdiction to be manufactured through such tactical misuse.

When removal lacks an objectively reasonable basis, the court should award costs and attorneys' fees. *Singer Furniture*, 254 B.R. at 52–53. Benito removed a trial-ready derivative action based solely on a same-day involuntary bankruptcy filing against a separate entity, despite the complete absence of any direct estate impact under *Lemco Gypsum*, *Pacor*, and *Celotex*. Removal served only to delay trial and multiply proceedings.

Because the jurisdictional theory advanced here is legally untenable and procedurally abusive, Plaintiff is entitled to recover the attorneys' fees and costs incurred as a direct result of removal.

January 9th, 2026,

Respectfully submitted,

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., Suite 925
Coral Gables, FL 33134
Tel: (305) 270-8858
Fax: (305) 270-6778
e.rojodotel@jones-adams.com

By:   */s/ Eric S. Rojo Dotel, Esq.*
Eric S. Rojo Dotel, Esq.
Florida Bar No.: 1031871

### MEET AND CONFER CERTIFICATE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that on January 6th, 2026, Plaintiff's Counsel met and conferred with Defendants' Counsel. As the substance of Defendant, Syliva Benito's, Amended Notice of Removal and previously filed Notice of Removal remained identical the parties reassert their positions expressed during the December 4th, 2025, meet and confer held via zoom. The parties are unable resolve the issues set forth in this Motion. Defendants' Counsel opposes the relief sought.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9th, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Eric S. Rojo Dotel, Esq.*